IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Robbins, Russell, Englert, Orseck & Untereiner LLP,**<br><br>    1801 K Street NW, Suite 411-L, Washington, D.C. 20006<br><br>            Plaintiff,<br><br>    v.<br><br>**Gary Kornman,**<br><br>    3640 Haynie Avenue, Dallas, Texas, 75205<br><br>            Defendant. | **UNDER SEAL**<br><br>**Case Number** _____ |

**MOTION TO SEAL ENTIRE CASE**

Plaintiff, Robbins, Russell, Englert, Orseck & Untereiner LLP ("Robbins Russell"), by and through undersigned counsel, hereby moves to seal the above-captioned case in its entirety.

Robbins Russell's undersigned counsel proposes to file under seal its Complaint (attached hereto as Exhibit 1) seeking to collect from Gary Kornman, its client, fees for legal services rendered by Robbins Russell to Kornman in the District of Columbia. This proposed lawsuit implicates Rule 1.6 the D.C. Rules of Professional Conduct, which applies to lawyers practicing in this court, see LCivR 83.15, and which generally requires attorneys to safeguard the confidences and secrets of their clients, see D.C. Rules of Prof'l Conduct R. 1.6 (effective Feb. 1, 2007). That Rule permits a lawyer to "use or reveal client confidences or secrets . . . to the minimum extent necessary in an action instituted by the lawyer to establish or collect the lawyer's fee." *Id.* R. 1.6(e)(5). "For example, in drafting the complaint in a fee collection suit, it

would be necessary to reveal the 'secrets' that the lawyer was retained by the client, that fees are due, and that the client has failed to pay those fees." *Id.* R. 1.6 cmt. [26].

Comments to Rule 1.6 counsel in favor of shielding from public view even those confidences and secrets that are crucial to a fee collection action:

> The lawyer should . . . make every effort . . . to limit the disclosure [of confidences and secrets] to those having the need to know it. To this end the lawyer should seek appropriate protective orders and make any other arrangements that would minimize the risk of disclosure of the confidential information in question, including the utilization of *in camera* proceedings.

D.C. Rules of Prof'l Conduct R. 1.6 cmt. [27]. Indeed, those comments state that a lawyer suing a client for legal fees should endeavor, if possible, to "prevent even the disclosure of the client's identity." *Id.* 1.6 cmt. [26]; see also D.C. Ethics Opinion 298 (2000) ("The[] comments suggest several possible methods (use of John Doe pleadings, entry of protective orders and in camera proceedings) to avoid disclosure of confidential information during fee litigation."); D.C. Ethics Opinion 236 (1993) ("The comments to Rule 1.6 emphasize . . . that the lawyer should seek the use of John Doe pleadings, in camera proceedings, and/or protective orders where possible to avoid the unnecessary disclosure of information.").

Sealing this entire case would appropriately safeguard the confidences and secrets of Robbins Russell's client, Gary Kornman. The allegations and evidence in this litigation, as in any fee collection matter, will undoubtedly address "information protected by the attorney-client privilege"—*i.e.*, confidences—or "other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client"—*i.e.*, secrets. Moreover, disclosing even some of the facts about this proposed litigation—such as the defendant's name or the nature of the

–2–

legal services provided by Robbins Russell—could enable members of the public to infer information arguably covered by Rule 1.6. Robbins Russell submits, therefore, that sealing the entire case would protect that information with the highest degree of certainty. A proposed order is attached as Exhibit 2 to this Motion.

## Conclusion

For the foregoing reasons, Robbins Russell respectfully requests that this Court grant its Motion to Seal Entire Case and file under seal the attached Complaint.

Dated:   *February 26, 2007*               Respectfully submitted,


               /s/ *Gary A. Orseck*
            Gary A. Orseck (D.C. Bar No. 433788)
            Alan D. Strasser (D.C. Bar. No 967885)
            Matthew R. Segal (D.C. Bar No. 483486)
            ROBBINS, RUSSELL, ENGLERT,
             ORSECK & UNTEREINER, LLP
            1801 K Street, NW, Suite 411-L
            Washington, D.C. 20006
            (202) 775-4500

            *Attorneys for Plaintiff Robbins, Russell,
             Englert, Orseck & Untereiner LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of February, 2007, I caused copies of the foregoing Motion to Seal Entire Case to be served by first-class mail, postage prepaid, in envelopes marked "DOCUMENTS UNDER SEAL," on:

Gary Kornman
3640 Haynie Avenue
Dallas, Texas 75205

*Counsel for Gary Kornman*
Jeffrey M. Tillotson
Lynn, Tillotson & Pinker, L.L.P.
750 N. St. Paul Street, Suite 1400
Dallas, TX 75201
Telephone: (214) 981-3800
Fax: (214) 981-3839

