# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, | : | |
| | : | |
| Plaintiff | : | Case No. 1:07-cv-00554-JR |
| | : | |
| v. | : | |
| | : | |
| GARY KORNMAN, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MOTION TO DISMISS

Gary Kornman moves to dismiss with prejudice, under Fed. R. Civ. P. 12(b)(6), the *Complaint* filed against him by the law firm of Robbins, Russell, Englert, Orseck & Untereiner LLP. As discussed in the accompanying *Memorandum of Law*, none of the firm's causes of action states a claim upon which relief can be granted.

WHEREFORE Mr. Kornman respectfully requests that the Court dismiss the *Complaint* with prejudice. (Also accompanying this *Motion* is a proposed *Order* granting the requested relief.)

Respectfully submitted,

SULLIVAN & WORCESTER LLP


/s/ Orlando E. Vidal
Orlando E. Vidal, Esquire
(D.C. Bar # 461815)
1666 K Street, N.W., Suite 700
Washington, D.C. 20006
Ph.: (202) 775-6825
Fax.: (202) 293-2275
ovidal@sandw.com

Of counsel:
Barry S. Pollack

May 29, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBBINS, RUSSELL, ENGLERT,<br>ORSECK & UNTEREINER LLP,<br><br>Plaintiff<br><br>v.<br><br>GARY KORNMAN,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 1:07-cv-00554-JR |

## MEMORANDUM OF LAW IN SUPPORT
## OF GARY KORNMAN'S MOTION TO DISMISS

Defendant Gary Kornman respectfully submits this memorandum in support of his motion to dismiss all claims filed by Plaintiff Robbins, Russell, Englert, Orseck & Untereiner LLP (the "firm").

## PRELIMINARY STATEMENT

This case involves the ramifications of a law firm's attempt to limit in writing the scope of its representation and obligations, followed by an undefined expansion of its work and a substantial passage of time before addressing billing issues regarding work not within the originally contemplated retention. To fully dispose of this case, the Court need answer only three clear questions of law, each of which corresponds to a (defective) cause of action raised by the firm in its three-count *Complaint*:

1. Should the Court give effect to the plain language, in a signed retention agreement, setting the contractual scope of representation? The firm's signed engagement letter set a narrow scope of the representation. Mr. Kornman hired the firm to prepare a motion to dismiss in an action filed

by the SEC, but the *Complaint* does not allege any *facts* reflecting that the unpaid fees were for services within the scope of the retention agreement;

2.    In light of an actual contract and the absence of allegations or proof that services actually benefited Mr. Kornman, can the firm pursue a recovery in *quantum meruit*? There is no *factual* allegation in the *Complaint* that would support a finding that Mr. Kornman ever benefited from any of the firm's extra-contractual services; and

3.    As the firm admits, in its allegations, that Mr. Kornman demanded the firm do more before he could accept its claim for purportedly outstanding fees as owed and payable, can the firm prevail on a claim for an account stated?

## ALLEGATIONS IN THE COMPLAINT

Mr. Kornman sets forth herein the firm's allegations for purposes of his motion only, and does not admit their accuracy or completeness.

The firm readily admits in its *Complaint*[1] that, on October 5, 2004, Mr. Kornman signed an agreement, which it attached to its *Complaint* as Exh. "A," to engage the firm to represent him in the preparation of a motion to dismiss in a suit brought against him by the SEC. The firm's signed agreement is very specific as to the scope and terms of the engagement:

- Starting with the "Re" line of the engagement letter, the agreement states: "Engagement in *SEC v. Gary M. Kornman*, Civ. Action No. 3:04CV1803-L (N.D. Texas);"[2]

- The agreement also states, in its first line, that: "The purpose of this letter is *to set forth the basis* upon which this firm will provide legal services to … [Mr. Kornman] *with respect to the above-named litigation*;"[3]

- In the indented paragraph marked number "1" and entitled "Legal Services Provided,"[4] the agreement repeats how Mr. Kornman was "engaging this

---

[1] *Compl.* at 2, ¶ 8.

[2] *Compl.*, Exh. "A" at 1.

[3] *Id.* (emphasis added).

[4] *Id.* (emphasis in original).

