UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
:
ROBBINS, RUSSELL, ENGLERT,          :
ORSECK & UNTEREINER LLP,            :
                                    :
       Plaintiff          :   Case No. 1:07-cv-00554-JR
                                    :
       v.                 :
                                    :
GARY KORNMAN,                       :
                                    :
       Defendant.         :
_____:

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF GARY KORNMAN'S MOTION TO DISMISS**

    Defendant Gary Kornman respectfully submits this reply in further support of his motion to dismiss all claims filed by Plaintiff Robbins, Russell, Englert, Orseck & Untereiner LLP (the "firm").

**PRELIMINARY STATEMENT**

    The content of Plaintiff's Opposition to Defendant's Motion to Dismiss (the "Opposition") and its substantial resort to extraneous materials confirm the inadequacy of each of the three claims as set forth in the Complaint. One of the most disingenuous aspects of Plaintiff's argument is that it "adher[ed] to the dictates of professional responsibility (*see* Rule 1.6 of the D.C. Rules of Professional Responsibility)" when drafting its "Complaint against Gary Kornman ... as bare bones – and shorn of details – as pleadings rules allow." Opposition at 1. In reality, the "bare bones" nature of the Complaint amounts to far less than the "pleadings rules

allow" for the particular claims because the Plaintiff simply lacks a good faith basis for making adequate allegations that satisfy each and every essential element of its claims.

Plaintiff may be creative in its argument that it relied on Rule 1.6 when refraining from making adequate allegations, but there is simply no authority holding that Rule 1.6 excuses a plaintiff from pleading facts necessary to support a valid cause of action against a former client. Importantly, the missing *and necessary* factual allegations are not of a nature that would have prejudiced Mr. Kornman any more than did the public disclosure of the existing allegations. For example, on the breach of contract claim in Count One, Plaintiff concedes, as it must, the expressly limited scope of the parties' *written* retention agreement, and now shifts to a theory of *oral* agreements. The missing *and necessary* allegation is that the parties reached additional oral agreements, including terms setting the scope of services and price, for any of the work beyond that contemplated by the written engagement letter. *See* Complaint, Count One, *passim*. With regard to the *quantum meruit* claim in Count Two, the missing *and necessary* allegation is that Mr. Kornman used, relied on, or otherwise benefited from services for which he did not already pay the Plaintiff's compensation. Finally, with regard to the claim for an account stated in Count Three, the missing *and necessary* allegation is that Mr. Kornman received invoices and acquiesced in them without objection or insisting on further work.

Plaintiff's argument that it refrained from making these simple *but necessary* allegations, out of respect for its ethical obligations to Mr. Kornman, is simply nonsense. None of these missing *and necessary* allegations would have prejudiced Mr. Kornman any more than Plaintiff's choice to file its existing Complaint. In its Opposition, Plaintiff now disparages Mr. Kornman with irrelevant matters to which the Complaint does not even refer. Nowhere in the Complaint does the Plaintiff set forth allegations of fact reflecting: (1) Mr. Kornman's acceptance of

specific terms to support the existence of a definite oral agreement; (2) any manner in which Mr. Kornman used, relied on, or otherwise benefited from services by Plaintiff for which it has not been compensated; and (3) Mr. Kornman's acquiescence in statements of account without insisting on further services.

The law, legal ethics, and public policy favor written engagement letters between lawyers and clients. Plaintiff chose to limit the scope of its written retention letter. Plaintiff chose not to update the retention letter in writing when it performed additional work. Plaintiff chose to provide additional services without a written agreement. Plaintiff chose to provide additional services without an explicit oral agreement regarding fees. Plaintiff chose to devote manpower to Mr. Kornman's matters, even when Plaintiff believed significant fees remained outstanding and overdue, without seeking to resolve the disputed fees for approximately a year. By so doing, Plaintiff limited its potential rights to recover only the reasonable value of any benefit conferred upon Mr. Kornman, but the Complaint lacks any allegation of such a benefit. Accordingly, the law, legal ethics, and public policy are best served by precluding the factually inadequate claims in the Complaint.

