IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBBINS, RUSSELL, ENGLERT ORSECK & UNTEREINER LLP, | : : : | |
| Plaintiff, | : : | Civil Action No. 1:07-cv-00554-JR/JMF |
| v. | : : | |
| GARY KORNMAN, | : : | |
| Defendant. | : | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION FOR CIVILITY OR PROTECTIVE ORDER

Plaintiff Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP ("Robbins Russell") submits this response to defendant Gary Kornman's September 19, 2007 submission, styled as a Motion for Civility or Protective Order.

Attached as Exhibit A to Mr. Kornman's motion are two August 30, 2007 letters written by undersigned counsel for Robbins Russell, addressed to lawyers who represented Mr. Kornman in the underlying criminal case in the Northern District of Texas. The first is to Jeffrey Tillotson, who served as Mr. Kornman's principal lawyer in that matter (*United States* v. *Kornman,* No. 3:05cr-00298 (N.D. Tex.) (Dkt. 12-13)), and the second is to Barry S. Pollack, who, in addition to representing Mr. Kornman in the present case, also signed Mr. Kornman's plea agreement, stood beside Mr. Kornman when he pleaded guilty (*id*., Dkt. 163), and again stood beside Mr. Kornman when he was sentenced for that felony conviction (*id*., Dkt. 170 at 2). Attached as Exhibit B is a September 17, 2007 letter from undersigned counsel addressed to the Managing Partners of Mr. Pollack's law firm, Sullivan & Worcester, LLP, urging that firm not to file the malpractice claim

against our firm that Mr. Pollack had previously outlined. In the present Motion, Mr. Kornman argues that these letters constitute "extrajudicial efforts to obtain privileged information" that demonstrate a "lack of civility" with which this Court has "expressed disfavor." Motion at 3-4. As we show below, the requested order is unwarranted, and the motion should be denied.[1]

    1. Because the letters about which Mr. Kornman complains were prompted by his counsel's threats to sue Robbins Russell for malpractice unless our collection action was "dismissed or otherwise resolved" (Kornman Aug. 27, 2007 Reply in Support of Motion to Stay Discovery at 2), it is important to understand the nature of that claim. Kornman asserts that on "multiple occasions," he requested certain advice from Robbins Russell about the pros and cons of pleading guilty (Counterclaim, ¶ 12), and that our firm's alleged failure to provide that advice "caused [Kornman] to suffer additional expenses, burdens and distress associated with criminal proceedings" (*id*. ¶ 26).[2]

    We advised Mr. Pollack long ago that this claim lacks any basis in law or fact. The premise of the claim is that it fell to Robbins Russell to discuss guilty plea options with Mr. Kornman. But Robbins Russell was not hired for that purpose; indeed, Robbins Russell did not even enter an appearance in Kornman's criminal case for the first six months following Kornman's indictment, and never set foot in Texas on Kornman's behalf. As Mr. Kornman himself acknowledged in the

---

[1] In disregard of Magistrate Judge Facciola's explicit direction to the parties, Mr. Kornman's motion (at 3) also purports to disclose the substance of discussions between the parties in the mediation. We decline to respond to those disclosures, other than to state that they are inaccurate.

[2] See also Kornman Sept. 6, 2007 Initial Disclosures at 4 ("At a trial in this matter, Mr. Kornman expects to prove to a jury that, among other things, he would have reached a plea agreement with the government earlier, thereby avoiding more than $1 million in attorneys' fees and related expenses, but for Robbins Russell failing to advise him properly . . . ."); Kornman Aug. 27, 2007 Reply in Support of Motion to Stay Discovery at 3 ("advice regarding the potential benefits of plea bargains . . . would have saved Mr. Kornman more than $2,000,000 in legal fees.")

reply brief in support of his motion to dismiss (at 10), Robbins Russell had only "a relatively small role in a pretrial setting." Although counsel doubtless intended that remark derisively at the time, it has the virtue of truth: Robbins Russell *did* have a "relatively small role" that *was* confined to the "pretrial settling." What is more, putting to one side the implausible contention that Mr. Kornman never received advice relating to the pros and cons of plea bargaining from any of his stable of criminal lawyers, Robbins Russell *did* discuss the plea bargaining process and sentencing guidelines with Kornman – ten months before he was indicted and fifteen months before Robbins Russell even entered an appearance in the criminal case. And finally, even if Mr. Kornman *could* prove that such discussions never took place, Kornman cannot possibly prove that, had Robbins Russell given him the advice he claims it did not, Kornman would have taken that advice by agreeing to an earlier plea, and the government would have offered terms that it ultimately offered only on the eve of trial, when the pressure for both parties had peaked. That is an ordinary course of events in a criminal case – especially one like Mr. Kornman's, which involved countless undecided motions. Mr. Kornman cannot and will not prove the lengthy chain of causation that is essential to his fanciful allegation of malpractice.

     Against that backdrop, our letters to Mr. Pollack and Mr. Tillotson (and to Kornman's other criminal counsel as well) were designed to serve two principal purposes. First, we asked these lawyers to "take all reasonable steps" to preserve documents that might bear on Mr. Kornman's then-threatened malpractice claim – a routine request under the circumstances. Second, given that the thrust of Mr. Kornman's threatened claim was that he was injured by Robbins Russell because none of his many other lawyers had ever advised him about the advantages of pleading guilty, we notified those other lawyers that, to whatever extent Robbins Russell may be liable on account of

Mr. Kornman's failure to plead guilty at an earlier date (he pled guilty the day before trial), these other lawyers might in turn be liable to Robbins Russell to the extent *they too* failed to persuade Mr. Kornman to plead guilty sooner.

