## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER LLP,

    Plaintiff/Counterclaim-Defendant

        v.

GARY M. KORNMAN,

    Defendant/Counterclaim-Plaintiff.

Case No. 1:07-cv-00554-JR/JMF

## DEFENDANT'S RESPONSE TO
## STATEMENT OF UNDISPUTED FACTS, STATEMENT OF
## TRIABLE ISSUES, AND COUNTERSTATEMENT OF UNDISPUTED FACTS

Defendant/Counterclaim-Plaintiff Gary M. Kornman ("Mr. Kornman") responds herein to the Statement of Undisputed Facts by Plaintiff/Counterclaim-Defendant Robbins, Russell, Englert, Orseck & Untereiner LLP as follows:

**Material Fact No. 1**:

In August 2004, the Securities and Exchange Commission brought an action against defendant Gary Kornman, under Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, for "repeated insider trading." See Aug. 18, 2004 SEC Complaint ¶ 1. The SEC sought to enjoin Kornman from selling securities, to fine him, and to disgorge his allegedly unlawful profits.

**Response to Material Fact No. 1**:

Not disputed, except to deny any implications regarding the merits of any of the allegations by the SEC, which were ultimately dismissed. *See* Exh. "1," Certification of Barry S. Pollack ("Pollack Cert."), Exh. K.

**Material Fact No. 2**:

On October 5, 2005, Kornman engaged Robbins Russell to represent him in the SEC's civil action.  Kornman specifically asked Robbins Russell to "research issues relating to the SEC's rulemaking authority and prepare a possible motion to dismiss" the SEC's complaint. The letter also reflected, more generally, that Kornman was "engaging [Robbins Russell] to represent [Kornman] in connection with the above-referenced litigation," which was the SEC's case against Kornman.

**Response to Material Fact No. 2**:

Not disputed, except to deny the vague use of the phrase "more generally."

**Material Fact No. 3**:

Kornman and Tillotson instructed Robbins Russell to perform additional work that went beyond the specific tasks mentioned in the engagement letter.  Kornman further expanded the scope of Robbins Russell's responsibilities after the United States Attorney's Office for the Northern District of Texas indicted Kornman on charges of insider trading and making false statements to the SEC.

**Response to Material Fact No. 3**:

Disputed, except to admit that the parties negotiated fixed fee agreements for certain finished work product in the criminal matter after the indictment was returned and that those services were not governed by the engagement letter for the civil matter. *See* Pollack Cert. Exhs. C, D, E; Exh. "2," Certification of Jeffrey Tillotson ("Tillotson Cert.") ¶¶ 8-9; Exh. "3," Certification of Gary M. Kornman ("Kornman Cert.") ¶¶ 8-14.

**Material Fact No. 4**:

Kornman and Tillotson both asked Robbins Russell to draft motions, give advice, and conduct research in connection with Kornman's criminal case.

**Response to Material Fact No. 4**:

Disputed, except to admit that the parties negotiated fixed-fee agreements for certain finished work product in the criminal matter. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-14.

**Material Fact No. 5**:

After providing those services for several months, the firm entered its appearance in that case. *Kornman*, No. 3:05-CR-0298P (N.D. Tex.) (Dkt. 20-22).

**Response to Material Fact No. 5**:

Not disputed, except for the vague use of the phrase "those services" because the parties negotiated fixed-fee agreements for certain finished work product. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-14.

**Material Fact No. 6**:

On April 9, 2007, Kornman pleaded guilty to making a false statement to the SEC.

**Response to Material Fact No. 6**:

Not disputed that Mr. Kornman pleaded guilty to one aspect of the false statement charge against him, which focused on stating in substance that he did not know certain information when in fact he knew a portion of it.

**Material Fact No. 7**:

Pursuant to the practice described in Robbins Russell's engagement letter, Robbins Russell issued monthly invoices to Kornman for its work in civil and criminal matters.

**Response to Material Fact No. 7**:

Disputed because the parties were not governed by the civil "engagement letter" for the criminal matter. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-14.

**Material Fact No. 8**:

Each invoice was mailed directly to Kornman's home, along with a cover letter from Lawrence Robbins. Each cover letter specified the time period covered by the invoice, listed the previous, unpaid balance (if any), and said that "If you have any questions, please do not hesitate to contact me."

**Response to Material Fact No. 8**:

Disputed because depositions have not yet been taken and, after reasonable inquiry, the information known or readily obtainable by Mr. Kornman is insufficient to enable him to admit or deny. *See* Pollack Cert. ¶¶ 13-14; Kornman Cert. ¶ 17.

**Material Fact No. 9**:

Robbins Russell always billed Kornman in quarter-hour increments at rates specified in the engagement letter and each invoice.

**Response to Material Fact No. 9**:

Disputed because the parties were not governed by the civil "engagement letter" for the criminal matter. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-14.

**Material Fact No. 10**:

The Engagement Letter stated that Robbins Russell "expect[ed] payment within twenty days after any statement is received."

**Response to Material Fact No. 10**:

Not disputed, except that the parties were not governed by the civil engagement letter for the criminal matter. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-14.

**Material Fact No. 11**:

Kornman timely paid in full Robbins Russell's first twelve monthly invoices, dated November 1, 2004 through February 2, 2006.

**Response to Material Fact No. 11**:

Not disputed.

**Material Fact No. 12**:

Following Robbins Russell's March 2006 invoice, Kornman stopped paying.

**Response to Material Fact No. 12**:

Not disputed, except to the extent that the phrase "stopped paying" suggests that payments were due, which were not. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-14, 16-25.

**Material Fact No. 13**:

By June 2006 – after Kornman had failed to pay Robbins Russell's March, April, and May invoices – the unpaid balance had grown to $116,208.25.

**Response to Material Fact No. 13**:

Disputed. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-14, 16-25.

**Material Fact No. 14**:

On June 5, 2006, Robbins sent Kornman an invoice for that amount and hand-wrote on the accompanying cover letter a demand for payment: "Gary – I would appreciate it if you could get rid of some of the older invoices.  Thanks.  Larry."

**Response to Material Fact No. 14**:

Disputed because depositions have not yet been taken and, after reasonable inquiry, the information known or readily obtainable by Mr. Kornman is insufficient to enable him to admit or deny, except to state that the parties were not governed by the civil engagement letter for the criminal matter.  *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-14.

**Material Fact No. 15**:

Kornman failed to respond to invoices dated July 5 (for $144,250.11), August 3 (for $146,842.23), and September 7 (for $148,121.29).

**Response to Material Fact No. 15**:

Disputed.  *See* Tillotson Cert. ¶¶ 12-15; Kornman Cert. ¶¶ 20, 25.

**Material Fact No. 16**:

Kornman and Tillotson (on Kornman's behalf) nevertheless continued to request legal services from Robbins Russell.

**Response to Material Fact No. 16**:

Disputed because they were requesting the completion of legal services already owed to Mr. Kornman.  *See* Tillotson Cert. ¶¶ 12-15; Kornman Cert. ¶¶ 20, 25.

**Material Fact No. 17**:

On September 27, 2006, Robbins Russell sent to Mr. Tillotson by e-mail a copy of Kornman's unpaid invoices through August 2006.

**Response to Material Fact No. 17**:

Disputed because depositions have not yet been taken and, after reasonable inquiry, the information known or readily obtainable by Mr. Kornman is insufficient to enable him to admit or deny whether Robbins sent such an email. Pollack Cert. ¶¶ 13-14.

**Material Fact No. 18**:

On October 4, 2006 – nearly eight months after Kornman's last payment – Robbins Russell sent Kornman an invoice for $149,020.29. Robbins hand-wrote the following note on the cover letter to the October 4, 2006, invoice:

> Gary –
>> I hope Jeff [Tillotson] has given you a set of the invoices I just e-mailed to him [on September 27, 2006]. I would really like to get these bills cleared up very soon. Thanks,
>> Larry

**Response to Material Fact No. 18**:

Disputed because depositions have not yet been taken and, after reasonable inquiry, the information known or readily obtainable by Mr. Kornman is insufficient to enable him to admit or deny whether Robbins sent such an email. Pollack Cert. ¶¶ 13-14. In addition, Mr. Kornman states that the February 10, 2006 "last payment" from Mr. Kornman was intended as an escrow deposit. *See* Pollack Cert. Exh. G.

**Material Fact No. 19**:

On September 20, 26, and 27, 2006 – after Kornman's balance had exceeded $148,000 – Robbins sent text messages to Kornman asking him to call.

**Response to Material Fact No. 19**:

Disputed that any "balance" was due at that time. Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9; Kornman Cert. ¶¶ 8-25.

**Material Fact No. 20**:

On September 27, Robbins wrote Kornman to make sure he knew that the "[i]nvoices have been sent to [Tillotson] per your request."  Kornman immediately replied, "Thanks." Robbins then sent additional text messages to Kornman on October 4, 5, and 24.

**Response to Material Fact No. 20**:

Disputed because depositions have not yet been taken and, after reasonable inquiry, the information known or readily obtainable by Mr. Kornman is insufficient to enable him to admit or deny why Robbins sent text messages.  Pollack Cert. ¶¶ 13-14.

**Material Fact No. 21**:

Kornman called Robbins after receiving the October 24 text message.  He first assured Robbins that the outstanding bills would be paid.  But he then insisted that Robbins Russell do yet *more* work on his behalf before he would pay the outstanding balance.

**Response to Material Fact No. 21**:

Disputed, except undisputed that Mr. Kornman insisted that the Robbins Firm still owed him finished work product before any fees were payable.  *See* Tillotson Cert. ¶¶ 12-15; Kornman Cert. ¶¶ 20, 25.

**Material Fact No. 22**:

Robbins declined that new request.  Kornman responded that Robbins Russell had performed subpar work that was of no use to him.

**Response to Material Fact No. 22**:

Disputed that a "new request was made."  *See* Tillotson Cert. ¶¶ 12-15; Kornman Cert. ¶¶ 20, 25.

**Material Fact No. 23**:

This was the first and only time, over the entire course of Kornman's engagement of Robbins Russell, in which Kornman had uttered so much as a word of criticism of Robbins Russell's work.

**Response to Material Fact No. 23**:

Disputed because Mr. Kornman had raised issues with delays in receiving completed or near completed work product. *See* Tillotson Cert. ¶¶ 12-15; Kornman Cert. ¶¶ 20, 25.

**Material Fact No. 24**:

At Kornman's request, Robbins Russell sent its prior work product to Tillotson on October 26, 2006, for Kornman's review.

**Response to Material Fact No. 24**:

Not disputed.

**Material Fact No. 25**:

Kornman responded by sending the following text message to Robbins on October 26, 2006: "Larry, [Tillotson's] assistant is out on vacation. I won't be able to get the documents you have done from [Tillotson's] [e]-mail until late next week."

**Response to Material Fact No. 25**:

Disputed because depositions have not yet been taken and, after reasonable inquiry, the information known or readily obtainable by Mr. Kornman is insufficient to enable him to admit or deny why Robbins sent text messages. Pollack Cert. ¶¶ 13-14.

**Material Fact No. 26**:

Robbins replied later that day, "Gary[,] [Tillotson] tells me that he can get you the documents right away so that we can get this done asap." Kornman's response came less than 45 minutes later: "Ok."

**Response to Material Fact No. 26**:

Disputed because depositions have not yet been taken and, after reasonable inquiry, the information known or readily obtainable by Mr. Kornman is insufficient to enable him to admit or deny why Robbins sent text messages. Pollack Cert. ¶¶ 13-14.

**Material Fact No. 27**:

That was the last communication from Kornman to Robbins Russell concerning the unpaid bills before this litigation began.

**Response to Material Fact No. 27**:

Disputed because depositions have not yet been taken and, after reasonable inquiry, the information known or readily obtainable by Mr. Kornman is insufficient to enable him to admit or deny why Robbins sent text messages. Pollack Cert. ¶¶ 13-14. In addition, Mr. Kornman disputes that any payments were due on the bills as issued. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9, 12-15; Kornman Cert. ¶¶ 8-25.

**Material Fact No. 28**:

At no time did Kornman or anyone speaking on his behalf ever call, write, e-mail, text-message, or otherwise communicate to anyone at Robbins Russell that he questioned or disputed any entry on any of Robbins Russell's invoices.

**Response to Material Fact No. 28**:

Disputed. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9, 12-15; Kornman Cert. ¶¶ 8-25.

**Material Fact No. 29**:

On October 31, 2006, and November 8, 2006, Larry Robbins sent demand letters to both Kornman and Tillotson seeking payment by November 15, 2006.   The first of those letters explained:

> Although you (and [Tillotson], on your behalf) have several times promised to pay these invoices in full – including as recently as [October 24, 2006] – you have yet to do so.
>
> ****
>
> Gary, I deeply regret that matters have deteriorated to the point that I have had to send you this kind of letter.  I cannot recall ever having done so with a client in nearly 30 years of law practice.  But I find that I have exhausted nearly every other remedy at this point.  I am therefore constrained to demand payment in full of all outstanding invoices – a total of $149,021.29 – by no later than November 15, 2006.

**Response to Material Fact No. 29**:

Not disputed, except to the extent that the actual message varies from this assertion.

**Material Fact No. 30**:

Kornman ignored these demand letters.

**Response to Material Fact No. 30**:

Disputed, except admits that he did not respond again directly to the Robbins Firm regarding the demand letters, beyond what he had already stated.  *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9, 12-15; Kornman Cert. ¶¶ 8-25.

**Material Fact No. 31**:

Kornman has not paid any portion of his outstanding bill of $149,021.29.

**Response to Material Fact No. 31**:

Disputed. *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9, 12-16; Kornman Cert. ¶¶ 8-25.

## STATEMENT OF TRIABLE ISSUES

Mr. Kornman respectfully submits the following list of genuine triable issues of material fact that preclude summary judgment on the Robbins Firm's claim for an account stated:

**Triable Issue No. 1**:  Whether the parties had a meeting of the minds on fixed-fee or hourly billing for work done by the Robbins Firm on the criminal matter.  *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9, 12-15; Kornman Cert. ¶¶ 8-25.

**Triable Issue No. 2**:  Whether the Robbins Firm improperly or mistakenly applied Mr. Kornman's $50,000 escrow deposit, without his consent, toward invoices.  *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶ 16; Kornman Cert. ¶¶ 21-24.

**Triable Issue No. 3**:  Whether, while the Robbins Firm issued invoices at issue, Mr. Kornman insisted that he was owed finished work product before fees were due.  *See* Tillotson Cert. ¶¶ 12-15; Kornman Cert. ¶¶ 20-25.

**Triable Issue No. 4**:  Whether the Robbins Firm fulfilled any of its obligations to deliver finished work product in the criminal matter.  *See* Pollack Cert. Exhs. C, D, E; Tillotson Cert. ¶¶ 8-9, 12-15; Kornman Cert. ¶¶ 8-25.

**Triable Issue No. 5**:  Whether Mr. Kornman repeatedly disputed any obligation to pay the Robbins Firm amounts it claimed was owed before it delivered finished work product.  *See* Tillotson Cert. ¶¶ 12-15; Kornman Cert. ¶¶ 20-25.

**Triable Issue No. 6**:  Whether the Robbins Firm breached its fiduciary duties to Mr. Kornman by attempting aggressively to expand its role and billings, agreeing to a fixed fee and

then billing on an hourly basis, and making an unauthorized application of $50,000 from Mr. Kornman's escrow account toward disputed bills, without providing fundamental advice on advantages of a guilty pleas. *See* Kornman Cert. ¶¶ 6-27.

## COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS

Mr. Kornman respectfully submits the following counterstatement of undisputed material facts that require summary judgment in his favor:

**Undisputed Fact No. 1**:  By its express terms, the only written "engagement letter" between the parties covered work done on a civil matter brought by the SEC against Mr. Kornman. *See* Kornman Cert. ¶ 2.

**Undisputed Fact No. 2**:  The Robbins Firm drafted that engagement letter. *Id.*

**Undisputed Fact No. 3**:  The parties never discussed applying the terms of the engagement letter to work on a subsequent criminal matter. *Id.* ¶¶ 6-14; Tillotson Cert. ¶11.

**Undisputed Fact No. 4**:  As the Robbins Firm communicated with Tillotson regarding its involvement in the criminal matter, the Robbins Firm agreed, on or about January 3, 2006, to propose a flat rate for completion of a motion to dismiss. Pollack Cert. Exh. C.

**Undisputed Fact No. 5**:  On or about January 3, 2006, the Robbins Firm communicated to Tillotson in part that its "only qualm about a flat rate, [by the way], is gary's [sic] usual desire to edit until the very last minute, but we can build in some extra time for that and take the risk that we've underbid." *Id.*

**Undisputed Fact No. 6**:  On or about January 6, 2006, the Robbins Firm communicated to Tillotson in part that "here is a proposal for the motion to dismiss the indictment: flat fee of 100K to do the opening brief, the reply brief, and any oral argument the court permits." Pollack Cert. Exh. D.

**Undisputed Fact No. 7**:  In January 2006, the parties agreed to a fixed fee of $100,000 for the Robbins Firm to complete an opening brief and a reply brief, and to participate in oral argument, on a motion to dismiss in the criminal matter.  *Id.*; Tillotson Cert. ¶ 9; Kornman Cert. ¶ 11.

**Undisputed Fact No. 8**:  Mr. Kornman and the Robbins Firm discussed directly with each other the completion of a motion to suppress and *Stringer* motion for the criminal matter. Kornman Cert. ¶ 12.

**Undisputed Fact No. 9**:  While working on the criminal matter, other than the January 6, 2006 email from Attorney Robbins to Attorney Tillotson regarding a flat-fee arrangement, the Robbins Firm never reduced to writing a fee agreement or engagement agreement for Mr. Kornman describing the fees for work on that matter, and never orally agreed to apply any of the terms of the engagement letter from the civil matter.  Kornman Cert. ¶¶ 9-14.

**Undisputed Fact No. 10**:  On or about February 10, 2006, Mr. Kornman issued a check to the Robbins Firm in the amount of $50,000 as a deposit against fees.  Pollack Cert. Exh. G.

**Undisputed Fact No. 11**:  The Robbins Firm applied the $50,000 deposit against hourly-rate billing for work on Mr. Kornman's criminal matter.  Kornman Cert. ¶ 21.

**Undisputed Fact No. 12**:  By October 24, 2006, Mr. Kornman and Tillotson had requested several times that the Robbins Firm produce completed work product on the motions for the criminal matter.  Kornman Cert. ¶¶ 13, 20; Tillotson Cert. ¶ 14.

**Undisputed Fact No. 13**:  On or about October 24, 2006, Mr. Kornman insisted on receiving the outstanding motions in finished form before any amounts would be paid to the Robbins Firm.   Kornman Cert. ¶ 25; Tillotson Cert. ¶ 15.

**Undisputed Fact No. 14**:  On or about October 26, 2006, the Robbins Firm produced what it referred to as nine months of work product.  Pollack Cert. Exhs. H, I, J.

**Undisputed Fact No. 15**: The Robbins Firm did not complete the opening brief on the motion to dismiss that was ultimately filed, did not perform any work on a reply brief, and did not participate in oral argument.  Kornman Cert. ¶ 16; Tillotson Cert. ¶ 12.

**Undisputed Fact No. 16**:  The Robbins Firm referred to its motion to suppress as a "draft," that Attorney Robbins had not even reviewed, the structure of which needed to be revisited and arguments in it needed to be "honed" or removed, and the draft was not ready for Mr. Kornman's eyes or the Court.  Pollack Cert. Exh. H.

**Undisputed Fact No. 17**:  With regard to the *Stringer* motion, the Robbins Firm provided a draft to Tillotson but they chose not to forward it to Mr. Kornman because they did not think it should be filed.  Kornman Cert. ¶ 16.

Respectfully submitted,

SULLIVAN & WORCESTER LLP


By: **/s/ Orlando E. Vidal**
    Barry S. Pollack, Esq. (admitted *pro hac vice*)
    Orlando E.  Vidal, Esq. (D.C. Bar # 461815)
    1666 K Street, N.W., Suite 700
    Washington, D.C.  20006
    Telephone: (202) 775-1200
    Fax: (202) 293-2275

**COUNSEL FOR GARY KORNMAN**

October 8, 2007

**1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, <br><br> Plaintiff <br><br> v. <br><br> GARY M. KORNMAN, <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) ) ) |
| GARY M. KORNMAN, <br><br> Counterclaim-Plaintiff <br><br> v. <br><br> ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, <br><br> Counterclaim-Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 1:07-cv-00554-JR

## CERTIFICATION OF BARRY S. POLLACK

BARRY S. POLLACK, hereby certifies the following:

1.    I am counsel of record for Defendant and Counterclaim-Plaintiff Gary M. Kornman ("Mr. Kornman") in the above-captioned matter.

2.    Attached hereto as Exhibit A is a true and correct copy of the civil case Engagement Letter from Larry Robbins to Mr. Kornman dated October 5, 2004.

3.      Attached hereto as Exhibit B is a true and correct copy of the pertinent Applications and Orders for Admissions Pro Hac Vice for Attorneys Gregory Poe, Alice Yao and Larry Robbins, dated April 12, 2006, in criminal proceedings.

4.      Attached hereto as Exhibit C is a true and correct copy of an email string between Larry Robbins and Jeffrey Tillotson, dated January 3, 2006, regarding a flat fee agreement.

5.      Attached hereto as Exhibit D is a true and correct copy of an email string between Larry Robbins and Jeffrey Tillotson, dated January 6, 2006, regarding a flat fee agreement.

6.      Attached hereto as Exhibit E is a true and correct copy of an email string between Larry Robbins and Jeffrey Tillotson, dated January 14, 2006, regarding acceptance of a flat fee agreement.

7.      Attached hereto as Exhibit F is a true and correct copy of a cancelled check from Mr. Kornman to Robbins, Russell, Englert, Orseck & Untereiner LLP for the amount of $20,000 dated October 6, 2004.

8.      Attached hereto as Exhibit G is a true and correct copy of a cancelled check from Mr. Kornman to Robbins, Russell, Englert, Orseck & Untereiner LLP for the amount of $50,000 dated February 10, 2006.

9.      Attached hereto as Exhibit H is a true and correct copy of an email string from Alice Yao and Jeffrey Tillotson, dated October 26, 2006.

10.     Attached hereto as Exhibit I is a true and correct copy of an email string from Alice Yao and Jeffrey Tillotson, dated October 26, 2006.

11.     Attached hereto as Exhibit J is a true and correct copy of an email string from Alice Yao and Jeffrey Tillotson, dated October 26, 2006.

12.     Attached hereto as Exhibit K is a portion of the docket from the SEC matter.

- 2 -

13.     Despite diligent efforts, Mr. Kornman has not yet had the opportunity to receive and review all documents requested from the Robbins Firm and has not yet had the opportunity to complete the deposition of any of its lawyers.

14.     This remaining discovery would likely shed light on the negotiation of fee agreements, any terms reached, the scope of any services performed by the Robbins Firm, and whether any of it was completed.

I hereby certify that the foregoing is true and correct to the best of my knowledge, this 8th day of October, 2007, subject to the pains and penalties of perjury.

_____
Barry S. Pollack

A

## ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP

1801 K STREET, N.W., SUITE 411
WASHINGTON, D.C. 20006
PHONE (202) 775-4500
FAX (202) 775-4510
www.robbinsrussell.com

Lawrence S. Robbins

(202) 775-4501
lrobbins@robbinsrussell.com

October 5, 2004

Via email: lfk_lfk@yahoo.com

Mr. Gary Kornman
3640 Haynie Avenue
Dallas, TX 75205

Re:     Engagement in *SEC v. Gary M. Kornman*,
          Civ. Action No. 3:04CV1803-L (N.D. Texas)

Dear Gary:

The purpose of this letter is to set forth the basis upon which this firm will provide legal services to you with respect to the above-named litigation.

1.       **Legal Services Provided**: You are engaging this Firm to represent you in connection with the above-referenced litigation; specifically, you have asked us to research issues relating to the SEC's rulemaking authority and prepare a possible motion to dismiss with respect to that subject matter. I will work principally with my partners Gregory Poe and Gary Orseck and my associate Alice Yao on this project. If at any time you have questions, concerns, or criticisms, please feel free to call. My direct dial number is (202) 775-4501 and my e-mail address is lrobbins@robbinsrussell.com.

2.       **Fees**: My fee will be $550 per hour, Gary's and Greg's will be $450 per hour, and Alice's will be $300 per hour. We may also, but only to the extent necessary, draw on other attorneys, most of whom are billed at rates lower than $325 per hour, but in no event would another lawyer's fee exceed my hourly rate. Our fees are generally based on the Firm's schedule of hourly rates. Our schedule of hourly rates for attorneys and other members of the professional staff is based on years of experience, specialization in training and practice, and level of

ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP

Mr. Gary Kornman
October 5, 2004
Page 2

professional attainment.  You have also agreed to pay a retainer of $20,000, one-half of which will be applied to fees as they accrue, and one-half held as a reserve against the final bill.

3.  Costs: It is sometimes necessary for us to incur other charges for items such as travel, lodging, meals, telecommunication expenses (telephone, telecopier and telex) and messengers.  Similarly, some matters require ancillary services such as photocopying, word processing, computerized legal research and staff overtime.

In order to allocate these charges fairly and keep billable rates as low as possible for those matters which do not involve such expenditures, these items are separately itemized on our statements.  Some charges represent out-of-pocket costs, some include an allocation of overhead costs associated with the items, and others include a combination of both factors.  It is the Firm's policy to maintain the costs of these items at reasonable levels.

4.  Billings: Our statements generally will be prepared and mailed during the month following the month in which services are rendered and costs advanced.  We expect payment within twenty days after any statement is received.

5.  Termination: You will have the right to terminate our representation at any time. You agree that we will have the same right, subject to an obligation to give you reasonable notice to arrange alternative representation.  You also agree that we will be relieved from the responsibility of performing any further work should you fail to pay any statement for fees and/or other charges unless other special arrangements have been mutually agreed upon.

6.  Acceptance of Engagement: Your acceptance of this engagement letter constitutes your understanding of, and consent to, the particular terms, conditions and disclosures described above.

*   *   *   *   *

10/18/04  19:18 FAX                                                    ☒004

ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP

Mr. Gary Kornman
October 5, 2004
Page 3

Please review the foregoing and, if it meets your approval, sign a copy of the letter and return it to us, together with a check in the amount of $20,000. If you have questions, please feel free to call me.

Very truly yours,

ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP

By: _____
Lawrence S. Robbins

APPROVED AND AGREED:

Gary Kornman

By: _____
Gary Kornman

**B**

**Gregory L Poe**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: gpoe@robbinsrussell.com
*TERMINATED: 11/02/2006*
*Designation: Retained*

DOCKET ENTRY #22
*Application and Order for Admission Pro Hac Vice by Gregory L Poe for Gary M Kornman.(see order for specifics) (Signed by Judge Jorge A Solis on 04/12/06) (lmr, ) (Entered: 04/13/2006)*



Receipt No.: 229762
Initials.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS _____ DIVISION

UNITED STATES OF AMERICA ,           §
                                     §
**Plaintiff**                        §
                                     §        3:05-CR-00298-P
v.                                   §        Case Number _____
                                     §
GARY M. KORNMAN          ,           §
                                     §
**Defendant**                        §

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
    FILED

   APR 1 2 2006

CLERK, U.S. DISTRICT COURT
By_____
```

## APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE*

Comes now  GREGORY L. POE _____, Applicant herein, and respectfully states the following:

**I.**    Applicant is an attorney and a member of the law firm of (or practices under the name of) ROBBINS RUSSELL ENGLERT ORSECK & UNTEREINER LLP , with offices at  1801 K ST NW STE 411 _____
                                              (Street Address)

WASHINGTON _____, DC _____, 20006 ____, 202-775-4500 ____.
(City)                    (State)     (Zip Code)   (Telephone No.)

**II.**   Applicant will sign all pleadings with the name  GREGORY L. POE _____

**III.**  Applicant has been retained personally or as a member of the above-named firm by

GARY M. KORNMAN _____ to provide
          (List All Parties Represented)

legal representation in connection with the above-styled matter now pending before the United States District Court, Northern District of Texas.

**IV.**   Since DECEMBER 10 , 1990 , Applicant has been and presently is a member in good standing of the bar of the highest court of the state of  DISTRICT OF COLUMBIA  where Applicant regularly practices law. Applicant's bar license number is 426020 _____.

**V.**    Applicant has been admitted to practice before the following courts:

| Court: | Admission Date: |
| --- | --- |
| US DISTRICT COURT, DISTRICT OF COLUMBIA | 1991 |
| US COURT OF APPEALS, DC CIRCUIT | 1990 |
| US SUPREME COURT | 1995 |

**VI.**   Applicant is presently a member in good standing of the bars of the courts listed in question V, except

as provided below: (list any court named in the preceding paragraph before which Applicant is no longer admitted to practice)

NONE

**VII.**    Applicant has never been subject to grievance proceedings or involuntary removal proceedings while a member of the bar of any state or federal court, except as provided below:

NONE

**VIII.**    Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

NONE

**IX.**    Applicant has filed for *pro hac vice* admission in the United States District Court, Northern District of Texas during the past three (3) years in the following matters:

Date of Application                    Case No. And Style
NOV. 23, 2004                          SEC V. KORNMAN, 3:04-CV-1803-L

(If necessary, attach statement of additional applications.)

**X.**    Local counsel of record associated with Applicant in this matter is JEFFREY M. TILLOTSON who has offices at LYNN TILLOTSON & PINKER, 750 N ST PAUL ST STE 1400, DALLAS TX 75201 ,
                              (Address)
214-981-3800                   .
(Telephone No.)

**XI.**    Check the appropriate box below.

For Application in a **Civil Case**

[ ]    Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

[✓]    Applicant has read and will comply with the local criminal rules of this court.

**XII.**    Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

SIGNED this 10TH day of APRIL , 2006 .

**GREGORY L. POE**

Printed Name of Applicant

Signature

    I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this 10TH day of APRIL , 2006 .

**GREGORY L. POE**

Printed Name of Applicant

Signature

---

### ORDER

The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☑    the application be granted. The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

☐    the application be denied. The Clerk of Court shall return the admission fee to the Applicant.

April 12, 2006
DATE

Jorge A. Solis
JUDICIAL OFFICER

Page 3 of 3

**Alice W Yao**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: ayao@robbinsrussell.com
*TERMINATED: 11/02/2006*
*Designation: Retained*

# DOCKET ENTRY #21

*Application and Order for Admission Pro Hac Vice by Alice W Yao for Gary M Kornman.(see order for specifics) (Signed by Judge Jorge A Solis on 04/12/06) (Imr, ) (Entered: 04/13/2006)*

P ok
ORIGINAL



Receipt No
Initials

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS _____ DIVISION

UNITED STATES OF AMERICA ,          §
                                    §
Plaintiff                           §
                                    §      3:05-CR-00298 – P
v.                                  §      _____
                                    §      Case Number
GARY M. KORNMAN          ,          §
                                    §
Defendant

> **U.S. DISTRICT COURT**
> **NORTHERN DISTRICT OF TEXAS**
> **FILED**
> APR 1 2 2006
> CLERK, U.S. DISTRICT COURT
> By_____

## APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE*

Comes now ALICE W. YAO _____, Applicant herein, and respectfully states the following:

I.      Applicant is an attorney and a member of the law firm of (or practices under the name of)
Robbins Russell Englert Orseck & Untereiner LLP , with offices at 1801 K ST NW STE 411 _____
                                                                    (Street Address)

WASHINGTON _____, DC _____, 20006 _____, 202-775-4500 _____
(City)                        (State)        (Zip Code)      (Telephone No.)

II.     Applicant will sign all pleadings with the name ALICE W. YAO _____

III.    Applicant has been retained personally or as a member of the above-named firm by

GARY M. KORNMAN _____ to provide
        (List All Parties Represented)

legal representation in connection with the above-styled matter now pending before the United States District
Court, Northern District of Texas.

IV.     Since MARCH 5 _____, 2003 , Applicant has been and presently is a member in good standing of the
bar of the highest court of the state of CALIFORNIA _____ where Applicant regularly practices law.
Applicant's bar license number is 224461 _____.

V.      Applicant has been admitted to practice before the following courts:
Court:                                          Admission Date:
DC Court of Appeals                             9/9/05
US Courts of Appeals for 5th,                   3/15/05
    8th & 11th Circuits                         4/14/04 & 12/2/04

VI.     Applicant is presently a member in good standing of the bars of the courts listed in question V, except

as provided below: (list any court named in the preceding paragraph before which Applicant is no longer admitted to practice)

NONE

VII.    Applicant has never been subject to grievance proceedings or involuntary removal proceedings while a member of the bar of any state or federal court, except as provided below:

NONE

VIII.    Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

NONE

IX.    Applicant has filed for *pro hac vice* admission in the United States District Court, Northern District of Texas during the past three (3) years in the following matters:

| Date of Application | Case No. And Style |
|---|---|
| NOV. 23, 2004 | SEC v. KORNMAN, 3:04-cv-1803-L |

(If necessary, attach statement of additional applications.)

X.    Local counsel of record associated with Applicant in this matter is **Jeffrey M. Tillotson** who has offices at LYNN TILLOTSON & PINKER, 750 N ST PAUL ST STE 1400, DALLAS TX  75201
(Address)
214-981-3800
(Telephone No.)

XI.    Check the appropriate box below.

For Application in a **Civil Case**

☐    Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

☑    Applicant has read and will comply with the local criminal rules of this court.

XII.    Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

Page 2 of 3

SIGNED this __10TH__ day of __APRIL__, __2006__.

**ALICE W. YAO**

Printed Name of Applicant

Signature

    I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this __10TH__ day of __APRIL__, __2006__.

**ALICE W. YAO**

Printed Name of Applicant

Signature

## ORDER

The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☑ the application be granted. The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

☐ the application be denied. The Clerk of Court shall return the admission fee to the Applicant.

*April 12, 2006*
DATE

*Jorge A. Solis*
JUDICIAL OFFICER

**Lawrence S Robbins**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: lrobbins@robbinsrussell.com
*TERMINATED: 11/02/2006*
*Designation: Retained*

# DOCKET ENTRY #20

*Application and Order for Admission Pro Hac Vice by Lawrence S Robbins for Gary M Kornman.(see order for specifics) (Signed by Judge Jorge A Solis on 04/12/06) (lmr, ) (Entered: 04/13/2006)*

P OK
ORIGINAL

229763
Receipt No.:
Initials:

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS _____ DIVISION

UNITED STATES OF AMERICA,      §

Plaintiff      §

      §      3:05-CR-00298 ~ P

v.      §      Case Number

GARY M. KORNMAN,      §

Defendant      §

<table>
<tr><td colspan="2">U.S. DISTRICT COURT<br>NORTHERN DISTRICT OF TEXAS<br>FILED</td></tr>
<tr><td colspan="2">APR 1 2 2006</td></tr>
<tr><td>CLERK, U.S. DISTRICT COURT</td></tr>
<tr><td>By _____<br>Deputy</td></tr>
</table>

## APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE*

Comes now  LAWRENCE S. ROBBINS _____ , Applicant herein, and respectfully states the following:

I.      Applicant is an attorney and a member of the law firm of (or practices under the name of) ROBBINS RUSSELL ENGLERT ORSECK & UNTEREINER LLP , with offices at  1801 K ST NW STE 411 _____

(Street Address)

WASHINGTON _____ , DC _____ , 20006 _____ , 202-775-4500 _____

(City)      (State)      (Zip Code)      (Telephone No.)

II.      Applicant will sign all pleadings with the name  LAWRENCE S. ROBBINS _____

III.      Applicant has been retained personally or as a member of the above-named firm by

GARY M. KORNMAN _____ to provide

(List All Parties Represented)

legal representation in connection with the above-styled matter now pending before the United States District Court, Northern District of Texas.

IV.      Since SEPTEMBER 22 , 1989 , Applicant has been and presently is a member in good standing of the bar of the highest court of the state of  DISTRICT OF COLUMBIA  where Applicant regularly practices law. Applicant's bar license number is  420260 _____ .

V.      Applicant has been admitted to practice before the following courts:

Court:      Admission Date:

PLEASE SEE ATTACHED

_____      _____

_____      _____

VI.      Applicant is presently a member in good standing of the bars of the courts listed in question V, except

as provided below: (list any court named in the preceding paragraph before which Applicant is no longer admitted to practice)

NONE

VII.    Applicant has never been subject to grievance proceedings or involuntary removal proceedings while a member of the bar of any state or federal court, except as provided below:

NONE

VIII.    Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

NONE

IX.    Applicant has filed for *pro hac vice* admission in the United States District Court, Northern District of Texas during the past three (3) years in the following matters:

Date of Application          Case No. And Style

NOV. 23, 2004                 SEC V. KORNMAN, 3:04-CV-1803-L

(If necessary, attach statement of additional applications.)

X.    Local counsel of record associated with Applicant in this matter is JEFFREY M. TILLOTSON who has offices at LYNN TILLOTSON & PINKER, 750 N ST PAUL ST STE 1400, DALLAS TX 75201

              (Address)

214-981-3800                 .

(Telephone No.)

XI.    Check the appropriate box below.

       For Application in a **Civil Case**

       ☐    Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil rules.

       For Application in a **Criminal Case**

       ☑    Applicant has read and will comply with the local criminal rules of this court.

XII.    Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

Page 2 of 3

SIGNED this __10TH__ day of __APRIL__ , __2006__ .

## LAWRENCE S. ROBBINS

Printed Name of Applicant

_[signature]_

Signature

 

I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this __10TH__ day of __APRIL__ , __2006__ .

## LAWRENCE S. ROBBINS

Printed Name of Applicant

_[signature]_

Signature

---

### ORDER

The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☑     the application be granted. The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

☐     the application be denied. The Clerk of Court shall return the admission fee to the Applicant.

_April 12, 2006_        _Jorge A. Sbs_

DATE                JUDICIAL OFFICER

## BAR ADMISSIONS

I am admitted to practice before the highest court of the District of Columbia and New York.

I am admitted to practice before these:

### State Courts:

|                      | Date of Admission | Bar No.  |
|----------------------|-------------------|----------|
| District of Columbia | 9/22/89           | 420260   |
| New York             | 12/9/80           | LR8917   |

### Federal Courts:

U.S. Supreme Court; US. Court of Appeals for the 1st, 2nd, 3rd, 4th, 8th, 9th, 10th, 11th, and D.C. Circuits, U.S. District Court for the District of Columbia; U.S. District Court for the Eastern District of New York; and the U.S. District Court for the Southern District of New York.

C

**Sarti, Dana I Wesley**

| | |
|---|---|
| **From:** | Robbins, Larry |
| **Sent:** | Tuesday, January 03, 2006 9:59 PM |
| **To:** | 'jmt@lynnllp.com' |
| **Cc:** | Poe, Greg |
| **Subject:** | Re: Komman |


Jeff -- I'm sure we can manage that, and I have no huge hesitation proposing a flat rate.
I infer that the deadlines have moved for dispositive motions since gary and I last spoke.
When is the brief due?  I will discuss this with greg and send an e-mail tomorrow with a
flat rate proposal.  My only qualm about a flat rate, btw, is gary's usual desire to edit
until the very last minute, but we can build in some extra time for that and take the risk
that we've underbid.  Finally, I'm generally around on friday, with a meeting that could
be moved around a call with you or gary.  Do you have a particular time in mind?  Larry
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Jeff Tillotson <jmt@lynnllp.com>
To: Robbins, Larry <lrobbins@robbinsrussell.com>
CC: Poe, Greg <gpoe@robbinsrussell.com>
Sent: Tue Jan 03 21:48:18 2006
Subject: RE: Kornman

Larry and Greg:

Sorry I missed your call.  I am in NYC for a depo but headed to LA tomorrow (hint: think
Rose Bowl).

Yeah -- wasn't that discovery ruling great?

I spoke with Gary.  He is the asked:  would your firm be willing to draft a motion to
dismiss the criminal case (on the prior grounds as well as the new diea(s) you developed
based on Judge Lindsay's ruling) and also do a motion to challenge the constitutionality
of the 10b5-2 satatute for a flat fee?

He is not being cheap but he thought if he could pay you once and do the while package it
might be better for you and him.

what do you think?  and what would it cost?  I think it is a great way to keep you on the
inside track on handling the case gogin forward.

Let me know.

Also, even if you won;t do a flat fee, I think i can persuade Gary to retain you for the
above motions since you know the case so well already.  Could you be prepared to throw out
your ideas on Friday?

Agains, let me know.


Jeff

-----Original Message-----
From: Robbins, Larry [mailto:lrobbins@robbinsrussell.com]
Sent: Mon 1/2/2006 12:22 PM
To: Jeff Tillotson
Cc: Poe, Greg
Subject: RE: Kornman


1

**D**

**Sarti, Dana I Wesley**

**From:**    Jeff Tillotson [jmt@lynnllp.com]
**Sent:**    Friday, January 06, 2006 6:48 PM
**To:**      Robbins, Larry
**Cc:**       Poe, Greg
**Subject:** RE: Motion to dismiss

No date yet.  We are expecting a new scheduling order.

Larry: This is a great proposal.  I will send it to gary asap.

Jeffrey M. Tillotson
**LYNN TILLOTSON & PINKER, LLP**
750 N. Saint Paul Street
Suite 1400
Dallas, Texas 75201

214.981.3838 (direct)
214.981.3800 (main)
214.981.3839 (fax)

jmt@lynnllp.com

visit:  www.lynnllp.com

---

**From:** Robbins, Larry [mailto:lrobbins@robbinsrussell.com]
**Sent:** Friday, January 06, 2006 5:33 PM
**To:** Jeff Tillotson
**Cc:** Poe, Greg
**Subject:** Motion to dismiss

Jeff – per my voice mail, here is a proposal for the motion to dismiss the indictment: flat fee of 100K to do the opening brief, the reply brief, and any oral argument the court permits.  The motion, as I conceive it, would seek to dismiss the two securities counts (1 and 2) on at least two grounds:  no duty (largely derived from our previous work); and no willfulness (especially given Judge Lindsay's conclusion that the underlying duty presents a very close case).  If there is an argument regarding the legality of the SEC interpretive rules, we would make it in connection with this part of the motion.  We may also want to consider a multiplicity attack on count 2.  As for Count 3 – the false statement count – we need to learn a bit more about the underlying evidence, but at least two arguments seem available:  (i) because there is no duty, Gary's statements, even if false, were immaterial to any matter within the SEC's jurisdiction; (ii) to the extent the false statement charge rests on the mere failure to confess wrongdoing, that cannot satisfy the statute.  There may be other arguments we have not yet considered.

Do you know the due date for the motion?

Have a good weekend.

Larry

10/2/2007

**E**

**Sarti; Dana l Wesley**

| | |
|---|---|
| **From:** | Robbins, Larry |
| **Sent:** | Saturday, January 14, 2006 3:25 PM |
| **To:** | 'jmt@lynnllp.com' |
| **Cc:** | Poe, Greg |
| **Subject:** | Re: Kornman |

Jeff -- got your and gary's voice mail -- sounds good -- I'll call monday morning (federal
holiday -- are you in?) And we can discuss getting started -- looking forward to truth and
justice prevailing!  Larry
----------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Jeff Tillotson <jmt@lynnllp.com>
To: Robbins, Larry <lrobbins@robbinsrussell.com>
Sent: Thu Jan 05 08:24:49 2006
Subject: Re: Kornman

It was really a fun time.
----------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Robbins, Larry <lrobbins@robbinsrussell.com>
To: Jeff Tillotson <jmt@lynnllp.com>
Sent: Thu Jan 05 05:39:55 2006
Subject: Re: Kornman

Congratulations on the national title!
----------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Jeff Tillotson <jmt@lynnllp.com>
To: Robbins, Larry <lrobbins@robbinsrussell.com>
Sent: Tue Jan 03 22:21:00 2006
Subject: Re: Kornman

Morning anytime.

I would suggest some sort of deal where if you hours are huge you get some more money.
----------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Robbins, Larry <lrobbins@robbinsrussell.com>
To: Jeff Tillotson <jmt@lynnllp.com>
CC: Poe, Greg <gpoe@robbinsrussell.com>
Sent: Tue Jan 03 20:58:36 2006
Subject: Re: Kornman

Jeff -- I'm sure we can manage that, and I have no huge hesitation proposing a flat rate.
I infer that the deadlines have moved for dispositive motions since gary and I last spoke.
When is the brief due?  I will discuss this with greg and send an e-mail tomorrow with a
flat rate proposal.  My only qualm about a flat rate, btw, is gary's usual desire to edit
until the very last minute, but we can build in some extra time for that and take the risk
that we've underbid.  Finally, I'm generally around on friday, with a meeting that could
be moved around a call with you or gary.  Do you have a particular time in mind?  Larry

1

**F**

Material Redacted



GARY M. KORNMAN
Material Redacted

9262

Oct 6 '04

Pay to the order of Robbins, Russell Etal          $ 20,000 00

Twenty Thousand Dollars + 00/00                    dollars

Material Redacted

for Deposit Against Fees          GMK

Material Redacted

**RREOUS000096**

**G**

Material Redacted



RREOUS000094

**H**

## Hoyle, Laura

**From:** Yao, Alice [ayao@robbinsrussell.com]
**Sent:** Thursday, October 26, 2006 5:56 PM
**To:** Jeff Tillotson
**Cc:** Robbins, Larry; Poe, Greg
**Subject:** FW: Draft Suppression Motion

Jeff,

Larry asked me to forward to you our work-product over the last nine months. To avoid duplication, I am sending you only the most recent versions of each document (motion to suppress, motion to dismiss the indictment, Rule 16 letter, and a research memo). The rest will follow in subsequent emails.

Alice

-----Original Message-----
From: Poe, Greg
Sent: Thursday, June 22, 2006 10:12 PM
To: 'Jeff Tillotson'
Cc: Robbins, Larry; Untereiner, Alan; Yao, Alice
Subject: Draft Suppression Motion


Jeff --

Attached is a draft of the suppression motion. As you'll see, it's for your eyes at this point. Larry hasn't had a chance to review this yet. I've restructured Alice's draft in a way that I think makes logical sense, but after some decisions are made about the relative strength of the arguments, we should revisit the issue of structure. As you'll see from my notes in the text, I'm skeptical about the fiduciary duty argument. The staleness argument, in my view, probably will go nowhere, but I'm not saying at this point that we shouldn't make it. The Fifth Amendment invocation argument is going to need more work. The Franks argument needs to be honed. Other notes (on the overbreadth/particularity points and especially on the computer search issue) are in the text. The document is now too long but cutting text will be very easy once we firm up the approach some more.

The attached pdf copy doesn't include italics, for some reason. The Word version has bad formatting due to the conversion. The draft was

9/10/2007

created using WordPerfect so you should open up that document if possible. By the time Gary looks at a draft, we can have a good copy of a Word document.

Let's talk about this when you have a chance. I'm not sure what Larry's schedule is but I expect he'll want to get into this at his first reasonable opportunity.

Greg


Gregory L. Poe
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
Telephone: (202) 775-4490
Fax: (202) 775-4510
www.robbinsrussell.com <http://www.robbinsrussell.com/>
gpoe@robbinsrussell.com <mailto:gpoe@robbinsrussell.com>


NOTICE:

This communication is intended solely for the use of the addressee. It may contain information that is privileged, confidential, exempt from disclosure under applicable law, and/or attorney work product. If the reader of this communication is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail and by telephone (at 202.775.4500) and immediately delete this communication (including any attachments).


--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.1.409 / Virus Database: 268.13.26/516 - Release Date: 11/3/2006


9/10/2007

## Hoyle, Laura

| | |
|---|---|
| **From:** | Yao, Alice [ayao@robbinsrussell.com] |
| **Sent:** | Thursday, October 26, 2006 5:57 PM |
| **To:** | Jeff Tillotson |
| **Cc:** | Robbins, Larry; Poe, Greg |
| **Subject:** | FW: Rule 16 Letter |

-----Original Message-----
**From:** Yao, Alice
**Sent:** Tuesday, March 14, 2006 2:27 PM
**To:** Yao, Alice; 'Pollack, Barry'; 'gmkornmanlegalprivileged@yahoo.com'; 'jmt@lynnllp.com'
**Cc:** Robbins, Larry; Poe, Greg
**Subject:** RE: Rule 16 Letter

Please ignore my last email, which includes duplicate attachments. Please work from these instead.

Alice

    -----Original Message-----
    **From:** Yao, Alice
    **Sent:** Tuesday, March 14, 2006 2:25 PM
    **To:** 'Pollack, Barry'; gmkornmanlegalprivileged@yahoo.com; jmt@lynnllp.com
    **Cc:** Robbins, Larry; Poe, Greg
    **Subject:** RE: Rule 16 Letter

    All,

    Please find attached the most recent version of the Rule 16 letter, which incorporates Barry's suggestion (with some minor edits), as well as a redline comparison to the version that I circulated yesterday.

    Alice

        -----Original Message-----
        **From:** Pollack, Barry [mailto:BPollack@colliershannon.com]
        **Sent:** Tuesday, March 14, 2006 11:32 AM
        **To:** gmkornmanlegalprivileged@yahoo.com; Yao, Alice; jmt@lynnllp.com
        **Cc:** Robbins, Larry; Poe, Greg
        **Subject:** RE: Rule 16 Letter

        One other concept we may want to address in the Brady letter is materiality. The following is a paragraph I have included in recent letters:

            Further, the Government must identify and provide any potentially exculpatory materials. It cannot evade its responsibility to produce *Brady* materials by asserting that in the Government's view the materials would not likely impact the result of the proceeding. United States v. Safavian, 233 F.R.D. 12,

16 (D.D.C. 2005)("The only question before (and even during) trial is whether the evidence at issue may be 'favorable to the accused'; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial.").

-----Original Message-----
**From:** Yao, Alice [mailto:ayao@robbinsrussell.com]
**Sent:** Monday, March 13, 2006 4:53 PM
**To:** Pollack, Barry; jmt@lynnllp.com
**Cc:** Robbins, Larry; Poe, Greg
**Subject:** Rule 16 Letter

All,

Please find attached the most recent version of the Rule 16 letter, which incorporates some of Barry's points, as well as a few edits that we made here. Also attached is a redline comparison to the last version that Larry circulated.

Alice

Alice W. Yao
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
Telephone:  (202) 775-4492
Fax: (202) 775-4510
www.robbinsrussell.com
ayao@robbinsrussell.com

This communication is for the use of the intended recipient only. It contains information that may be privileged, confidential, and/or attorney work product. If you are not the intended recipient, any use, disclosure, or copying of this communication is prohibited. If you received this communication in error, please notify the sender and permanently delete this communication.

This electronic message transmission contains information

from the law firm of Collier Shannon Scott, PLLC and is
intended only for the use of the individual or entity
to which it is addressed and may contain information
that is privileged, confidential and exempt from
disclosure under applicable law. If the reader of
this message is not the intended recipient, you are
hereby notified that any dissemination or distribution
of this communication to other than the intended recipient
is strictly prohibited. If you have received this
communication in error, please notify us immediately
by collect telephone at (202)342-8808 or electronic

9/10/2007

mail (WebGroup@colliershannon.com). Thank you.
For more information about Collier Shannon Scott,
PLLC, please visit us at http://www.colliershannon.com/

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.1.409 / Virus Database: 268.13.26/516 – Release Date: 11/3/2006

9/10/2007

J

**Hoyle, Laura**

---

**From:** Yao, Alice [ayao@robbinsrussell.com]
**Sent:** Thursday, October 26, 2006 5:57 PM
**To:** Jeff Tillotson
**Cc:** Robbins, Larry; Poe, Greg
**Subject:** FW: Kornman Research


-----Original Message-----
**From:** Robbins, Larry
**Sent:** Monday, January 30, 2006 7:58 PM
**To:** 'Jeff Tillotson'
**Cc:** Poe, Greg; Yao, Alice
**Subject:** FW: Kornman Research

Jeff -- I have described the basic content of this e-mail to Gary this evening. The short of the matter is this: We have a real shot -- though not a slam dunk -- to get the criminal case dismissed on collateral estoppel grounds if we can first obtain summary judgment in the civil case. Gary will want to read both the e-mail and the attached cases. I think you will find this intriguing.
Larry


-----Original Message-----
**From:** Yao, Alice
**Sent:** Monday, January 30, 2006 5:56 PM
**To:** Robbins, Larry
**Cc:** Poe, Greg
**Subject:** Kornman Research

Larry,

Unlike a denial of a motion to dismiss, an order granting a motion for summary judgment is a final judgment for purposes of 28 U.S.C. § 1291, and collateral estoppel and res judicata purposes. As I noted in an earlier email on research on the collateral estoppel effect of Judge Lindsay's language in his order denying our motion to dismiss, the elements of res judicata (claim preclusion) and collateral estoppel (issue preclusion) are well-established in the Fifth Circuit. The Fifth Circuit stated in *United States* v. *Shanbaum*, 10 F.3d 305 (5th Cir. 1994), that the application of the doctrine of res judicata "is appropriate only if four conditions are satisfied. First, the parties in a later action must be identical to (or at least be in privity with) the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits." *Id.* at 310. The four conditions necessary for the application of the doctrine of collateral estoppel are: "First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair." *Id.* at 311.

It seems that we have a strong argument that collateral estoppel should apply to preclude the relitigation of certain issues in the criminal case if we win summary judgment in the civil case, even if the government's appeal in the civil case is still pending. First, the allegations in the indictment closely track those made in the SEC complaint, with the exception of Count 3 (false

statements to the SEC). Second, the government will have a hard time arguing that the issues have not been "fully and vigorously litigated" in the civil case. It is fairly well-established that an order granting summary judgment (though not partial summary judgment) is a final judgment that should be accorded preclusive effect in subsequent litigation. For example, in *Exhibitors Poster Exch., Inc.* v. *Nat'l Screen Serv. Corp.*, 517 F.2d 110 (5th Cir. 1975), the Fifth Circuit held that two orders granting summary judgment collaterally estopped relitigation in the current case even though "they were entered upon a summary judgment without specific factual findings, rather than upon a trial of contested facts." *Id.* at 115. The court goes on to note that it rejected the plaintiff's argument in a previous opinion in the same case, holding that, "It would be strange indeed if a summary judgment could not have collateral effect." *Ibid.* (quoting *Exhibitors Poster Exch., Inc.* v. *Nat'l Screen Serv. Corp.*, 421 F.2d 1313, 1319 (5th Cir. 1970)). The fact that the appeal from the summary judgment order in the civil case might be pending when we file a motion in the criminal case should not affect the estoppel effect of the order itself. See *A.F. Pylant, Inc.* v. *Republic Creosoting Co.*, 285 F.2d 840 (5th Cir. 1961) ("we do not think that the fact, that the judgment in the Mississippi case has been appealed from, at all affects its binding force as res judicata"); see also *Avondale Shipyards, Inc.* v. *Insured Lloyd's*, 786 F.2d 1265, 1269 (5th Cir. 1986) ("'[t]he requirement of finality applies just as strongly to collateral estoppel as it does to res judicata'" (quotation omitted)). Section 13 cmt. f of the Restatement (Second) of Judgments supports that view: "There have been differences of opinion about whether, or in what circumstances, a judgment can be considered final for purposes of res judicata when proceedings have been taken to reverse or modify it by appeal. The better view is that a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo . . ." Third, it is clear that the issues litigated in the civil case (including whether Kornman owed a duty to either Mann or Pratt) are necessary to support an order granting summary judgment. Fourth, there do not seem to be any special circumstances that would render preclusion inappropriate or unfair.

Finally, although I have not found any case law in the Fifth Circuit, there is authority for the proposition that collateral estoppel can be applied in a criminal action even if the prior proceeding was civil in nature. See, *e.g.*, *United States* v. *Rogers*, 960 F.2d 1501, 1507 (10th Cir. 1992) ("The doctrine of collateral estoppel may be applicable where the first cause of action was civil and the second was criminal.") The fact that the actions are brought by different arms of the federal government does not preclude application of either res judicata or collateral estoppel because "[t]here is privity between the officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government." *Sunshine Anthracite Coal Co.* v. *Adkins*, 310 U.S. 381, 402-03 (1940).

Alice

Alice W. Yao
Robbins, Russell, Englert, Orseck & Untereiner LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
Telephone: (202) 775-4492
Fax: (202) 775-4510
www.robbinsrussell.com
ayao@robbinsrussell.com

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.1.409 / Virus Database: 268.13.26/516 - Release Date: 11/3/2006

9/10/2007

**K**

ADR, CLOSED, JURY, SANDERSON

**U.S. District Court**
**Northern District of Texas (Dallas)**
**CIVIL DOCKET FOR CASE #: 3:04-cv-01803**

Securities and Exchange Commission v. Kornman
Assigned to: Judge Sam A Lindsay
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 08/18/2004
Date Terminated: 05/31/2006
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**Securities and Exchange Commission**

represented by **J Kevin Edmundson**
US Securities & Exchange Commission
Fort Worth Regional Office
801 Cherry St Suite 1900
Fort Worth, TX 76102
817/978-3821
Fax: 817/978-2700 FAX
Email: edmundsonk@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Toby M Galloway**
US Securities & Exchange Commission
Fort Worth Regional Office
801 Cherry St Suite 1900
Fort Worth, TX 76102
817/978-6447
Email: gallowayt@sec.gov
*TERMINATED: 12/20/2005*

**Intervenor Plaintiff**

**United States of America**

represented by **Jeffrey J Ansley**
US Attorney's Office
Department of Justice
1100 Commerce
3rd Floor
Dallas, TX 75242
214/659-8784
Fax: 214/767-4100 FAX
Email: jeffrey.ansley@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Gary M Kornman**

represented by **Jeffrey M Tillotson**
Lynn Tillotson & Pinker
750 N St Paul St
Suite 1400
Dallas, TX 75201

214/981-3800
Fax: 214/981-3839 FAX
Email: jmt@lynnllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alice W Yao**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: ayao@robbinsrussell.com
*TERMINATED: 04/03/2007*

**Frank W Hill**
Hill Gilstrap
1400 W Abram St
Arlington, TX 76013
817/261-2222
Fax: 817/861-4685 FAX
Email: fh@hillgilstrap.com
*ATTORNEY TO BE NOTICED*

**Gregory L Poe**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: gpoe@robbinsrussell.com
*TERMINATED: 04/03/2007*

**Lawrence S Robbins**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: lrobbins@robbinsrussell.com
*TERMINATED: 04/03/2007*

**Ralph S Janvey**
Krage & Janvey
2100 Ross Avenue
Suite 2600
Dallas, TX 75201
214/969-7500
Fax: 214/220-0230 FAX
Email: rjanvey@kjllp.com
*ATTORNEY TO BE NOTICED*

V.

| 05/31/2006 | 52 | Memorandum Opinion and Order: The court conditionally grants 48 Motion to Dismiss without Prejudice; an entry of final order of dismissal will be held in abeyance until the limited discovery outlined in court's order is complete. Plaintiff's Motion to Stay of Discovery Pending Ruling on Dismissal is denied as moot. In light of the court's ruling, the District clerk is therefore instructed to submit a JS-6 form to the Administrative Office removing this action from the statistical records and administratively closing it. See order for specifics. (Signed by Judge Sam A Lindsay on May 31, 2006) (drc, ) (Entered: 06/01/2006) |
|---|---|---|
| 05/31/2006 | 53 | Order Directing Administrative Closure. See Memorandum Opinion and Order (docket #52) for specifics. (Signed by Judge Sam A Lindsay on May 31, 2006) (drc, ) (Entered: 06/01/2006) |

**2**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, )<br><br>Plaintiff )<br><br>v. )<br><br>GARY M. KORNMAN, )<br><br>Defendant )<br>─────────────────────────<br>GARY M. KORNMAN, )<br><br>Counterclaim-Plaintiff )<br><br>v. )<br><br>ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, )<br><br>Counterclaim-Defendant ) | Case No. 1:07-cv-00554-JR |

## CERTIFICATION OF JEFFREY TILLOTSON

I, Jeffrey Tillotson, do hereby certify as follows:

1.    I am an attorney licensed and authorized to practice in the State of Texas, where I have represented Gary M. Kornman ("Mr. Kornman"), who is the Defendant and Counterclaim-Plaintiff in the above-captioned action.  I make this Certification out of personal knowledge, unless indicated otherwise, in connection with the Motion for Summary Judgment by Robbins, Russell, Englert, Orseck & Untereiner LLP ("Robbins Russell").

1

2.      On or about September 2004, I made certain efforts with Mr. Kornman to find co-counsel to work on motion practice in a civil matter brought by the SEC in the Northern District of Texas.  I initiated contact with Robbins Russell, which had a strong reputation for appellate work in securities matters.

3.      On or about October 5, 2004, Mr. Kornman formally engaged Robbins Russell for the civil matter.  Robbins Russell appeared in and provided certain services in connection with the civil action.

4.      On or about November 16, 2005, an indictment was returned against Mr. Kornman in the Northern District of Texas.  The charges included claims of insider trading and making false statements.

5.      By that time, I had come to serve, at times, as a go-between for Robbins Russell and Mr. Kornman.   Basically, I helped guide projects and keep people updated in an effort to avoid duplicative efforts.  I am aware that Mr. Kornman and lawyers at Robbins Russell met and spoke directly with each other outside of my presence.

6.      Though I appeared in the criminal matter, my practice is limited to civil matters, a fact well known to both Robbins Russell and Mr. Kornman.   Other than my firm, Robbins Russell was the only other firm that worked for Mr. Kornman on both the SEC and criminal matter.

7.      After the criminal charges were filed, Larry Robbins indicated to me on several occasions that he would like to serve as the lead trial attorney in the criminal matter.  I suggested to Larry Robbins that his firm work on the criminal matter on a project-by-project basis, which might position him ultimately to serve as trial counsel.

2

8.     Based on my past experiences in the civil matter, Robbins Russell became quite expensive when completing work product. In an effort to address this issue, I worked with Mr. Kornman and Robbins Russell to establish a flat fee for a motion to dismiss, reply papers and oral argument.

9.     Based on my conversations with Larry Robbins where he agreed to the flat fee and the fact that Robbins Russell started working on the motion to dismiss, I understood that Robbins Russell had agreed to a flat fee of $100,000 for the preparation of a motion to dismiss and reply papers in support of that motion, as well as for the participation of Larry Robbins in oral argument on that motion.

10.     Over a period of several months, Larry Robbins continued to express his desire to broaden his firm's role in the criminal matter. On or about April 12, 2006, three attorneys from the Robbins Russell firm filed *pro hac vice* applications in the criminal matter in Texas.

11.     I do not recall participating in any discussions between Robbins Russell and Mr. Kornman regarding any fee arrangement for preparation of a motion to suppress and what has been referred to as a *Stringer* motion. I do not recall participating in any discussions between Robbins Russell and Mr. Kornman regarding any new deposit or retainer for work on the criminal matter. I also do not recall participating in any communication in which the parties agreed that any of the terms for representation in the civil matter would apply to work on the criminal matter.

12.     Eventually, I did receive drafts from Robbins Russell on a motion to dismiss, motion to suppress, and a *Stringer* motion. From a civil lawyer's perspective, the drafts were obviously incomplete and portions of them in rough form.

3

{B0684345; 1}

13.    I saw invoices from Robbins Russell related to the criminal matter, but would not have focused intensely on them because I understood that payment of the $100,000 flat fee for the motion to dismiss would not have been due until at least the motion and reply had been finished by Robbins Russell, which did not happen.    With regard to invoices that Robbins Russell sent to Mr. Kornman, there may also have been delays in reviewing them as they were delivered to me.

14.    While Robbins Russell worked on the motion to dismiss and motion to suppress, I informed them several times that the client and I were concerned at how long it was taking to get a finished product.    When they finally sent us incomplete work product for these motions, it quickly became clear that there was a dispute over fees.

15.    In a conference call with Larry Robbins in which I participated, Mr. Kornman insisted that Robbins Russell was required to finish these motions before any payment was due.

16.    At the time, I thought Robbins Russell was attempting to collect a total of approximately $150,000 for all of its work on the criminal matter.    I did not know that Mr. Kornman had previously made a payment of $50,000 to Robbins Russell for the criminal matter.    Accordingly, I did not appreciate the full scope of the dispute.

I certify that the foregoing is true and correct to the best of my knowledge, subject to the pains and penalties of perjury.

Dated:  October 3, 2007

_____
Jeffrey Tillotson

4

**3**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Case No. 1:07-cv-00554-JR |
| GARY M. KORNMAN, | ) ) ) | |
| Defendant | ) ) | |
| GARY M. KORNMAN, | ) ) ) | |
| Counterclaim-Plaintiff | ) ) | |
| v. | ) ) | |
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, | ) ) ) | |
| Counterclaim-Defendant | ) ) ) | |

## CERTIFICATION OF GARY M. KORNMAN

I, Gary M. Kornman, do hereby certify as follows:

1.      I am the Defendant and Counterclaim-Plaintiff in the above-captioned action, and I make this Certification out of personal knowledge, unless indicated otherwise, in support of my opposition to the Motion for Summary Judgment by Robbins, Russell, Englert, Orseck & Untereiner LLP (the "Robbins Firm"), focused on its "account stated" claim.

Retention of the Robbins Firm for Civil Matter

2.      On or about October 5, 2004, I signed a retention letter that engaged the Robbins Firm for legal services *on a civil matter* brought by the SEC and pending in the Northern District

of Texas. The Robbins Firm drafted this retention letter. Based on the letter and my prior conversations with Lawrence Robbins of the Robbins Firm, I understood that the retention letter covered only work by the lawyers of the firm on the particular civil action.

3.     Pursuant to the retention letter, at approximately the time I signed it, I paid a $20,000 retainer to the Robbins Firm.

4.     My local civil counsel in Texas, Jeffrey Tillotson, participated in various discussions and meetings with the Robbins Firm. At times, for convenience, Attorney Tillotson served as a go-between for the Robbins Firm and me. At times, the Robbins Firm and I communicated directly with each other.

5.     The Robbins Firm billed approximately $250,000 to me for the services it provided on the civil matter. I paid for all services on the civil case fully and on a timely basis. I believe I may have overpaid by $10,000 because the Robbins Firm has stated that it still holds $10,000 of my initial retainer in escrow because of our billing dispute.

Engagement in Connection with Criminal Proceeding

6.     On or about November 16, 2005, I learned that I faced an indictment in the Northern District of Texas, including allegations of insider trading and making false statements.

7.     On several occasions, Attorney Robbins suggested to me that I rely on him to serve as lead counsel at trial. We discussed this possibility and his views of the facts and the law relating to the criminal case.

8.     By that time, I had become concerned that the Robbins Firm's last steps of completing work product were routinely slow and expensive.

9.     To provide an incentive for the Robbins Firm to finish motion papers and the like,

2

I told Attorney Robbins that I wanted to pay his firm for projects on the criminal matter on a flat-fee or capped-fee basis. I am aware that Attorney Tillotson engaged in similar fee discussions with Attorney Robbins.

10.     At some point in my conversations with Attorney Robbins, I agreed to pay a $50,000 deposit against what I expected we would agree upon as reasonable fees for each project. This $50,000 payment was not required by the initial retention agreement, but rather was based on a new agreement to determine flat or capped fees for each significant project.

11.     Based on the fee negotiations among Attorney Robbins, Attorney Tillotson and myself, I understood that an agreement had been reached for a flat fee of $100,000, for the Robbins Firm to complete and file a motion to dismiss and reply papers, and to handle oral argument on that motion.

12.     I spoke to Attorney Robbins as well about a motion to suppress and a so-called *Stringer* motion. We agreed that the fees for those motions would not exceed $25,000 each, and that each might get done for as little as $20,000. Our discussions did not specify whether the Robbins Firm would participate in oral argument on those motions.

13.     Based on the fee negotiations among Attorney Robbins, Attorney Tillotson and myself, I understood that I did not owe anything for the motion projects until I received finished, ready-to-file work product and appropriate argument had been made on the motion to dismiss.

14.     We did not specifically discuss billing terms for unrelated *ad hoc* questions that might arise or for modest amounts of help with correspondence or the like.

15.     On or about April 12, 2006, three attorneys from the Robbins Firm filed *pro hac vice* applications and notices of appearance in the criminal matter in the Northern District of Texas.

3

{B0684344; 2}

### The Robbins Firm's Failure to Perform

16.     The Robbins Firm never provided to me a finished, ready-to-file motion to dismiss, never worked on a reply, and never did any oral argument on that motion.  A large portion of its work on the motion to dismiss copied work it had done, and for which it had been paid, in the civil matter.  The Robbins Firm sent at most a rough draft of a motion to suppress to Attorney Tillotson, informing him in an email that Attorney Robbins had not even looked at it, and that it was not ready for my eyes or the Court.  I never saw any version of the *Stringer* motion until after the commencement of this litigation, when the Robbins Firm produced an email reflecting that it had agreed with Attorney Tillotson to keep a draft from me, apparently in their view for my own good, without informing me of that decision.

### Invoices

17.     I am aware that the Robbins Firm issued a few invoices to me while or shortly after working on the criminal matter.  I do not recall which one(s) I may have seen.  Sometimes, my bills of those sort were handled by an assistant and simply forwarded to Attorney Tillotson who facilitated, at times, certain billing by other counsel through his firm.

18.     I would not have been surprised by a total invoice for work by the Robbins Firm on the criminal matter in the amount of $145,000 to $150,000 (like the amount on the invoices on which it now relies), had I received a finished, ready-to-file motion to dismiss, a finished ready-to-file motion to suppress, and a finished, ready-to-file *Stringer* motion.  That would have been consistent with the flat fee agreements of $100,000 for the motion to dismiss, and $20,000 to $25,000 for each of the motion to suppress and the *Stringer* motion.  I did not pay those amounts at the time of any invoices, however, because I had not yet received the finished work products.

4

25.    When Attorney Robbins made efforts directly with me to collect additional fees, I insisted that, consistent with our prior agreement, his firm complete, for filing, the three motion projects. He refused and, instead, his firm sued me.

Failure of the Robbins Firm to Provide Certain Fundamental Advice

26.    While the Robbins Firm worked on the motion to dismiss and Attorney Robbins attempted to convince me to use him as lead trial counsel, we discussed his views and theories of the case. He expressed to me, at least once, that the insider trading charges carried much stiffer penalties than the other charges. Neither Attorney Robbins nor any of the Robbins Firm's attorneys ever told me that, if convicted by a jury of making a false statement, but acquitted of insider trading, I could still be sentenced under the federal sentencing guidelines for insider trading, based on concepts of "cross-referencing" and "relevant conduct." Neither Attorney Robbins nor any of the Robbins Firm's attorneys ever told me that a plea agreement could help avoid such potentially devastating cross-referencing or relevant conduct determinations.

27.    Previously, I had asked Greg Poe at the Robbins Firm certain questions about sentencing risks. Attorney Poe broke out a book that contained information regarding the federal sentencing guidelines, but he never told me that I could be sentenced based on acquitted charges in the event of a partial conviction. He also did not tell me that a plea agreement could help avoid such a result. Instead, Attorney Poe gave me a very brief and general overview of what the guidelines were.

I certify that the foregoing is true and correct to the best of my knowledge, subject to the pains and penalties of perjury.

Dated:  October 3, 2007

_Gary M. Kornman_
Gary M. Kornman

{B0684344; 2}