## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, | ) ) ) ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-00554-JR/JMF |
| GARY M. KORNMAN, | ) ) | |
| Defendant/Counterclaim-Plaintiff. | ) ) | |

## DEFENDANT GARY M. KORNMAN'S OPPOSITION TO
## MOTION TO COMPEL BY PLAINTIFF ROBBINS RUSSELL

Defendant/Counterclaim-Plaintiff Gary M. Kornman ("Mr. Kornman") respectfully submits this memorandum in opposition to the motion to compel ("Motion") by Plaintiff/Counterclaim-Defendant Robbins, Russell, Englert, Orseck & Untereiner LLP ("Robbins Firm").

## BACKGROUND

Glaringly omitted from the Motion is any acknowledgement by the Robbins Firm that this dispute focuses on the Robbins Firm's unilateral and after-the-fact refusal to honor the parties' agreement to shift from an hourly billing structure for work on a civil matter to a *fixed-fee* arrangement, which *required completed work product*, in a criminal matter that followed. Not only is a fixed-fee agreement supported by the testimony of Mr. Kornman and others, but also by email exchanges with the Robbins Firm. Attached hereto as Exhibit A is a Certification of Mr. Kornman, as Exhibit B is a Certification of Jeffrey Tillotson, Esquire, and as Exhibit C are three pages of emails, which confirm a fixed-fee arrangement.

The issues in this matter are therefore quite narrow: (1) whether the parties agreed to fixed fees, rather than hourly rates, for finished work product by the Robbins Firm in connection with certain motions in the criminal matter; (2) whether the Robbins Firm provided finished work product to Mr. Kornman; (3) whether a $50,000 deposit that Mr. Kornman paid to the Robbins Firm for work on the criminal matter (in addition to $250,000 paid for work on the civil matter) reasonably compensated the Robbins Firm for any benefits to Mr. Kornman; (4) whether Mr. Kornman sufficiently demanded the completion of work product as a condition to payment of any further fees; and (5) whether the Robbins Firm breached its fiduciary duties to Mr. Kornman in a manner that requires it to forfeit fees.

At a prior hearing in this matter, this Court recognized the narrow issues in this case and cautioned that discovery would be kept under control and that the parties should already possess virtually everything they need for this action:

> I don't really know why you need any discovery at all….
> I'm not going to permit this thing to spin out of control into a big litigation quagmire.
>
> *       *       *       *
>
> I do agree with [Mr. Kornman's counsel] that a massive third-party discovery effort by the Plaintiff is not going to go anywhere.

*See* Tr. of 9/7/07 hearing at 6 (lines 10-14) and at 9 (lines 23-25).

Now, the Robbins Firm is attempting to push pressure points in its effort to extract hourly-based fees from Mr. Kornman after failing to finish requisite work product that was due before he owed fixed fees. One of its main efforts to pressure Mr. Kornman involves targeting privileged matters and communications with other attorneys. These matters are not reasonably necessary for the Robbins Firm to litigate its interests in this case.

The facts are simple. After working for Mr. Kornman on a civil SEC matter and receiving payment for the entirety of approximately $250,000 in fees for those services, the Robbins Firm attempted to expand its role into one of lead trial counsel in the criminal matter that followed. Among other things, Attorney Lawrence Robbins of the Robbins Firm set forth in an email, on January 6, 2006, at 5:33 p.m., the proposal relating to a motion to dismiss, which Mr. Kornman accepted: "**flat fee of $100K to do the opening brief, the reply brief, and any oral argument the court permits**." *See* Exh. C. Attorney Robbins had written shortly before that time that his "only qualm about a flat rate, btw, is gary's [sic] usual desire to edit until the very last minute, but we can build in some extra time for that and take the risk that we've underbid." *Id.* The parties also agreed to fixed fees of no more than $25,000 for the completion of each of a motion to suppress and a so-called *Stringer* motion, including respective reply papers. *See* Certification of Gary M. Kornman ("Kornman Cert.") ¶ 12). The Robbins Firm has withheld these facts from its motion to compel, its Complaint, and its motion for summary judgment.

It appears undisputed that Mr. Kornman provided to the Robbins Firm a deposit of $50,000 toward these fixed-fee projects on the criminal matter. Though the motion to dismiss was the major project on which the Robbins Firm worked during the course of the criminal matter involving Mr. Kornman, the Robbins Firm never completed the opening brief, never started the reply brief, and never participated in the oral argument, as expressly required in exchange for the $100,000 fixed fee. Likewise, the Robbins Firm provided only a rough "draft" of a motion to suppress, which Attorney Robbins had not even yet reviewed. And disagreeing with Mr. Kornman's desired strategy, the Robbins Firm withheld a draft *Stringer* motion from him, yet later expected him to pay for it. Contrary to professional obligations, the Robbins Firm

applied the $50,000 deposit to invoices without first obtaining Mr. Kornman's agreement to any amount owed.

The issues for trial should remain narrow. Attorneys are subject to ethical obligations regarding the establishment of *clear fee agreements* and *reasonable fees*. *See, e.g.,* D.C. R. Prof. Cond. 1.5. Mr. Kornman does not anticipate attempting to prove a "sub-par quality" of the Robbins Firm's work. Rather, at trial, Mr. Kornman intends to focus on the actual fee negotiations and agreements, the fact that the Robbins Firm provided only *incomplete* work product in connection with the criminal matter, his payment in full for the civil matter, and his payment of a $50,000 escrow deposit in the criminal matter.

Even Mr. Kornman's counterclaim seeks only forfeiture of fees as a remedy for the Robbins Firm's breach of fiduciary duty. Under the applicable Texas law on forfeiture, "causation" is not an element of the claim. Mr. Kornman has alleged his emotional distress only to indicate the nature of harm flowing from the sort of breach of fiduciary duty that occurred here. As confirmed by his prayer for relief, Mr. Kornman has not sought a monetary recovery for emotional distress. Hence, beyond certain communications involving Attorney Tillotson, Mr. Kornman's interaction with other counsel remains irrelevant.

Mr. Kornman has offered the following well-reasoned compromise with regard to the discovery of communications involving counsel:

> 1) With the appropriate confidentiality agreement in place, communications between Mr. Kornman or Attorney Jeffrey Tillotson, on the one hand, and the Robbins Firm, on the other, will not be withheld. (Mr. Kornman only requested a commitment that, among other ordinary safeguards and remaining ethical obligations, use of this information will be restricted to what is necessary in these proceedings.);

> 2) Again with an appropriate confidentiality agreement in place, fee negotiations with the Robbins Firm will not be withheld, and

instructions by Mr. Kornman to Attorney Tillotson regarding work by the Robbins Firm will not be withheld;

3) A reasonable search will be made for tapes or transcripts containing recordings of anyone at the Robbins Firm and any such portions will be produced.  (Mr. Kornman has assured the Robbins Firm that we did not intend to use any recordings we do not produce.); and

4) Mr. Kornman will produce law firm retention letters, any demand letters from law firms and any complaints related to any law firms employed by Mr. Kornman for the SEC matter or subsequent criminal matter.

A review of the accompanying Kornman Certification and Tillotson Certification reveals that this compromise would provide the Robbins Firm with a full and fair opportunity to litigate the claims and defenses in this case.

Finally, the Robbins Firm has moved to compel other items involving objections other than privilege.  In an Order denying Mr. Kornman's motion for a civility order, this Court waived the necessity of a conference before *privilege* issues could be briefed.  The Robbins Firm has not sought a conference call with the Court before raising these discovery issues that involve issues other than privilege.  This Court did not waive the mandatory pre-motion conference in the Order in which it invited briefing on privilege issues.

## **ARGUMENT**

**I.     THE SCOPE OF DISCOVERY OF PRIVILEGED AND OTHERWISE PROTECTED MATTERS MUST BE LIMITED TO ONLY WHAT IS THE "MINIMUM EXTENT NECESSARY" AND ONLY ON "OUTCOME DISPOSITIVE" MATTERS.**

Mr. Kornman has agreed, subject to ethical obligations that continue on the part of the Robbins Firm, to produce all communications to and from the Robbins Firm in his possession, custody, or control.  Beyond that category of communications *directly between the parties at issue*, the law and ethical standards of both Texas and the District of Columbia construe waivers

of attorney-client privilege and work product narrowly. *E.g.*, *Conkling v. Turner*, 883 F.2d 431, 434-35 (5th Cir. 1989) (carefully limiting questions to narrow scope of communications between attorney and client that were at issue, while preventing discovery of information known to attorneys that were protected by the work product doctrine).

In this matter, the Robbins Firm represented a Texas resident in two Texas proceedings. Attached hereto as Exhibit D are the Robbins Firm's *pro hac vice* applications in Texas. Much of the information sought would involve Mr. Kornman's communication in Texas, as a Texas citizen, with counsel in Texas, regarding Texas cases. Assuming Texas law applied to the formation of the privilege over those communications, then it should also apply to issues regarding waiver.

The Texas Supreme Court, in *Republic Ins. Co. v. Davis*, 856 S.W.2d 158 (1993), held:

> The common law and now our rules of evidence acknowledge the benefit provided by the attorney-client privilege. In an instance in which the privilege is being used as a sword rather than a shield, the privilege may be waived. Privileges, however, represent society's desire to protect certain relationships, and an offensive use waiver of a privilege should not lightly be found. For that reason, the following factors should guide the trial court in determining whether a waiver has occurred.
>
> ***First, before a waiver may be found the party asserting the privilege must seek affirmative relief. Second, the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. Mere relevance is insufficient. A contradiction in position without more is insufficient. The confidential communication must go to the very heart of the affirmative relief sought. Third, disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence. If any one of these requirements is lacking, the trial court must uphold the privilege.***

*Id.* at 163 (footnotes and citations omitted, emphasis added).

The Robbins Firm has not come close to satisfying this three-pronged *Republic Ins.* case here. Mr. Kornman has already confirmed that he would not withhold information regarding his communications or Attorney Tillotson's communications with the Robbins Firm. Unsatisfied, the Robbins Firm is aggressively seeking communications between Mr. Kornman and other lawyers, based on nothing more than speculation that something there might be relevant or might contradict something Mr. Kornman claims in this matter. But a hope for mere "relevant" or "contradictory" information is plainly insufficient under the *Republic Ins.* holding.

Disregarding the clear dictates of *Republic Ins.*, the Robbins Firm cites to *Texas Dept. of Public Safety Officers Assoc. v. Denton*, 8971 S.W.2d 757 (Tex. 1995) to downplay the rigorous scrutiny of purported waivers of the attorney-client privilege. In *Denton*, however, the Texas Supreme Court addressed a plaintiff's choice to commence litigation and then invoke his Fifth Amendment rights to avoid answering questions about the matters at issue. *Id.* at 760-61. The *Denton* case did not involve attorney-client privilege issues, let alone communications with lawyers or law firms other than those who are actual parties to the proceeding. In fact, the *Denton* court vacated and remanded for consideration of lesser sanctions, after a trial court dismissed a case when a plaintiff refused to waive his privilege against self-incrimination.

While the Robbins Firm unconvincingly argues that privilege waivers are purely procedural, rather than substantive, matters, its motion papers acknowledge that the privilege waiver standards for Texas and D.C. are essentially the same. Recent changes, as of August 1, 2006, to the Rules of Professional Conduct in the District of Columbia limit the disclosure of confidential or privileged information "to the minimum extent necessary" for a law firm in an action to collect its fees and only "to the extent reasonably necessary" to defend against civil claims. *See* R. Prof. Cond. 1.6(e)(3)&(5). This is a collection action, and Mr. Kornman's sole

claim against the Robbins Firm is for forfeiture of fees.[1]  This is not a typical malpractice action for compensatory damages, and therefore the "minimum extent necessary" standard should apply.  It is axiomatic that the scope of work product waivers are generally construed even more narrowly than waivers of the attorney-client privilege.

Under the *Republic Ins. Co.* line of cases and the new D.C. Rules of Professional Conduct, the Robbins Firm can obtain privileged or otherwise protected work product materials only "to the minimum extent necessary" and only if it can demonstrate that the "information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted."  *Id.*  The Robbins Firm has not made, and cannot make, such a showing to support its broad demands.  Indeed, while "[m]ere relevance is insufficient" and "[a] contradiction in position without more is insufficient," the Robbins Firm has not made, and cannot make, even the insufficient showings of relevance or a contradiction.

At any rate, Mr. Kornman has agreed not to withhold several of the specific items to which the Robbins Firm refers in its Motion as necessary.  First, Mr. Kornman will not preclude Attorney Tillotson from answering at his deposition questions regarding instructions from Mr. Kornman that would reveal the scope of Attorney Tillotson's authority when making fee arrangements or work requests from the Robbins Firm.  Second, to the extent the Robbins Firm delivered materials to Mr. Kornman through Attorney Tillotson, Mr. Kornman has agreed not to withhold the existence of those communications that reached him.  Third, Mr. Kornman intends to focus at trial on the *incomplete* nature of the Robbins Firm's work, rather than prove *sub-par*

---

[1]  Under Texas law, fees collected by a fiduciary may be forfeited as a result of a breach of fiduciary duty.  *See, e.g.,* Tex. Prop. Code Ann. § 114.008(a)(8) (court may reduce or deny compensation to fiduciary to remedy breach of trust); *Burrow v. Arce,* 997 S.W.2d 229, 246 (Tex. 1998) (upon breach of fiduciary duty by attorney, forfeiture of attorney's compensation may be necessary to satisfy public's interest in protecting attorney-client relationship, *without any showing that actual damages have been caused*).

quality in other ways.  Mr. Kornman will not prevent Attorney Tillotson from testifying to the level of (in)completeness of the Robbins Firm's work.  Fourth, of course the Robbins Firm will have the opportunity to examine Attorney Tillotson, reasonably, regarding the assertions in his accompanying Certification.

The Robbins Firm has identified no meaningful reason for finding a broad waiver of the attorney-client privilege or the work product doctrine that would require information beyond that which Mr. Kornman has agreed to produce.  The Robbins Firm has failed to satisfy the standards of D.C. and Texas law governing waivers of the attorney-client privilege and work product doctrine.  A review of the accompanying Kornman Certification and Tillotson Certification helps frame the narrow issues in dispute in this action.  The well-reasoned compromise that Mr. Kornman has offered will more than suffice to allow the Robbins Firm to litigate this matter fully and fairly.  The Robbins Firm has failed to engage in the rigorous analysis required to justify broader disclosure, and has failed to address items protected by the work product doctrine on the requisite item-by-item basis.  Hence, the motion to compel should be denied.

## II.    THE ROBBINS FIRM HAS NOT RAISED OTHER LEGITIMATE DISCOVERY DISPUTES.

The Robbins Firm has turned this Court's invitation for briefing privilege waiver issues into an opportunity to raise purported discovery disputes without the requisite conference call with the Court.  In reality, no legitimate dispute exists.  In fact, the Robbins Russell Firm incorrectly claims that Mr. Kornman has not produced any documents whatsoever.  This is false. Mr. Kornman has produced over 500 pages of documents responsive to their document requests. In any event, the Robbins Firm raises three issues: (1) documents regarding fee disputes with other lawyers; (2) recordings of anyone at the Robbins Firm; and (3) text messages between Mr. Kornman and the Robbins Firm.

The second and third items are quite easily addressed.  Mr. Kornman informed the Robbins Firm, prior to it filing the Motion, that Mr. Kornman no longer possessed any text messages between him and the Robbins Firm.  Similarly, he informed the Robbins Firm that he would produce any recordings or transcripts he could find after a reasonable search.  To date, he has not found any such recording or transcript.  Given Mr. Kornman's representations as to these two matters, there is no dispute that warranted motion practice.  Perhaps the Robbins Firm simply wanted to make the Court aware that, at times, Mr. Kornman has tape recorded conversations.  That is not, however, a legitimate reason for filing the Motion, let alone doing so without first requesting the mandatory conference call with the Court.

With regard to fee disputes with other law firms that worked on the SEC or criminal matter, Mr. Kornman has agreed to produce retention agreements, any demand letters, and any complaints.  Mr. Kornman absolutely believes that these materials are irrelevant and not likely to lead to the discovery of admissible evidence.  Would the Robbins Firm produce every communication related to any discount or writeoff on bills for other clients?  Would the Robbins Firm agree to the admissibility of evidence related to the dozens of lawyers whom Mr. Kornman has paid in full or to whom he has even provided a bonus when he was particularly satisfied?  Nevertheless, to avoid motion practice, Mr. Kornman has offered retention letters, demand letters and complaints, to the extent they exist, and is willing to answer reasonable questions regarding them at his deposition.

The Robbins Firm may claim that disputes with other law firms are relevant because Mr. Kornman has raised the defense of "mistake" regarding whether "fixed fees" or "hourly rates" applied to him, and whether the Robbins Firm misapplied a $50,000 escrow deposit.  Mr. Kornman can attest, at his deposition, to the fact that the Robbins Firm was the only firm that

agreed to fixed fees with him, so no similar claim of mistake would exist. He also is unaware of any even remotely similar misapplication of an escrow deposit by any of his other firms. The Robbins Firm is well aware of litigation with Winston & Strawn, which arises from an *undisputed* (as reflected in pleadings available on PACER) demand by the firm, approximately one month before trial in the criminal matter, for a $ 2,500,000 retainer and other changes in the terms of representation. How information related to that dispute could be relevant to the present matter is beyond comprehension. Yet the Robbins Firm can obtain, if it has not already, substantial information regarding that dispute from PACER.

<u>**CONCLUSION**</u>

Based on the foregoing, this Court should deny the Robbins Firm's motion to compel in its entirety.

Dated:  October 8, 2007                              Respectfully submitted,

                                                     **/s/ Orlando E. Vidal**
                                                     Orlando E. Vidal (D.C. Bar No. 461815)
                                                     Barry S. Pollack, *Admitted Pro Hac Vice*
                                                     Sullivan & Worcester, LLP
                                                     1666 K Street, N.W., Suite 700
                                                     Washington, D.C.  20006
                                                     Telephone: (202) 775-1200
                                                     Fax: (202) 293-2275

                                                     **COUNSEL FOR GARY M. KORNMAN**

A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP,<br><br>Plaintiff<br><br>v.<br><br>GARY M. KORNMAN,<br><br>Defendant<br><br>GARY M. KORNMAN,<br><br>Counterclaim-Plaintiff<br><br>v.<br><br>ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP,<br><br>Counterclaim-Defendant | Case No. 1:07-cv-00554-JR |

## CERTIFICATION OF GARY M. KORNMAN

I, Gary M. Kornman, do hereby certify as follows:

1.    I am the Defendant and Counterclaim-Plaintiff in the above-captioned action, and I make this Certification out of personal knowledge, unless indicated otherwise, in support of my opposition to the Motion for Summary Judgment by Robbins, Russell, Englert, Orseck & Untereiner LLP (the "Robbins Firm"), focused on its "account stated" claim.

Retention of the Robbins Firm for Civil Matter

2.    On or about October 5, 2004, I signed a retention letter that engaged the Robbins Firm for legal services *on a civil matter* brought by the SEC and pending in the Northern District

1

of Texas. The Robbins Firm drafted this retention letter. Based on the letter and my prior conversations with Lawrence Robbins of the Robbins Firm, I understood that the retention letter covered only work by the lawyers of the firm on the particular civil action.

3.    Pursuant to the retention letter, at approximately the time I signed it, I paid a $20,000 retainer to the Robbins Firm.

4.    My local civil counsel in Texas, Jeffrey Tillotson, participated in various discussions and meetings with the Robbins Firm. At times, for convenience, Attorney Tillotson served as a go-between for the Robbins Firm and me. At times, the Robbins Firm and I communicated directly with each other.

5.    The Robbins Firm billed approximately $250,000 to me for the services it provided on the civil matter. I paid for all services on the civil case fully and on a timely basis. I believe I may have overpaid by $10,000 because the Robbins Firm has stated that it still holds $10,000 of my initial retainer in escrow because of our billing dispute.

Engagement in Connection with Criminal Proceeding

6.    On or about November 16, 2005, I learned that I faced an indictment in the Northern District of Texas, including allegations of insider trading and making false statements.

7.    On several occasions, Attorney Robbins suggested to me that I rely on him to serve as lead counsel at trial. We discussed this possibility and his views of the facts and the law relating to the criminal case.

8.    By that time, I had become concerned that the Robbins Firm's last steps of completing work product were routinely slow and expensive.

9.    To provide an incentive for the Robbins Firm to finish motion papers and the like,

2

I told Attorney Robbins that I wanted to pay his firm for projects on the criminal matter on a flat-fee or capped-fee basis. I am aware that Attorney Tillotson engaged in similar fee discussions with Attorney Robbins.

10.    At some point in my conversations with Attorney Robbins, I agreed to pay a $50,000 deposit against what I expected we would agree upon as reasonable fees for each project. This $50,000 payment was not required by the initial retention agreement, but rather was based on a new agreement to determine flat or capped fees for each significant project.

11.    Based on the fee negotiations among Attorney Robbins, Attorney Tillotson and myself, I understood that an agreement had been reached for a flat fee of $100,000, for the Robbins Firm to complete and file a motion to dismiss and reply papers, and to handle oral argument on that motion.

12.    I spoke to Attorney Robbins as well about a motion to suppress and a so-called *Stringer* motion. We agreed that the fees for those motions would not exceed $25,000 each, and that each might get done for as little as $20,000. Our discussions did not specify whether the Robbins Firm would participate in oral argument on those motions.

13.    Based on the fee negotiations among Attorney Robbins, Attorney Tillotson and myself, I understood that I did not owe anything for the motion projects until I received finished, ready-to-file work product and appropriate argument had been made on the motion to dismiss.

14.    We did not specifically discuss billing terms for unrelated *ad hoc* questions that might arise or for modest amounts of help with correspondence or the like.

15.    On or about April 12, 2006, three attorneys from the Robbins Firm filed *pro hac vice* applications and notices of appearance in the criminal matter in the Northern District of Texas.

3

{B0684344; 2}

The Robbins Firm's Failure to Perform

16.    The Robbins Firm never provided to me a finished, ready-to-file motion to dismiss, never worked on a reply, and never did any oral argument on that motion.  A large portion of its work on the motion to dismiss copied work it had done, and for which it had been paid, in the civil matter.  The Robbins Firm sent at most a rough draft of a motion to suppress to Attorney Tillotson, informing him in an email that Attorney Robbins had not even looked at it, and that it was not ready for my eyes or the Court.  I never saw any version of the *Stringer* motion until after the commencement of this litigation, when the Robbins Firm produced an email reflecting that it had agreed with Attorney Tillotson to keep a draft from me, apparently in their view for my own good, without informing me of that decision.

Invoices

17.    I am aware that the Robbins Firm issued a few invoices to me while or shortly after working on the criminal matter.  I do not recall which one(s) I may have seen.  Sometimes, my bills of those sort were handled by an assistant and simply forwarded to Attorney Tillotson who facilitated, at times, certain billing by other counsel through his firm.

18.    I would not have been surprised by a total invoice for work by the Robbins Firm on the criminal matter in the amount of $145,000 to $150,000 (like the amount on the invoices on which it now relies), had I received a finished, ready-to-file motion to dismiss, a finished ready-to-file motion to suppress, and a finished, ready-to-file *Stringer* motion.  That would have been consistent with the flat fee agreements of $100,000 for the motion to dismiss, and $20,000 to $25,000 for each of the motion to suppress and the *Stringer* motion.  I did not pay those amounts at the time of any invoices, however, because I had not yet received the finished work products.

4

19.     I am aware that the invoices did not state the "flat fee" limits, but I attribute that to clerical limitations or errors at the Robbins Firm. I assumed that the Robbins Firm routinely sent monthly statements, and it may have even been ethically obligated to keep me posted on their actual time to show that it reasonably justified the agreed-upon flat fees.

20.     While the Robbins Firm was invoicing me, I did complain about the fact that they had not yet sent to me finished, ready-to-file work product. I thought the Robbins Firm was really slow and it was very frustrating to me on the criminal motion projects.

21.     What troubles me more is that my $50,000 deposit was applied to the invoices without the Robbins Firm first completing its obligations and without my permission. Obviously the Robbins Firm recognizes that some billing dispute exists and is therefore holding in escrow $10,000 of my initial deposit on the civil matter. I do not understand why it acted differently with regard to my $50,000 deposit.

22.     At the time the Robbins Firm sent me invoices on the criminal matter, I did not notice or consider the ramifications of its use of my $50,000 deposit. Had I noticed and thought about that, and realized that their fees had reached approximately $200,000 for work on the criminal matter, I believe I would have raised a formal objection sooner than I did.

23.     Had I realized and thought about the application of the $50,000 deposit, I would have expected the remaining bill to be only approximately $100,000, payable in full only upon the completion of the three ready-to-file motions.

24.     Accordingly, the fee dispute in this action focuses on the Robbins Firm's attempt to collect approximately $50,000 more than the agreed-upon flat or capped fees and the incompleteness of the motion work product, which was agreed-upon as a condition to payment.

{B0684344; 2}

25.    When Attorney Robbins made efforts directly with me to collect additional fees, I insisted that, consistent with our prior agreement, his firm complete, for filing, the three motion projects. He refused and, instead, his firm sued me.

Failure of the Robbins Firm to Provide Certain Fundamental Advice

26.    While the Robbins Firm worked on the motion to dismiss and Attorney Robbins attempted to convince me to use him as lead trial counsel, we discussed his views and theories of the case. He expressed to me, at least once, that the insider trading charges carried much stiffer penalties than the other charges. Neither Attorney Robbins nor any of the Robbins Firm's attorneys ever told me that, if convicted by a jury of making a false statement, but acquitted of insider trading, I could still be sentenced under the federal sentencing guidelines for insider trading, based on concepts of "cross-referencing" and "relevant conduct." Neither Attorney Robbins nor any of the Robbins Firm's attorneys ever told me that a plea agreement could help avoid such potentially devastating cross-referencing or relevant conduct determinations.

27.    Previously, I had asked Greg Poe at the Robbins Firm certain questions about sentencing risks. Attorney Poe broke out a book that contained information regarding the federal sentencing guidelines, but he never told me that I could be sentenced based on acquitted charges in the event of a partial conviction. He also did not tell me that a plea agreement could help avoid such a result. Instead, Attorney Poe gave me a very brief and general overview of what the guidelines were.

I certify that the foregoing is true and correct to the best of my knowledge, subject to the pains and penalties of perjury.

Dated: October 3, 2007                    *Gary M. Kornman*
                                          Gary M. Kornman

B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER LLP,

        Plaintiff

v.

GARY M. KORNMAN,

        Defendant

GARY M. KORNMAN,

        Counterclaim-Plaintiff

v.

ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER LLP,

        Counterclaim-Defendant

Case No. 1:07-cv-00554-JR

## CERTIFICATION OF JEFFREY TILLOTSON

I, Jeffrey Tillotson, do hereby certify as follows:

1.      I am an attorney licensed and authorized to practice in the State of Texas, where I have represented Gary M. Kornman ("Mr. Kornman"), who is the Defendant and Counterclaim-Plaintiff in the above-captioned action. I make this Certification out of personal knowledge, unless indicated otherwise, in connection with the Motion for Summary Judgment by Robbins, Russell, Englert, Orseck & Untereiner LLP ("Robbins Russell").

1

2.    On or about September 2004, I made certain efforts with Mr. Kornman to find co-counsel to work on motion practice in a civil matter brought by the SEC in the Northern District of Texas. I initiated contact with Robbins Russell, which had a strong reputation for appellate work in securities matters.

3.    On or about October 5, 2004, Mr. Kornman formally engaged Robbins Russell for the civil matter. Robbins Russell appeared in and provided certain services in connection with the civil action.

4.    On or about November 16, 2005, an indictment was returned against Mr. Kornman in the Northern District of Texas. The charges included claims of insider trading and making false statements.

5.    By that time, I had come to serve, at times, as a go-between for Robbins Russell and Mr. Kornman. Basically, I helped guide projects and keep people updated in an effort to avoid duplicative efforts. I am aware that Mr. Kornman and lawyers at Robbins Russell met and spoke directly with each other outside of my presence.

6.    Though I appeared in the criminal matter, my practice is limited to civil matters, a fact well known to both Robbins Russell and Mr. Kornman. Other than my firm, Robbins Russell was the only other firm that worked for Mr. Kornman on both the SEC and criminal matter.

7.    After the criminal charges were filed, Larry Robbins indicated to me on several occasions that he would like to serve as the lead trial attorney in the criminal matter. I suggested to Larry Robbins that his firm work on the criminal matter on a project-by-project basis, which might position him ultimately to serve as trial counsel.

2

8.    Based on my past experiences in the civil matter, Robbins Russell became quite expensive when completing work product.  In an effort to address this issue, I worked with Mr. Kornman and Robbins Russell to establish a flat fee for a motion to dismiss, reply papers and oral argument.

9.    Based on my conversations with Larry Robbins where he agreed to the flat fee and the fact that Robbins Russell started working on the motion to dismiss, I understood that Robbins Russell had agreed to a flat fee of $100,000 for the preparation of a motion to dismiss and reply papers in support of that motion, as well as for the participation of Larry Robbins in oral argument on that motion.

10.    Over a period of several months, Larry Robbins continued to express his desire to broaden his firm's role in the criminal matter.  On or about April 12, 2006, three attorneys from the Robbins Russell firm filed *pro hac vice* applications in the criminal matter in Texas.

11.    I do not recall participating in any discussions between Robbins Russell and Mr. Kornman regarding any fee arrangement for preparation of a motion to suppress and what has been referred to as a *Stringer* motion.  I do not recall participating in any discussions between Robbins Russell and Mr. Kornman regarding any new deposit or retainer for work on the criminal matter.  I also do not recall participating in any communication in which the parties agreed that any of the terms for representation in the civil matter would apply to work on the criminal matter.

12.    Eventually, I did receive drafts from Robbins Russell on a motion to dismiss, motion to suppress, and a *Stringer* motion.  From a civil lawyer's perspective, the drafts were obviously incomplete and portions of them in rough form.

3

13.     I saw invoices from Robbins Russell related to the criminal matter, but would not have focused intensely on them because I understood that payment of the $100,000 flat fee for the motion to dismiss would not have been due until at least the motion and reply had been finished by Robbins Russell, which did not happen.    With regard to invoices that Robbins Russell sent to Mr. Kornman, there may also have been delays in reviewing them as they were delivered to me.

14.     While Robbins Russell worked on the motion to dismiss and motion to suppress, I informed them several times that the client and I were concerned at how long it was taking to get a finished product.    When they finally sent us incomplete work product for these motions, it quickly became clear that there was a dispute over fees.

15.     In a conference call with Larry Robbins in which I participated, Mr. Kornman insisted that Robbins Russell was required to finish these motions before any payment was due.

16.     At the time, I thought Robbins Russell was attempting to collect a total of approximately $150,000 for all of its work on the criminal matter.    I did not know that Mr. Kornman had previously made a payment of $50,000 to Robbins Russell for the criminal matter.    Accordingly, I did not appreciate the full scope of the dispute.

I certify that the foregoing is true and correct to the best of my knowledge, subject to the pains and penalties of perjury.

Dated:  October 3, 2007

Jeffrey Tillotson

4

C

**Sarti, Dana I Wesley**

| | |
|---|---|
| **From:** | Jeff Tillotson [jmt@lynnllp.com] |
| **Sent:** | Friday, January 06, 2006 6:48 PM |
| **To:** | Robbins, Larry |
| **Cc:** | Poe, Greg |
| **Subject:** | RE: Motion to dismiss |

No date yet. We are expecting a new scheduling order.

Larry: This is a great proposal. I will send it to gary asap.

Jeffrey M. Tillotson
**LYNN TILLOTSON & PINKER, LLP**
750 N. Saint Paul Street
Suite 1400
Dallas, Texas 75201

214.981.3838 (direct)
214.981.3800 (main)
214.981.3839 (fax)

jmt@lynnllp.com

visit: www.lynnllp.com

**From:** Robbins, Larry [mailto:lrobbins@robbinsrussell.com]
**Sent:** Friday, January 06, 2006 5:33 PM
**To:** Jeff Tillotson
**Cc:** Poe, Greg
**Subject:** Motion to dismiss

Jeff – per my voice mail, here is a proposal for the motion to dismiss the indictment: flat fee of 100K to do the opening brief, the reply brief, and any oral argument the court permits. The motion, as I conceive it, would seek to dismiss the two securities counts (1 and 2) on at least two grounds: no duty (largely derived from our previous work); and no willfulness (especially given Judge Lindsay's conclusion that the underlying duty presents a very close case). If there is an argument regarding the legality of the SEC interpretive rules, we would make it in connection with this part of the motion. We may also want to consider a multiplicity attack on count 2. As for Count 3 – the false statement count – we need to learn a bit more about the underlying evidence, but at least two arguments seem available: (i) because there is no duty, Gary's statements, even if false, were immaterial to any matter within the SEC's jurisdiction; (ii) to the extent the false statement charge rests on the mere failure to confess wrongdoing, that cannot satisfy the statute. There may be other arguments we have not yet considered.

Do you know the due date for the motion?

Have a good weekend.

Larry

10/2/2007

Sarti, Dana I Wesley

| | |
|---|---|
| **From:** | Robbins, Larry |
| **Sent:** | Tuesday, January 03, 2006 9:59 PM |
| **To:** | 'jmt@lynnllp.com' |
| **Cc:** | Poe, Greg |
| **Subject:** | Re: Kornman |

Jeff -- I'm sure we can manage that, and I have no huge hesitation proposing a flat rate.
I infer that the deadlines have moved for dispositive motions since gary and I last spoke.
When is the brief due?  I will discuss this with greg and send an e-mail tomorrow with a
flat rate proposal.  My only qualm about a flat rate, btw, is gary's usual desire to edit
until the very last minute, but we can build in some extra time for that and take the risk
that we've underbid.  Finally, I'm generally around on friday, with a meeting that could
be moved around a call with you or gary.  Do you have a particular time in mind?  Larry
-------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Jeff Tillotson <jmt@lynnllp.com>
To: Robbins, Larry <lrobbins@robbinsrussell.com>
CC: Poe, Greg <gpoe@robbinsrussell.com>
Sent: Tue Jan 03 21:48:18 2006
Subject: RE: Kornman

Larry and Greg:

Sorry I missed your call.  I am in NYC for a depo but headed to LA tomorrow (hint: think
Rose Bowl).

Yeah -- wasn't that discovery ruling great?

I spoke with Gary.  He is what he asked:  would your firm be willing to draft a motion to
dismiss the criminal case (on the prior grounds as well as the new diea(s) you developed
based on Judge Lindsay's ruling) and also do a motion to challenge the constitutionality
of the 10b5-2 satatute for a flat fee?

He is not being cheap but he thought if he could pay you once and do the while package it
might be better for you and him.

what do you think?  and what would it cost?  I think it is a great way to keep you on the
inside track on handling the case gogin forward.

Let me know.

Also, even if you won;t do a flat fee, I think i can persuade Gary to retain you for the
above motions since you know the case so well already.  Could you be prepared to throw out
your ideas on Friday?

Agains, let me know.


Jeff

-----Original Message-----
From: Robbins, Larry [mailto:lrobbins@robbinsrussell.com]
Sent: Mon 1/2/2006 12:22 PM
To: Jeff Tillotson
Cc: Poe, Greg
Subject: RE: Kornman

1

Sarti; Dana I Wesley

| | |
|---|---|
| **From:** | Robbins, Larry |
| **Sent:** | Saturday, January 14, 2006 3:25 PM |
| **To:** | 'jmt@lynnllp.com' |
| **Cc:** | Poe, Greg |
| **Subject:** | Re: Kornman |

Jeff -- got your and gary's voice mail -- sounds good -- I'll call monday morning (federal holiday -- are you in?) And we can discuss getting started -- looking forward to truth and justice prevailing!  Larry
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Jeff Tillotson <jmt@lynnllp.com>
To: Robbins, Larry <lrobbins@robbinsrussell.com>
Sent: Thu Jan 05 09:24:49 2006
Subject: Re: Kornman

It was really a fun time.
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Robbins, Larry <lrobbins@robbinsrussell.com>
To: Jeff Tillotson <jmt@lynnllp.com>
Sent: Thu Jan 05 05:39:55 2006
Subject: Re: Kornman

Congratulations on the national title!
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Jeff Tillotson <jmt@lynnllp.com>
To: Robbins, Larry <lrobbins@robbinsrussell.com>
Sent: Tue Jan 03 22:21:00 2006
Subject: Re: Kornman

Morning anytime.

I would suggest some sort of deal where if you hours are huge you get some more money.
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Robbins, Larry <lrobbins@robbinsrussell.com>
To: Jeff Tillotson <jmt@lynnllp.com>
CC: Poe, Greg <gpoe@robbinsrussell.com>
Sent: Tue Jan 03 20:58:36 2006
Subject: Re: Kornman

Jeff -- I'm sure we can manage that, and I have no huge hesitation proposing a flat rate. I infer that the deadlines have moved for dispositive motions since gary and I last spoke. When is the brief due?  I will discuss this with greg and send an e-mail tomorrow with a flat rate proposal.  My only qualm about a flat rate, btw, is gary's usual desire to edit until the very last minute, but we can build in some extra time for that and take the risk that we've underbid.  Finally, I'm generally around on friday, with a meeting that could be moved around a call with you or gary.  Do you have a particular time in mind?  Larry

1

**D**

**Gregory L Poe**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: gpoe@robbinsrussell.com
*TERMINATED: 11/02/2006*
*Designation: Retained*

DOCKET ENTRY #22

*Application and Order for Admission Pro Hac Vice by Gregory L Poe for Gary M Kornman.(see order for specifics) (Signed by Judge Jorge A Solis on 04/12/06) (lmr, ) (Entered: 04/13/2006)*

229762
Receipt No.: _____
Initials: _____

P ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
DALLAS                              DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA , | § |
| | § |
| **Plaintiff** | § |
| | § |
| v. | § |
| | § |
| GARY M. KORNMAN , | § |
| | § |
| **Defendant** | § |

3:05-CR-00298 – P
Case Number

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 2 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE***

Comes now  GREGORY L. POE _____ , Applicant herein, and respectfully
states the following:

**I.**   Applicant is an attorney and a member of the law firm of (or practices under the name of)
ROBBINS RUSSELL ENGLERT ORSECK & UNTEREINER LLP , with offices at 1801 K ST NW STE 411 _____
(Street Address)

WASHINGTON _____ , DC _____ , 20006 , 202-775-4500 .
(City)                    (State)              (Zip Code)    (Telephone No.)

**II.**   Applicant will sign all pleadings with the name  GREGORY L. POE _____ .

**III.**   Applicant has been retained personally or as a member of the above-named firm by

GARY M. KORNMAN _____ to provide
(List All Parties Represented)

legal representation in connection with the above-styled matter now pending before the United States District
Court, Northern District of Texas.

**IV.**   Since DECEMBER 10 , 1990 , Applicant has been and presently is a member in good standing of the
bar of the highest court of the state of  DISTRICT OF COLUMBIA  where Applicant regularly practices law.
Applicant's bar license number is 426020 _____ .

**V.**   Applicant has been admitted to practice before the following courts:

| Court: | Admission Date: |
|---|---|
| US DISTRICT COURT, DISTRICT OF COLUMBIA | 1991 |
| US COURT OF APPEALS, DC CIRCUIT | 1990 |
| US SUPREME COURT | 1995 |

**VI.**   Applicant is presently a member in good standing of the bars of the courts listed in question V, except

as provided below: (list any court named in the preceding paragraph before which Applicant is no longer
admitted to practice)

NONE

**VII.**    Applicant has never been subject to grievance proceedings or involuntary removal proceedings while
a member of the bar of any state or federal court, except as provided below:

NONE

**VIII.**    Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as
provided below (omit minor traffic offenses):

NONE

**IX.**    Applicant has filed for *pro hac vice* admission in the United States District Court,  Northern District
of Texas during the past three (3) years in the following matters:

| Date of Application | Case No. And Style |
|---|---|
| NOV. 23, 2004 | SEC V. KORNMAN, 3:04-CV-1803-L |

(If necessary, attach statement of additional applications.)

**X.**    Local counsel of record associated with Applicant in this matter is  JEFFREY M. TILLOTSON
who has offices at  LYNN TILLOTSON & PINKER, 750 N ST PAUL ST STE 1400, DALLAS  TX  75201
(Address)
214-981-3800
(Telephone No.)

**XI.**    Check the appropriate box below.

For Application in a **Civil Case**

☐    Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D.
284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with
the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

☑    Applicant has read and will comply with the local criminal rules of this court.

**XII.**    Applicant respectfully requests to be admitted to practice in the United States District Court for the
Northern District of Texas for this cause only.

SIGNED this 10TH day of APRIL , 2006 .

## GREGORY L. POE

Printed Name of Applicant

Signature

I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this 10TH day of APRIL , 2006 .

## GREGORY L. POE

Printed Name of Applicant

Signature

## ORDER

The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☑   the application be granted.  The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

☐   the application be denied.  The Clerk of Court shall return the admission fee to the Applicant.

April 12, 2006

DATE

Jorge A. Soles

JUDICIAL OFFICER

**Alice W Yao**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: ayao@robbinsrussell.com
*TERMINATED: 11/02/2006*
*Designation: Retained*

# DOCKET ENTRY #21

*Application and Order for Admission Pro Hac Vice by Alice W Yao for Gary M Kornman.(see order for specifics) (Signed by Judge Jorge A Solis on 04/12/06) (lmr, ) (Entered: 04/13/2006)*

P & ORIGINAL

22 7761

Receipt No _____
Initials _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS _____ DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA , | § | |
| | § | |
| Plaintiff | § | 3:05-CR-00298 – P |
| | § | Case Number _____ |
| v. | § | |
| GARY M. KORNMAN , | § | |
| | § | |
| Defendant | § | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

APR 1 2 2006

CLERK, U.S. DISTRICT COURT
By _____

### APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE*

Comes now  ALICE W. YAO _____ , Applicant herein, and respectfully

states the following:

**I.**    Applicant is an attorney and a member of the law firm of (or practices under the name of)

Robbins Russell Englert Orseck & Untereiner LLP , with offices at  1801 K ST NW STE 411 _____
                                                              (Street Address)

WASHINGTON _____ , DC _____ , 20006 _____ , 202-775-4500 _____
(City)                        (State)      (Zip Code)    (Telephone No.)

**II.**   Applicant will sign all pleadings with the name   ALICE W. YAO _____

**III.**  Applicant has been retained personally or as a member of the above-named firm by

GARY M. KORNMAN _____ to provide
                    (List All Parties Represented)

legal representation in connection with the above-styled matter now pending before the United States District

Court, Northern District of Texas.

**IV.**   Since MARCH 5 _____ , 2003 , Applicant has been and presently is a member in good standing of the

bar of the highest court of the state of  CALIFORNIA _____ where Applicant regularly practices law.

Applicant's bar license number is  224461 _____

**V.**    Applicant has been admitted to practice before the following courts:

Court:                                    Admission Date:

DC Court of Appeals _____         9/9/05 _____

US Courts of Appeals for 5th, _____     3/15/05 _____

8th & 11th Circuits _____         4/14/04 & 12/2/04 _____

**VI.**   Applicant is presently a member in good standing of the bars of the courts listed in question V, except

as provided below: (list any court named in the preceding paragraph before which Applicant is no longer admitted to practice)

NONE

VII.    Applicant has never been subject to grievance proceedings or involuntary removal proceedings while a member of the bar of any state or federal court, except as provided below:

NONE

VIII.    Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

NONE

IX.    Applicant has filed for *pro hac vice* admission in the United States District Court,  Northern District of Texas during the past three (3) years in the following matters:

Date of Application                     Case No. And Style
NOV. 23, 2004                          SEC v. KORNMAN, 3:04-cv-1803-L

(If necessary, attach statement of additional applications.)

X.    Local counsel of record associated with Applicant in this matter is Jeffrey M. Tillotson
who has offices at LYNN TILLOTSON & PINKER, 750 N ST PAUL ST STE 1400, DALLAS TX 75201 ,
                              (Address)
214-981-3800            .
(Telephone No.)

XI.    Check the appropriate box below.

For Application in a **Civil Case**

☐    Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D.
284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with
the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

☑    Applicant has read and will comply with the local criminal rules of this court.

XII.    Applicant respectfully requests to be admitted to practice in the United States District Court for the
Northern District of Texas for this cause only.

Page 2 of 3

SIGNED this 10TH day of APRIL , 2006 .

**ALICE W. YAO**

Printed Name of Applicant

Signature

I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this 10TH day of APRIL , 2006 .

**ALICE W. YAO**

Printed Name of Applicant

Signature

## ORDER

The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☑ the application be granted. The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

☐ the application be denied. The Clerk of Court shall return the admission fee to the Applicant.

April 12, 2006
DATE

Joge A. Solis
JUDICIAL OFFICER

**Lawrence S Robbins**
Robbins Russell Englert Orseck & Untereiner
1801 K St NW
Suite 411
Washington, DC 20006
202/775-4500
Fax: 202/775-4510
Email: lrobbins@robbinsrussell.com
*TERMINATED: 11/02/2006*
*Designation: Retained*

# DOCKET ENTRY #20

*Application and Order for Admission Pro Hac Vice by Lawrence S Robbins for Gary M Kornman.(see order for specifics) (Signed by Judge Jorge A Solis on 04/12/06) (lmr, ) (Entered: 04/13/2006)*

229763
Receipt No.:
Initials:

P OF
ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS _____ DIVISION

UNITED STATES OF AMERICA ,                     §
                                               §
**Plaintiff**                                  §
                                               §
v.                                             §
                                               §
GARY M. KORNMAN ,                              §
                                               §
**Defendant**

3:05-CR-00298 ~ P
Case Number

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

APR 1 2 2006

CLERK, U.S. DISTRICT COURT
By _____
             Deputy

### APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE*

Comes now LAWRENCE S. ROBBINS _____ , Applicant herein, and respectfully
states the following:

**I.**     Applicant is an attorney and a member of the law firm of (or practices under the name of)
ROBBINS RUSSELL ENGLERT ORSECK & UNTEREINER LLP , with offices at 1801 K ST NW STE 411
                                                              (Street Address)

WASHINGTON _____ , DC _____ , 20006 ____ , 202-775-4500 _____
(City)                    (State)     (Zip Code)   (Telephone No.)

**II.**    Applicant will sign all pleadings with the name  LAWRENCE S. ROBBINS _____ .

**III.**   Applicant has been retained personally or as a member of the above-named firm by

GARY M. KORNMAN _____ to provide
                    (List All Parties Represented)

legal representation in connection with the above-styled matter now pending before the United States District
Court, Northern District of Texas.

**IV.**    Since SEPTEMBER 22 , 1989 , Applicant has been and presently is a member in good standing of the
bar of the highest court of the state of  DISTRICT OF COLUMBIA  where Applicant regularly practices law.
Applicant's bar license number is 420260 _____ .

**V.**     Applicant has been admitted to practice before the following courts:
           Court:                                      Admission Date:
           PLEASE SEE ATTACHED _____              _____

           _____                  _____

**VI.**    Applicant is presently a member in good standing of the bars of the courts listed in question V, except

as provided below: (list any court named in the preceding paragraph before which Applicant is no longer admitted to practice)

NONE

**VII.**    Applicant has never been subject to grievance proceedings or involuntary removal proceedings while a member of the bar of any state or federal court, except as provided below:

NONE

**VIII.**    Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

NONE

**IX.**    Applicant has filed for *pro hac vice* admission in the United States District Court, Northern District of Texas during the past three (3) years in the following matters:

| Date of Application | Case No. And Style |
| --- | --- |
| NOV. 23, 2004 | SEC V. KORNMAN, 3:04-CV-1803-L |

(If necessary, attach statement of additional applications.)

**X.**    Local counsel of record associated with Applicant in this matter is JEFFREY M. TILLOTSON who has offices at LYNN TILLOTSON & PINKER, 750 N ST PAUL ST STE 1400, DALLAS  TX  75201
                                     (Address)
214-981-3800
(Telephone No.)

**XI.**    Check the appropriate box below.

For Application in a **Civil Case**

☐    Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

☑    Applicant has read and will comply with the local criminal rules of this court.

**XII.**    Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

Page 2 of 3

SIGNED this 10TH day of APRIL , 2006 .

**LAWRENCE S. ROBBINS**

Printed Name of Applicant

Signature

I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this 10TH day of APRIL , 2006 .

**LAWRENCE S. ROBBINS**

Printed Name of Applicant

Signature

---

**ORDER**

The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☑ the application be granted. The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

☐ the application be denied. The Clerk of Court shall return the admission fee to the Applicant.

April 12, 2006
DATE

JUDICIAL OFFICER

Page 3 of 3

**BAR ADMISSIONS**

I am admitted to practice before the highest court of the District of Columbia and New York.

I am admitted to practice before these:

**State Courts:**

|  | **Date of Admission** | **Bar No.** |
|---|---|---|
| District of Columbia | 9/22/89 | 420260 |
| New York | 12/9/80 | LR8917 |

**Federal Courts:**

U.S. Supreme Court; US. Court of Appeals for the 1st, 2nd, 3rd, 4th, 8th, 9th, 10th, 11th, and D.C. Circuits, U.S. District Court for the District of Columbia; U.S. District Court for the Eastern District of New York; and the U.S. District Court for the Southern District of New York.