      /s/ *Gary A. Orseck*
Gary A. Orseck (D.C. Bar No. 433788)

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Robbins, Russell, Englert, Orseck & Untereiner LLP,**<br>    1801 K Street NW<br>    Washington, D.C. 20006<br>        Plaintiff,<br>v.<br>**Gary Kornman,**<br>    3640 Haynie Avenue<br>    Dallas, TX 75205<br>        Defendant. | **UNDER SEAL**<br><br>**Case Number** _____<br><br><br>**Complaint** |

**COMPLAINT**

Plaintiff, Robbins, Russell, Englert, Orseck & Untereiner LLP ("Robbins Russell"), by and through undersigned counsel, as and for its complaint against Gary Kornman ("Kornman"), states as follows:

**Introduction**

This case arises out of Kornman's intentional refusal to pay fees for and costs associated with legal services rendered by Robbins Russell. After entering into a contract for those services, and in fact receiving them, Kornman has refused to pay outstanding invoices totaling $149,021.29, despite acknowledging his obligation to do so.

**Jurisdiction and Venue**

1. Robbins Russell is a limited liability partnership for the practice of law and a resident of the District of Columbia. Its office is located at 1801 K Street N.W., Suite 411, in the District of Columbia. None of the partners of Robbins Russell are citizens of Texas.

2.	Kornman is a Texas resident residing at 3640 Haynie Avenue, Dallas, Texas 75205, and is, on information and belief, a citizen of Texas.

3.	The amount in controversy, exclusive of interests and costs, is $149,021.29.

4.	Subject matter jurisdiction exists under 28 U.S.C. § 1332(a)(2), diversity jurisdiction, as the parties are citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

5.	Kornman visited Robbins Russell's offices in Washington, D.C. on several occasions for the purpose of obtaining legal advice, including on January 20, 24, and 25, 2006.

6.	Personal jurisdiction over Kornman is based on D.C. Code § 13-423.

7.	Venue properly lies in this Judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this case arose in this District.

## Factual Background

8.	In October 2004, Kornman engaged Robbins Russell to represent him in connection with certain litigation involving the Securities and Exchange Commission ("SEC"). This engagement was confirmed by a letter dated October 5, 2004, which was executed by Kornman and Lawrence S. Robbins of Robbins Russell ("Engagement Letter," attached as Exhibit A to this complaint).

9.	The Engagement Letter:

   a.	set forth the billing rates of several Robbins Russell attorneys;

   b.	explained that the firm might draw on any of its attorneys in connection with performing legal services for Kornman, at hourly rates determined by Robbins Russell's schedule of hourly rates;

   c.	informed Kornman that Robbins Russell would bill him for costs associated with its provision of legal services;

–2–

      d. provided that Robbins Russell's invoices would be due within 20 days after Kornman received them;

      e. permitted Kornman to terminate Robbins Russell's representation of him at any time;

      f. provided that Kornman's acceptance of the Engagement Letter constituted his understanding of, and consent to, its terms, conditions, and disclosures.

    10. Also in October 2004, Kornman paid Robbins Russell a retainer of $20,000, one-half of which was to be held as a reserve against the final bill.

    11. Pursuant to requests by Kornman and his Texas counsel, Jeff Tillotson, acting at Kornman's direction, Robbins Russell expanded the scope of the services it provided to include the preparation of a variety of motions and the performance of an array of legal research, in both the SEC litigation and criminal litigation, arising out of the same alleged conduct, brought by the U.S. Attorney's Office for the Northern District of Texas.

    12. In connection with and within the scope of this representation, Robbins Russell submitted invoices to Kornman for legal services rendered and costs advanced from October 5, 2004, through September 30, 2006. These invoices were dated November 1, 2004; December 2, 2004; January 4, 2005; February 2, 2005; March 2, 2005; April 4, 2005; May 4, 2005; July 11, 2005; October 5, 2005; November 4, 2005; January 4, 2006; February 2, 2006; March 3, 2006; April 6, 2006; May 2, 2006; June 5, 2006; July 5, 2006; August 3, 2006; September 7, 2006; and October 4, 2006.

    13. Pursuant to the parties' agreement, Robbins Russell applied $10,000 of Kornman's $20,000 retainer against the November 1, 2004, invoice. Robbins Russell continues to hold the remaining $10,000 of Kornman's retainer as a reserve against his final bill.

14. Between December 2004 and February 2006, Kornman paid in full the twelve invoices dated between and including November 1, 2004, and February 2, 2006.

15. Kornman has not paid in full, however, the March 3, 2006, invoice, or any part of the invoices that followed it. The last payment Robbins Russell received from Kornman was dated February 13, 2006, and included an overpayment that was subsequently applied to the March 3 invoice. Kornman's balance on the outstanding invoices totals $149,021.29.

16. Neither Kornman nor anyone on Kornman's behalf has denied that Robbins Russell's invoices are outstanding and unpaid.

17. On several occasions, Kornman or Jeff Tillotson, on Kornman's behalf, have acknowledged Kornman's obligation to pay in full the outstanding invoices. On October 24, 2006, Kornman spoke with Lawrence Robbins by telephone. During that conversation, Kornman acknowledged that he owed Robbins Russell the amounts listed in the outstanding invoices but insisted that Robbins Russell perform additional legal work before Kornman would agree to pay the amounts owed. Kornman (and Tillotson, on Kornman's behalf) made the same acknowledgment on several other occasions as well.

18. On October 31, 2006, and November 8, 2006, Lawrence Robbins sent to Kornman and Jeff Tillotson, via Federal Express, letters on Robbins Russell's behalf requesting that Kornman pay in full the outstanding amount of $149,021.29 by November 15, 2006. Neither Kornman nor Jeff Tillotson responded to those letters, and the entire $149,021.29 remains unpaid.

## COUNT I
### (Breach of Contract)

19. The allegations of paragraphs one through eighteen are incorporated here by reference as though set forth fully here.

20. On or about October 5, 2004, Kornman retained Robbins Russell and entered into a contractual agreement under which Kornman would pay Robbins Russell for its performance of legal services. The parties executed an engagement letter.

21. Robbins Russell fully performed its obligations under the parties' agreement by representing Kornman during the SEC and criminal matters.

22. Kornman has failed to perform his contractual obligations because he failed to pay the invoices for the outstanding fees and costs associated with Robbins Russell's services.

23. Wherefore, Robbins Russell demands judgment against Kornman for $149,021.29, plus pre-judgment and post-judgment interest, and the costs of this action, and any other relief that the Court deems appropriate.

## COUNT II
### (Breach of Implied-in-Fact Contract—Quantum Meruit)

24. The allegations of paragraphs one through eighteen are incorporated here by reference as though set forth fully here.

25. Robbins Russell performed valuable legal services on Kornman's behalf.

26. Kornman invited and accepted Robbins Russell's legal services and, in fact, sought additional legal services from Robbins Russell as recently as October 24, 2006.

27. The circumstances, including the Engagement Letter, the legal services rendered, and Robbins Russell's periodic invoices, reasonably put Kornman on notice that Robbins Russell expected to be paid by him.

28. The amounts billed by Robbins Russell constitute a reasonable valuation of the services performed and costs advanced by Robbins Russell in representing Kornman.

29. Wherefore, Robbins Russell demands judgment against Kornman for $149,021.29, plus pre-judgment and post-judgment interest, and the costs of this action, and all other relief that the Court deems appropriate.

## COUNT III

### (Account Stated—Invoices)

30. The allegations of paragraphs one through eighteen are incorporated here by reference as though set forth fully here.

31. The circumstances, including the Engagement Letter, Robbins Russell's periodic invoices, and Kornman's payment of some of those invoices, established a debtor-creditor relationship between Kornman and Robbins Russell. The Engagement Letter, in particular, established that Robbins Russell's periodic invoices would be due within 20 days after Kornman received them.

32. Robbins Russell's invoices rendered an account payable by Kornman.

33. Under the circumstances, including the terms of the Engagement Letter and Lawrence Robbins's demand that Robbins Russell's invoices be paid in full by November 15, 2006, Kornman agreed to pay those invoices by failing to object to them and by affirmatively acknowledging his obligation to pay them.

34. The actions of Kornman and Robbins Russell created an account stated.

35. Wherefore, Robbins Russell demands judgment against Kornman for $149,021.29, plus pre-judgment and post-judgment interest, and the costs of this action, and all other relief that the Court deems appropriate.

Dated:   *February 26, 2007*              Respectfully submitted,

          /s/ *Gary A. Orseck*
Gary A. Orseck (D.C. Bar No. 433788)
Alan D. Strasser (D.C. Bar. No 967885)
Matthew R. Segal (D.C. Bar No. 483486)
ROBBINS, RUSSELL, ENGLERT,
  ORSECK & UNTEREINER, LLP
1801 K Street, NW, Suite 411-L
Washington, D.C.  20006
(202) 775-4500

Attorneys for Robbins, Russell, Englert,
Orseck & Untereiner LLP

# Exhibit A

to

# Exhibit 1

# ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP

1801 K STREET, N.W., SUITE 411
WASHINGTON, D.C. 20006
PHONE (202) 775-4500
FAX (202) 775-4510
www.robbinsrussell.com

Lawrence S. Robbins
(202) 775-4501
lrobbins@robbinsrussell.com

October 5, 2004

*Via email:* lfk_lfk@yahoo.com

Mr. Gary Kornman
3640 Haynie Avenue
Dallas, TX 75205

    Re:    Engagement in *SEC* v. *Gary M. Kornman,*
            Civ. Action No. 3:04CV1803-L (N.D. Texas)

Dear Gary:

    The purpose of this letter is to set forth the basis upon which this firm will provide legal services to you with respect to the above-named litigation.

1. **Legal Services Provided**: You are engaging this Firm to represent you in connection with the above-referenced litigation; specifically, you have asked us to research issues relating to the SEC's rulemaking authority and prepare a possible motion to dismiss with respect to that subject matter. I will work principally with my partners Gregory Poe and Gary Orseck and my associate Alice Yao on this project. If at any time you have questions, concerns, or criticisms, please feel free to call. My direct dial number is (202) 775-4501 and my e-mail address is **lrobbins@robbinsrussell.com.**

2. **Fees**: My fee will be $550 per hour, Gary's and Greg's will be $450 per hour, and Alice's will be $300 per hour. We may also, but only to the extent necessary, draw on other attorneys, most of whom are billed at rates lower than $325 per hour, but in no event would another lawyer's fee exceed my hourly rate. Our fees are generally based on the Firm's schedule of hourly rates. Our schedule of hourly rates for attorneys and other members of the professional staff is based on years of experience, specialization in training and practice, and level of

ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP

Mr. Gary Kornman
October 5, 2004
Page 2

        professional attainment. You have also agreed to pay a retainer of $20,000, one-half of which will be applied to fees as they accrue, and one-half held as a reserve against the final bill.

3.    <u>Costs</u>: It is sometimes necessary for us to incur other charges for items such as travel, lodging, meals, telecommunication expenses (telephone, telecopier and telex) and messengers. Similarly, some matters require ancillary services such as photocopying, word processing, computerized legal research and staff overtime.

        In order to allocate these charges fairly and keep billable rates as low as possible for those matters which do not involve such expenditures, these items are separately itemized on our statements. Some charges represent out-of-pocket costs, some include an allocation of overhead costs associated with the items, and others include a combination of both factors. It is the Firm's policy to maintain the costs of these items at reasonable levels.

4.    <u>Billings</u>: Our statements generally will be prepared and mailed during the month following the month in which services are rendered and costs advanced. We expect payment within twenty days after any statement is received.

5.    <u>Termination</u>: You will have the right to terminate our representation at any time. You agree that we will have the same right, subject to an obligation to give you reasonable notice to arrange alternative representation. You also agree that we will be relieved from the responsibility of performing any further work should you fail to pay any statement for fees and/or other charges unless other special arrangements have been mutually agreed upon.

6.    <u>Acceptance of Engagement</u>: Your acceptance of this engagement letter constitutes your understanding of, and consent to, the particular terms, conditions and disclosures described above.

                                                             * * * * *

ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP

Mr. Gary Kornman
October 5, 2004
Page 3

      Please review the foregoing and, if it meets your approval, sign a copy of the letter and return it to us, together with a check in the amount of $20,000. If you have questions, please feel free to call me.

Very truly yours,

ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP

By: _____
      Lawrence S. Robbins

APPROVED AND AGREED:

Gary Kornman

By: _____
      Gary Kornman

# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Robbins, Russell, Englert, Orseck & Untereiner LLP,**<br>1801 K Street NW, Suite 411-L,<br>Washington, D.C. 20006<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**Gary Kornman,**<br>3640 Haynie Avenue,<br>Dallas, Texas 75205<br><br>　　　　　　　　　Defendant. | **UNDER SEAL**<br><br>**Case Number** _____ |

## ORDER ON PLAINTIFF'S
## MOTION TO SEAL ENTIRE CASE

This matter comes before the Court on motion of Plaintiff, Robbins, Russell, Englert, Orseck & Untereiner LLP to seal the above-captioned case in its entirety. Having considered Plaintiff's motion and having reviewed the Complaint attached thereto, it is hereby ORDERED that this case shall be sealed.

The Clerk of the Court is hereby instructed to file the Complaint under seal.

SIGNED this _____ day of _____, 2007.

_____
UNITED STATES DISTRICT JUDGE