Firm to represent … [him] in connection *with the above-referenced litigation….;*"[5]

- The agreement also describes how Mr. Kornman *"specifically … asked [the firm] … to research issues relating to the SEC's rulemaking authority and prepare a possible motion to dismiss with respect to that subject matter;"*[6]

- In the indented paragraph marked number "5" and entitled "Termination,"[7] the agreement provides that the firm "will be relieved from the responsibility of performing any further work should … [Mr. Kornman] fail to pay any statement for fees and/or other charges unless other special arrangements have been mutually agreed upon;"[8]

- The last indented paragraph of the agreement, marked number "6" and with the heading "Acceptance of Engagement,"[9] states that Mr. Kornman's "acceptance of this engagement letter constitutes … [his] understanding of, and consent to, *the particular terms, conditions and disclosures* described above,"[10] which as seen included the description of the scope of the firm's services; and

- The agreement closed with the firm's exhortation to Mr. Kornman that he should "review the foregoing and, if it meets … [his] approval, sign a copy of the letter and return it to … [the firm], together with a check"[11] for the requested $20,000 retainer.

The firm issued and signed the agreement.[12]  The allegations reflect that Mr. Kornman

signed the letter and paid the agreed-upon retainer.  By the firm's own admission, Mr. Kornman

not only paid in full the first twelve invoices he received from the firm, dated November 1, 2004

---

[5]  *Id.* (emphasis added).

[6]  *Id.* (emphasis added).

[7]  *Id.* (emphasis in original).

[8]  *Id.*

[9]  *Id.* (emphasis in original).

[10]  *Id.* (emphasis added).

[11]  *Id.* at 3.

[12]  *See id.*

through February 2, 2006,[13] but he even overpaid that last invoice.[14] (Rather than returning that overpayment to Mr. Kornman, the firm kept it and applied it to the next month's invoice.[15]) Mr. Kornman has, however, disagreed with and, therefore, refused to pay the eight invoices he received from March through October 2006, the outstanding balance of which totals $149,021.29.[16]

Nowhere in its *Complaint* does the firm assert that the fees that are reflected in the eight disputed invoices that Mr. Kornman has refused to pay were for services within the scope of the firm's actual engagement agreement. Rather, the firm fully admits that, without amending its engagement agreement, it "expanded the scope of the services it provided to include [other matters] … in … the SEC litigation and [a subsequent] criminal litigation … brought by the U.S. Attorney's Office for the Northern District of Texas,"[17] in which the firm also acknowledges Mr. Kornman is represented by separate counsel.[18]

The *Complaint* also does not mention, let alone provide a factual description of, any actual benefit received by Mr. Kornman for the extra-contractual services reflected in the fees that the firm alleges remain outstanding. All the *Complaint* states – and in a perfunctory manner – is that the services were "valuable,"[19] which means they had some worth to the firm, and not that they were "beneficial" to Mr. Kornman.

---

[13] *Compl.* at 4, ¶ 14.

[14] Because the firm refers in its *Complaint* to the payments it actually received, this Court is entitled to know that in the 16-month period of October 2004 through February 2006 during which the Robbins firm represented Mr. Kornman he paid the firm close to $300,000.

[15] *Id.* at 4, ¶ 15.

[16] *Id.*

[17] *Id.* at 3, ¶ 11.

[18] *Id.*

[19] *Id.* at 5, ¶ 25.

Finally, the *Complaint* admits that, as recently as October 24, 2006, Mr. Kornman addressed with the firm the issue of these unpaid invoices – and therefore did not acquiesce in them by ignoring them or otherwise– "insist[ing]" that more services by the firm were required before he believed it was entitled to payment.[20]

## ARGUMENT

None of the firm's causes of action states a claim upon which relief can be granted. The legal standards applicable to a Rule 12(b)(6) motion are well established, as follows:

> While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint." Moreover, the court is not bound to accept the legal conclusions of the non-moving party. The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. Factual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint.[21]

Under these standards, the claims in the *Complaint* cannot survive Mr. Kornman's motion to dismiss.

---

[20] *Complaint* at 4, ¶ 17.

[21] *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 27 (D.D.C. 2006) ("*Johnson*") (citations omitted; emphasis in original).

1.    **The Court Should Dismiss The Breach Of Contract Claim Because The Firm Does Not Allege That The Unpaid Fees Are For Services Within The Scope Of The Engagement Agreement.**

Under the laws of D.C. and Texas,[22] an unambiguous term in a contract should be given full effect as a matter of law. The court in *Holland v. Hannan*[23] explained:

> a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence. Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction. The question of whether a contract is ambiguous is one of law to be determined by the court.
>
> \*        \*        \*        \*
>
> [A] contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends....[24]

In *Calpine Producer Servs., L.P. v. Wiser Oil Co.*,[25] the court similarly held:

> When interpreting an unambiguous contract, it is well established that "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." In order to achieve this objective, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of a contract so that none will be rendered meaningless." The court should consider that the "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." This is often referred to as the "Four Corners Rule" which means that the intention of the parties is to be

---

[22] This Court need not resolve at this time whether the laws of D.C. or Texas apply to each claim because there is no meaningful difference in the pertinent rules of law. As alleged, the firm is based out of D.C. but Mr. Kornman resides in Texas and the SEC case for which the firm was retained was pending in Texas.

[23] 456 A.2d 807 (D.C. 1983).

[24] *Id.* at 815 (citations omitted).

[25] 169 S.W.3d 783 (Tex. Ct. App. 2005).

> ascertained from the instrument as a whole and not from isolated parts thereof. Moreover, a court will not change the contract merely because it or one of the parties comes to dislike its provisions or thinks that something else is needed. The court will not "ask about the subjective intent of the parties to the contract." When the contract is unambiguous, the court should apply the pertinent rules of construction, apply the plain meaning of the contract language, and enforce the contract as written.[26]

Following these general principles of contract law, based on the four corners of the written retention agreement, Mr. Kornman has no contractual obligation to the firm based on any work other than the carefully-defined scope found in the plain language of the contract. Indeed, the firm's *quantum-meruit* claim inherently reflects that it seeks fees for extra-contractual services. Even if there were an ambiguity in the scope of the agreement – which there is not – both D.C. and Texas recognize that the ambiguity should be construed "strongly" and "strictly" against the drafter.[27]

Here, the firm chose to draft the retention agreement with a narrow scope and is bound by its plain language on any contract claim. When so doing, the firm may have chosen not to subject itself to a broader responsibility. As a consequence, however, the firm limited the scope of its contractual rights. Because the firm cannot allege that any fees remain outstanding for any services within the scope of the contractual representation, the breach-of-contract claim in Count One must be dismissed.

---

[26] *Id.* at 787 (citations omitted).

[27] *See Capital City Mortgage Corp. v. Habana Village Art & Folklore, Inc.*, 747 A.2d 564, 567 (D.C. 2000); *Southern Disposal, Inc. v. City of Blossom*, 165 S.W.3d 887, 896 (Tex. Ct. App. 2005).

2.     **The Court Should Dismiss The *Quantum-Meruit* Claim Because There Was A Contract Between The Parties And The Firm Does Not Allege Any Actual Benefit To Mr. Kornman For Which The Firm Has Not Been Compensated.**

The firm's second claim is for *quantum meruit*. "An action in *quantum meruit* is an action on a contract implied in fact...."[28]  Its essential elements are: (a) valuable services rendered or materials furnished; (b) that benefited the person sought to be charged; (c) which services or materials were accepted by that person; and (d) under circumstances demonstrating that the plaintiff was reasonably expecting payment.[29]

As recently as last year, this Court recognized, under District-of-Columbia law, the fundamental rule that the existence of a contract between the parties precludes a claim for restitution in the form of *quantum meruit*.[30]  The same rule applies in Texas.[31]  Because, as seen,

---

[28]  *Ellipso, Inc. v. Mann,* 460 F. Supp. 2d 99, 104 (D.D.C. 2006) ("*Ellipso*"); *see also, e.g., Wyche v. Perrin,* 228 S.W.2d 330, 334 (Tex. Civ. App. 1950) ("Liability on 'quantum meruit' is liability on an implied contract, or contract implied in law, as distinct from liability on implied contract proper, or contract implied in fact.").

[29]  *See, e.g., United States ex rel. Modern Electric, Inc. v. Ideal Electronic Security Co.,* 81 F.3d 240, 246-47 (D.C. Cir. 1996); *Ellipso,* 460 F. Supp. 2d at 104; *New Economy Capital, LLC v. New Markets Capital Group,* 881 A.2d 1087, 1095 (D.C. 2005); *Providence Hospital v. Dorsey,* 634 A.2d 1216, 1219 n.8 (D.C. 1993); *Bashara v. Baptist Mem'l Hosp. Sys.,* 685 S.W.2d 307, 310 (Tex. 1985); *Dueitt v. Dueitt,* 2007 WL 274739, *1 (Tex. App.-Beaumont 2007).

[30]  *Ellipso,* 460 F. Supp. 2d at 104 (motion to dismiss *quantum-meruit* claim granted); *King & King, Chartered v. Harbert Intern., Inc.,* 436 F. Supp. 2d 3, 14 (D.D.C. 2006) ("*King & King*") ("Defendants maintain that, under District of Columbia law, a claim for *quantum meruit* is not sustainable where there is an express written agreement between the parties regarding the same subject matter.... As a general matter, this is true...."); *see also, e.g., Dale Denton Real Estate, Inc. v. Fitzgerald,* 635 A.2d 925, 928 (D.C. 1993) ("There is no need to resort to a quasi-contract claim based on *quantum meruit* if a true contract was in existence at the time the services were performed."); *Standley v. Egbert,* 267 A.2d 365, 368 (D.C. 1970) ("quantum meruit[ ] is not applicable when compensation of the parties is covered by an express written contract."); *Leba v. Sills,* 175 A.2d 599, 600 (D.C. 1961) ("it has consistently been held that a plaintiff cannot claim or recover on a quantum meruit theory when the rights of the parties and the basis of compensation are covered by special contract.").

[31]  *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990) ("a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished."); *In re Walston,* 2007 WL 1378512, *8 (Tex. App.-Waco 2007) ("a litigant generally may not recover in quantum meruit if there is a contract which is enforceable against the party from whom the litigant seeks to recover."); *Jones v. Blume,* 196 S.W.3d 440, 451 (Tex. App.-Dallas 2006, pet. denied) ("Where services are covered by an express contract, however, the remedy of *quantum meruit* is generally not available."); *Double Diamond, Inc. v. Hilco Elec. Co-op.,* 127 S.W.3d 260, 268 (Tex. App.-Waco 2003, no pet.) ("If the delivery of services and materials, and payment for them, are governed by a valid contract, the action sounds in contract, not quantum meruit.").

the parties here did have a contract that informed the parties' obligations, unless and until amended, the Court should dismiss, for this reason alone, the firm's *quantum-meruit* claim.

Even more fundamentally, the Court should dismiss the firm's *quantum-meruit* claim because the remedy is available only when a defendant has enjoyed an actual benefit from any services for which it has not been compensated. As this Court in *Novecon, Inc. v. Bulgarian-American Entrpr. Fund*[32] explained:

> with regard to the claim for *quantum meruit,* Novecon cannot show that it rendered any "valuable services" to BAEF ... [because] [a]lthough Novecon contends that it performed certain, unspecified "work" for BAEF, presumably referring to its preliminary negotiations with the Batsov family, it is clear from the record that such work–although causing a detriment to Novecon–resulted in nothing of value to BAEF. "[A] party's expenditures in preparation for performance that do not confer a benefit on the other party do not give rise to a restitution interest." *See* Restatement (2d) of Contracts § 370 cmt. (1981): *see also id.* illus. 2: E. Allan Farnsworth, Farnsworth on Contracts. § 3.26a, at 314 ("[T]he claimant must be able to show that its services resulted in a[n] actual benefit to the defendant."). Accordingly, there is no basis for a finding of unjust enrichment.[33]

Similarly, the court in *Carr v. Forty*[34] explained:

> To prevail on a quantum meruit claim, the plaintiff must establish that the services were valuable from the perspective of the defendant. If the services rendered do not confer any benefit on the defendant, there can be no recovery for the reasonable value of the benefit conferred because the services are not deemed valuable.

---

[32] 967 F. Supp. 1382 (D.D.C. 1997).

[33] *Id.* at 1389 (some citations omitted; emphasis in original); *see also King & King*, 436 F. Supp. 2d at 14 (*quantum-meruit* claim "fails ... because plaintiff has not adequately alleged that defendants obtained any identifiable, tangible benefit as a result of plaintiff's legal services"), at 16 ("A complaint that fails to allege any benefit to defendants – as this complaint does – is inconsistent with the necessary showing.... Merely alleging that plaintiff provided defendants with legal representation in litigation, without an accompanying (and non-conclusory) assertion that defendants actually benefited therefrom, will not suffice to state a claim for which *quantum meruit* relief may be granted."), and at n.25 ("Plaintiff's assertion that it suffered a detriment ... [is] irrelevant....").

[34] 744 S.W.2d 267 (Tex. Ct. App. 1988).

> There is no evidence in the record to indicate any benefit appellant conferred on the appellees that was of value to them.[35]

Here, the *Complaint* contains absolutely no *factual* allegations reflecting any benefit that Mr. Kornman enjoyed from any services performed by the firm for which it did not receive compensation. A claim cannot survive Rule 12(b)(6) based on a conclusory allegation that the firm performed "valuable" services.[36] Under both D.C. and Texas law, as described above, what is "valuable" from the perspective of the firm is irrelevant, for purposes of a *quantum-meruit* claim, in the absence of a valuable benefit enjoyed by Mr. Kornman. Accordingly, the *quantum-meruit* claim in Count Two of the *Complaint* must be dismissed.

## 3. The Court Should Dismiss Count Three For Account Stated Because The Allegations Reflect A Dispute In Whether The Amount Was Owed In The Absence of Further Services.

Count Three of the *Complaint* alleges that the firm is entitled to recover fees based on an account stated. In Paragraph 17 of the *Complaint*, however, the firm expressly admits that Mr. Kornman "insisted" that more services were required before he would agree that the amounts in prior invoices were properly due and payable. The claim in Count Three poses a legal question regarding whether recovery can be available for an account stated when the person who allegedly receives the statements believes that more services are owed to him. Under the laws of D.C. and Texas, a party cannot state a claim for an account stated unless there is an express or sufficiently implied agreement that the amounts in past statements are properly due and payable.[37]

---

[35] *Id.* at 273 (citations omitted).

[36] *Johnson*, 451 F. Supp. 2d at 27.

[37] *See First National Realty Corp. v. Impact Advertising, Inc.*, 206 A.2d 579, 580 (D.C. 1965) ("The essential of an account stated is that '[a] balance must have been struck in such circumstances as to import a promise of payment on the one side and acceptance on the other ..., but mere retention of the bill does not always imply an admission of its correctness and a promise to pay."); *Arnold D. Kamen & Co. v. Young*, 466 S.W.2d 381, 388 (Tex. Civ. App. 1971) (account-stated claim requires "an agreement, express or implied, between the parties fixing the amount due; and a promise, express or implied, by the one to be charged, to pay such indebtedness").

Here, the firm admits in its own allegations that Mr. Kornman stated he would pay the amount demanded by the firm only if certain additional services were performed.[38] There is no allegation that those additional services were performed. There is also no allegation that Mr. Kornman ever unconditionally promised to pay the amounts at issue in the absence of additional services. These circumstances are hardly the type of situation in which parties have reached, either expressly or silently through the passage of time, an agreed-upon statement of account. The Court, therefore, should dismiss Count Three for account stated.

## CONCLUSION

Mr. Kornman should not have to pay fees for legal services for which he did not contract, that did not benefit him, and that are reflected in invoices with which he has raised a disagreement. Because the firm does not even allege that it seeks fees for services within the scope of its engagement agreement, for services that actually benefited Mr. Kornman, or for services as to which Mr. Kornman expressly or implicitly admitted a definite amount owed, the firm cannot state a claim for breach of contract, *quantum meruit*, or an account stated.

A law firm can avoid this result by drafting a broader scope of its retention and expressly accepting the broader responsibility. In the alternative, a law firm can amend its retention agreement when the scope of representation expands. Or a law firm can address billing issues more promptly so that significant disputes do not arise. Here, the firm chose not to take any of those measures. As a result, the firm has limited its rights to, at most, the value of uncompensated benefits enjoyed by Mr. Kornman or those amounts that he has unconditionally agreed to pay. Consistent with the allegations in the *Complaint*, Mr. Kornman has not enjoyed

---

[38] *See Compl.* at 4, ¶ 17.

any uncompensated benefits and has not unconditionally agreed to pay any amounts.  Hence, the

Court should dismiss the entire *Complaint* with prejudice.


Dated:  May 29, 2007                         Respectfully submitted,

                                             SULLIVAN & WORCESTER LLP


                                             /s/ Orlando E. Vidal
                                             Orlando E. Vidal, Esquire
                                             (D.C. Bar # 461815)
                                             1666 K Street, N.W., Suite 700
                                             Washington, D.C.  20006
                                             Ph.: (202) 775-6825
                                             Fax.: (202) 293-2275
                                             ovidal@sandw.com

Of counsel:
Barry S. Pollack

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____     :
                                      :
ROBBINS, RUSSELL, ENGLERT,            :
ORSECK & UNTEREINER LLP,              :
                                      :
                  Plaintiff           :     Case No. 1:07-cv-00554-JR
                                      :
            v.                        :
                                      :
GARY KORNMAN,                         :
                                      :
                  Defendant.          :
_____:

### <u>ORDER</u>

For the reasons given by defendant in his *Memorandum of Law*, the Court **GRANTS** his

*Motion to Dismiss* and dismisses the *Complaint* with prejudice.


By the Court:



                                   _____
                                                        Judge


Dated: _____