## ARGUMENT

Plaintiff does not dispute the standard of review for this motion, which limits the Court to the factual assertions in the Complaint and only those inferences that can be drawn reasonably from them. *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 27 (D.D.C. 2006). Yet Plaintiff expands its discussion well beyond the facts in its Complaint, and distorts them, as set forth in more detail below. Importantly, Plaintiff has not requested leave to amend, in apparent recognition that there are no additional facts that would support its claims. Hence, the dismissal of Plaintiff's claims by this Court should be with prejudice.

1.   **The Court Should Dismiss The Breach-Of-Contract Claim Because Plaintiff Has Not Alleged Facts Reflecting An Oral Agreement.**

Plaintiff has shifted its theory from an alleged breach of a written agreement to an alleged breach of some undefined oral agreements. Paragraph 20 of the Complaint sets forth the only agreement on which Plaintiff's actual claim of a breach is based: "On or about October 5, 2004, Kornman retained Robbins Russell and entered into a contractual agreement under which Kornman would pay Robbins Russell for its performance of legal services." The other allegations in the breach-of-contract claim, found in Paragraphs 21 through 23, refer only to the October 5, 2004, retention agreement. No matter how much Plaintiff pretends, in its Opposition, that it has pleaded a breach of one or more undefined oral agreements, the actual content of the Complaint undermines its position.

Besides expressly limiting a contract claim to one based on the parties' written retention agreement, the Complaint lacks factual allegations on which any oral agreement can be found. The Complaint does not state any approximate date on which a pertinent oral agreement was reached. The Complaint does not state either offers or an acceptance of any particular terms. The Complaint does not state that Plaintiff fully or substantially performed the specific terms of any particular oral agreement. The Complaint does not set forth the satisfaction or absence of conditions precedent to any oral agreement. Indeed, the Complaint focuses only on Plaintiff's original theory of a breach of a written contract.

Mr. Kornman does not dispute that, under appropriate circumstances, parties can be found to have modified a written agreement. The problem with this theory, however, is that the Complaint never alleges (and Plaintiff cannot allege in good faith) such a modification. The Complaint does not allege that the parties ever agreed to a modification of the written agreement. Likewise, the Complaint does not allege the term(s) of any particular modification(s). Even if

4

there were some basis for alleging a modification, a defective claim in a Complaint cannot be salvaged with facts, arguments, and theories raised in briefs during motion practice. *See Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) ("even assuming these allegations [in the opposition brief] would constitute grounds for relief …, they cannot be considered in opposition to a motion to dismiss" if they do not appear in the Complaint). None of the cases on which Plaintiff relies even remotely suggests that a claimant can rely, in opposition to a motion to dismiss, on a purported contract modification that is not alleged in the underlying complaint.

With the Complaint lacking allegations reflecting an oral agreement or specific modification of the parties' retention agreement, Plaintiff misplaces reliance, in its Complaint, on the actual written retention agreement because of its limited scope. *See* Motion to Dismiss at 2-4, 6-7. Presumably the Plaintiff deliberately drafted a narrow retention agreement to limit its own obligations and exposure. By so doing, as a matter of law, the Plaintiff precluded a contractual recovery of fees for services not covered by the parties' express agreement. To hold otherwise would require this Court to rewrite the parties' contract and provide a windfall to Plaintiff, after Plaintiff had chosen to limit expressly its own contractual obligations and exposure. In sum, because the firm cannot allege that any fees remain outstanding for any services within the scope of the parties' express contractual agreement, the breach of contract claim in Count One must be dismissed.

### 2. The Court Should Dismiss The *Quantum-Meruit* Claim Because The Plaintiff Has Not Alleged Any Actual Benefit To Mr. Kornman.

Plaintiff turns *quantum-meruit* law on its head by arguing that it can recover for its services in quasi-contract even if Mr. Kornman enjoyed no benefit from the services at issue. For purposes of his motion, Mr. Kornman admits that a *quantum-meruit* claim can be stated by a law firm without alleging that the former client prevailed on a particular case or motion or the like. Here, the Complaint omits, however, any allegation that the Plaintiff actually used, relied on, or otherwise benefited from Plaintiff's uncompensated services. Paragraph 25 of the Complaint sets forth, in a conclusory manner, that certain services were valuable from Plaintiff's perspective, and Paragraph 28 sets that value as the amount Plaintiff chose to bill. Nowhere in the Complaint, however, is there any allegation that the services at issue had any value to Mr. Kornman.

Again, Mr. Kornman is not suggesting that a client receives value from a law firm, for *quantum-meruit* purposes, only when he wins a case or motion or the like. Plaintiff grossly mischaracterizes Mr. Kornman's position when arguing that a dismissal of the *quantum-meruit* claim would mean that only winning litigants can be liable to law firms in *quantum meruit*. *See* Opposition at 9. But a client does not receive value, for *quantum-meruit* purposes, merely because a firm devotes manpower to a project. *See Novecon, Ltd. v. Bulgarian-American Enter. Fund*, 967 F. Supp. 1382, 1389 (D.D.C. 1997) (claimant "cannot show that it rendered any 'valuable services'" to another party merely because it contends that it performed work for it), aff'd, 190 F.3d 556 (1999); *Carr v. Austin Forty*, 744 S.W.2d 267, 273 (Tex. Ct. App. 1987) ("To prevail on a quantum meruit claim, the plaintiff must establish that the services were valuable from the perspective of the defendant.").

Under these fundamental principles of *quantum-meruit* law, Plaintiff had the burden of alleging, at the very least, that Mr. Kornman made an actual use of its uncompensated services. The *Opposition* raises some unspecified use by Mr. Kornman of work by Plaintiff, but *the Complaint* simply does not allege any such facts. Even in the Opposition, Plaintiff fails to identify any specific work, for which it remains uncompensated, that Mr. Kornman used in a meaningful way. Instead, the Plaintiff argues that it "will, in time, produce substantial evidence that Kornman relied extensively" on its work product and that actual filings by Mr. Kornman "modeled" drafts that the Plaintiff had prepared. Opposition at 11. None of these assertions appears in the Complaint.

In addition, Plaintiff misplaces reliance on an argument that it can overcome the pending motion to dismiss by requesting discovery regarding whether its services had any value to Mr. Kornman. *See* Opposition at 11. None of the authority on which Plaintiff relies even remotely suggests that discovery should proceed when a *quantum-meruit* plaintiff fails to allege all essential elements of its claim. Even the case of *Fred Ezra Co. v. Pedas*, 682 A.2d 173 (D.C. 1996), on which Plaintiff extensively relies, *see* Opposition at 10, involved a complaint in which the claimant alleged that the defendant actually "*received* valuable consideration" and then described the benefit that the defendant enjoyed as a result of the uncompensated services. *Id.* at 177. Such allegations are completely absent from the Complaint against Mr. Kornman.

Notwithstanding Plaintiff's mischaracterization to the contrary, Mr. Kornman does not "profess surprise" that Plaintiff has sued him for fees beyond the scope of their agreement. *See* Opposition at 6. What is surprising is that Plaintiff has chosen to ignore the express language in the contract it drafted, while failing to identify any actual benefit received by Mr. Kornman for

7

which Plaintiff has not been compensated. It is axiomatic that the burden is on Plaintiff to allege facts establishing its legal right to further compensation.

In the Complaint, Plaintiff fails to meet its burden of alleging facts reflecting that Mr. Kornman actually benefited from any uncompensated services performed by the Plaintiff. Plaintiff attempts to excuse its failure based on some general "policy concerns about forcing law firms to describe how much more severe" a result a former client would have suffered. Opposition at 10. Plaintiff misses the mark entirely with this "policy" argument, which appears combined with efforts to disparage Mr. Kornman by referring to unproven allegations against him regarding securities-law claims. There is no "policy" that would have been violated by Plaintiff pleading the missing *and necessary* facts to support the claims in the Complaint.

All the Plaintiff had to do, if it had a good faith basis for doing so, was allege in the Complaint a single fact reflecting that Mr. Kornman enjoyed a benefit from its uncompensated services, such as by actually using or relying on such services in pleadings or otherwise. Based on the content of the Complaint, the only conclusion that can be reached is that the Plaintiff lacked a good faith basis for alleging that Mr. Kornman used or relied upon any of its uncompensated services. Vague references to the contrary, in an opposition to a motion to dismiss, do not save defective claims. *See Civic Ctr. Motors, Ltd.*, 387 F. Supp. 2d at 382 (refusing to consider items raised in opposition to motion to dismiss that did not appear in underlying complaint). Accordingly, the *quantum-meruit* claim in Count Two of the *Complaint* must be dismissed.

### 3. The Court Should Dismiss Count Three For Account Stated Because The Allegations Reflect A Dispute Over Whether The Amount Was Owed In The Absence Of Further Services

With respect to Count Three, the legal issue posed by our motion is whether a party can be deemed to agree to, or sufficiently acquiesce in, an account stated while "insisting" that further services must be performed before the amount would be treated as payable. Plaintiff argues that Mr. Kornman merely "wanted" more services before he would pay, not that he was actually "owed" such services. In the Complaint, however, Plaintiff admits that Mr. Kornman "insisted" on further services before he would agree to pay. *See* Complaint § 17.

For purposes of whether Plaintiff has sufficiently alleged a claim for an account stated, the dispute over whether Mr. Kornman stated that Plaintiff "actually owed" him more services is irrelevant. For purposes of the pending motion to dismiss, the relevant issue is whether the allegations reflect that Mr. Kornman unconditionally acquiesced or agreed to pay the invoices that have been sent and received. *See First Nat'l Realty Corp. v. Impact Advertising, Inc.*, 206 A.2d 579, 580 (D.C. Ct. App. 1965) ("The essential of an account stated is that '[a] balance must have been struck in such circumstances as to import a promise of payment on the one side and acceptance on the other …, but mere retention of the bill does not always imply an admission of its correctness and a promise to pay."); *Arnold D. Kamen & Co. v. Young*, 466 S.W.2d 381, 388 (Tex. Civ. App. 1971) (claim for account stated requires "an agreement, express or implied, between the parties fixing the amount due; and a promise, express or implied, by the one to be charged, to pay such indebtedness"). Plaintiff cites to *Dale Hilton, Inc. v. Rotwein*, 130 A.2d 312 (D.C. Mun. Ct. 1957), but in that case the parties had agreed on a lower bill and, unlike the present case, the factual assertions did not indicate any demand for further services by the client or "that the attorney's bill was exorbitant" for the services involved. *Id.* at 313.

Taking Plaintiff's allegations as true, by "insisting" on the performance of further services, Mr. Kornman could not have unconditionally agreed or acquiesced in paying invoices that he had received. Count Three must therefore be dismissed.

## CONCLUSION

Based on the foregoing, this Court should dismiss the Complaint and all underlying claims with prejudice. In the Opposition, Plaintiff desperately attempts to salvage its defective claims with vague and unsupported references to new and irrelevant (disparaging) facts. Obviously Mr. Kornman has been limited in his motion to the four corners of the Complaint and documents referenced therein. As can be gleaned from the submissions, however, Plaintiff's failure to allege each essential element of its claims arises from a lack of a good-faith basis for the requisite allegations, not from Plaintiff's professed respect for professional obligations to Mr. Kornman. In reality, and consistent with Plaintiff's own allegations, Plaintiff sought to limit its obligations and exposure by drafting a narrow retention agreement, received its full compensation under the parties' retention agreement, performed additional (sub-par) services that were useless to Mr. Kornman, and refused to finish work on which Mr. Kornman insisted, yet Plaintiff still received approximately 75% ($300,000.00) of the exorbitant fees that it has billed its former client for a relatively small role in a pretrial setting. Under these circumstances, this action should be dismissed in its entirety. The dismissal should be with prejudice because Plaintiff has not even asked for leave to replead.

**Case No. 1:07-cv-00554-JR**

**[CONTINUATION OF *REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GARY KORNMAN'S MOTION TO DISMISS*]**

        Respectfully submitted,

        SULLIVAN & WORCESTER LLP

        <u>/s/ Orlando E. Vidal</u>
        Orlando E. Vidal, Esquire
        (D.C. Bar # 461815)
        1666 K Street, N.W., Suite 700
        Washington, D.C. 20006
        Ph.: (202) 775-6825
        Fax.: (202) 293-2275
        ovidal@sandw.com

Of counsel:
Barry S. Pollack

June 13, 2007