    2. No aspect of these letters (or the letter to Sullivan & Worcester, urging it to refrain from pursuing a frivolous malpractice claim) was "uncivil," much less procedurally improper. First, there is not a word in the letters that is intemperate in the least, nor does Mr. Kornman identify any. To the extent Mr. Kornman's position is that the very sending of the letters was "uncivil," we strongly disagree. And as we have repeatedly advised Mr. Kornman's counsel, our need for discovery from Mr. Kornman's principal criminal counsel in the underlying matter arises entirely from Mr. Kornman's improvident decision to defend and counterclaim on grounds that implicate these third parties.

    Second, Mr. Kornman's suggestion that the letters are improper "efforts to obtain privileged information" (Kornman Motion at 3-4) is baseless. For one thing, the letters do not seek to "obtain" anything; they just request that potential witnesses preserve documents in their possession that may be relevant to Mr. Kornman's affirmative defenses and counterclaims. Not surprisingly (given the lack of any request for production in the letter), none of the recipients has produced any documents, though some have advised that they will in fact preserve relevant materials as requested.

    More fundamentally, Mr. Kornman has placed the substance of many otherwise privileged communications in issue, and thus his suggestion that such communications remain privileged is mistaken. As noted above, Mr. Kornman alleges in his malpractice counterclaim that Robbins Russell failed to give him certain advice, thereby "delaying" resolution of his criminal case. It therefore follows, for example, that the advice that *other* criminal counsel gave Mr. Kornman, and

how Kornman reacted to that advice, bears directly on the causation element of Kornman's malpractice claim. Similarly, in his Seventh Affirmative Defense, Kornman alleges that he "is not responsible" to pay for assignments given to Robbins Russell by his lead counsel, Jeffrey Tillotson, because such assignments were "outside the scope of [Tillotson's] authority." The veracity of that assertion obviously turns, at least in part, on the substance of discussions between Tillotson and Kornman. In his Fifth Affirmative Defense, Mr. Kornman avers that our firm "made arrangements" with Kornman's other counsel "to hide certain of its work from Defendant rather than openly communicate with him." That allegation makes a material witness of any Kornman lawyer with whom our firm ostensibly had such "arrangements" to "hide" things. And in his Second Affirmative Defense, Mr. Kornman alleges that he "understood that Plaintiff was required, in the criminal matter, to complete certain work before payment would be due, while the parties either negotiated or reached agreement on a flat fee arrangement." Since Mr. Kornman never gained any such understanding from *us*, we are entitled to find out whether he gained it from Mr. Tillotson.

    In short, Kornman's litigation positions make his principal criminal counsel highly material witnesses on a variety of issues – which no doubt explains why Kornman has listed Jeffrey Tillotson as a potential trial witness in his initial disclosures. Mr. Kornman cannot say (Letter at 2), on the one hand, that Tillotson and some of his other lawyers "may serve as witnesses" on his behalf, while at the same time resisting our requests for discovery from these lawyers on the basis of privilege. See, *e.g.*, *Koch* v. *Cox*, 489 F.3d 384 (D.C. Cir. 2007) ("A client waives th[e] privilege when he puts the attorney-client relationship in issue – for example, by suing the attorney for malpractice or by claiming he relied upon the attorney's advice. See, *e.g. United States* v. *Moody*, 923 F.2d 341, 352-

5

53 (5th Cir. 1991); Mueller & Kirkpatrick, Evidence § 5.30 (3d ed. 2003); Restatement (Third) of the Law Governing Lawyers § 80 (2000).").[3]

\* \* \* \* \*

We wish to assure the Court that we take with the utmost seriousness the Court's statements at the September 7 hearing concerning civility among counsel. At the same time, our law firm now stands accused by the defendant (albeit baselessly) of serious professional misconduct. We respectfully submit that our obligation to conduct this litigation in a civil fashion does not restrict our right to vindicate our positions by all reasonable means that are consistent with Federal Rules and the Rules of this Court.

We therefore submit that there is no basis to issue Mr. Kornman's proposed "civility" order. Our conduct in this litigation has been, and will continue to be, conducted in accordance with all of our legal and professional obligations.

---

[3] For this reason, we anticipate the need to schedule a conference call with your Honor regarding (i) our objections to Mr. Kornman's responses to document requests and interrogatories that we served on August 7, 2007 (Kornman states, among other things, that he will not provide any interrogatory answers or responsive documents to the extent they reflect the substance of communications between Mr. Kornman and his other lawyers), and (ii) Mr. Pollack's advice to us that he intends to instruct Mr. Tillotson, at his October 18 deposition, not to answer any questions that call for the substance of communications between Mr. Tillotson and Mr. Kornman.

Dated: September 26, 2007

Respectfully submitted,

     /s/ Gary A. Orseck
Gary A. Orseck (Bar No. 433788)
Alan D. Strasser (Bar No. 967885)
Matthew R. Segal (Bar No. 483486)
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, NW, Suite 411
Washington, DC  20006
Telephone: (202) 775-4500
Fax: (202) 775-4510

Attorneys for Plaintiff Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP