## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, ) ) ) | |
| Plaintiff/Counterclaim-Defendant, ) ) | |
| v. ) ) | Case No. 1:07-cv-00554-JR/JMF |
| GARY M. KORNMAN, ) ) | |
| Defendant/Counterclaim-Plaintiff. ) ) | |

## DEFENDANT GARY M. KORNMAN'S
## COMBINED MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
## IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant/Counterclaim-Plaintiff Gary Kornman ("Mr. Kornman") respectfully submits this memorandum in opposition to the motion for summary judgment ("Motion") by Plaintiff/Counterclaim-Defendant Robbins, Russell, Englert, Orseck & Untereiner LLP ("Robbins Firm"), and in support of his cross-motion for summary judgment.

## PRELIMINARY STATEMENT

Glaringly omitted from the Motion is any acknowledgement by the Robbins Firm of the parties' agreement to shift from an hourly billing structure for work on a civil matter to a *fixed-fee* arrangement, which *required completed work product*, in a criminal matter.  Not only is a fixed-fee agreement supported by the testimony of Mr. Kornman and others, but also by email exchanges with the Robbins Firm.

Among other things, Attorney Lawrence Robbins of the Robbins Firm set forth in an email, on January 6, 2006, at 5:33 p.m., the proposal relating to a motion to dismiss, which Mr. Kornman accepted:  "**flat fee of $100K to do the opening brief, the reply brief, and any oral**

**argument the court permits**." *See* Certification of Barry S. Pollack ("Pollack Cert.")[1] Exh. D (emphasis added). The parties also agreed to fixed fees of no more than $25,000 for the completion of each of a motion to suppress and a so-called *Stringer* motion, including respective reply papers. *See* Certification of Gary M. Kornman ("Kornman Cert.")[2] ¶ 12.

It appears undisputed that Mr. Kornman provided to the Robbins Firm a deposit of $50,000 toward these fixed-fee projects on the criminal matter. Though the motion to dismiss was the major project on which the Robbins Firm worked during the course of the criminal matter involving Mr. Kornman, the Robbins Firm never completed the opening brief, never started the reply brief, and never participated in the oral argument, as expressly required in exchange for the $100,000 fixed fee. Likewise, the Robbins Firm provided only a rough "draft" of a motion to suppress, which Attorney Robbins had not even yet reviewed. And disagreeing with Mr. Kornman's desired strategy, the Robbins Firm withheld a draft *Stringer* motion from him, yet later expected him to pay for it. Contrary to professional obligations, the Robbins Firm applied the $50,000 deposit to invoices without first obtaining Mr. Kornman's agreement to any amount owed.

Ignoring this substantial evidence and applicable legal standards reflecting disputed material facts, the Robbins Firm has moved for summary judgment on its "account stated" claim, which appears in Count Three of the Complaint. The Motion suffers from several fatal defects. First, a claim for an "account stated" requires an *absolute* express or implied acknowledgement of an agreed-upon obligation underlying an undisputed statement of account. Second, the

---

[1] The Certification of Barry S. Pollack has been filed as Exhibit 1 to Mr. Kornman's Response to the Robbins Firm's Statement of Undisputed Facts.

[2] The Certification of Gary M. Kornman has been filed as Exhibit 3 to Mr. Kornman's Response to the Robbins Firm's Statement of Undisputed Facts.

demonstration of an account stated can be overcome by evidence of an error or mistake. <u>Third</u>, resort to the doctrine of an "account stated" is disfavored in its application to professional services and fiduciaries, particularly attorneys who are subject to ethical obligations regarding the establishment of *clear fee agreements* and *reasonable fees*. *See, e.g.,* D.C. R. Prof. Cond. 1.5.

Essentially, the Robbins Firm is inviting this Court to ignore evidence of a *fixed-fee* agreement that required *finished* work product in the criminal matter and, instead, to impose the hourly rates that had previously governed a representation in a civil action. The law governing a claim of an "account stated" does not permit a party, let alone a fiduciary, to change agreed-upon fixed-fee arrangements by sending bills with a different basis for charges. Doing so is not called an "account stated;" it is called either a clerical error or fraud.

This Court should reject the Motion because (1) the parties agreed to fixed fee billing for completed work on the criminal matter; (2) the Robbins Firm never produced the requisite *finished* work product for filing in connection with the criminal matter; (3) Mr. Kornman timely disputed the sufficiency of the Robbins Firm's work; and (4) a mistake in the scope of the dispute occurred at the time of invoicing because the Robbins Firm applied a $50,000 escrow deposit from Mr. Kornman, which he did not realize at the time and which increases the dispute by that amount. In addition, the fees of the Robbins Firm remain subject to forfeiture based on its choice to broaden the scope of its representation of Mr. Kornman, thereby generating higher fees, without providing fundamental advice regarding certain important benefits of a potential plea agreement in his matter.

Mr. Kornman's cross-motion for summary judgment should result in the rejection of all of the Robbins Firm's claims in the Complaint. Concerning the contract claim in Count One, the

only agreement with regard to fees for work on the criminal matter required, as a condition precedent, the delivery of finished work product for filing, in exchange for a fixed fee. With regard to the *quantum meruit* claim in Count Two, such equitable relief is unavailable when an enforceable contract exists that included an unsatisfied condition precedent, and the Robbins Firm cannot produce sufficient evidence to show that Mr. Kornman used more than $50,000 worth of any other work on the criminal matter. Indeed, the Robbins Firm applied Mr. Kornman's escrow deposit of $ 50,000 (without adequate consent), to cover work on the criminal matter (in addition to the payment in full of approximately $250,000 out of $250,000 in bills for earlier work on the civil matter). Finally, with regard to the account stated claim in Count Three (on which the Robbins Firm also seeks summary judgment), the Robbins Firm has offered insufficient evidence that Mr. Kornman ever acquiesced in owing the amounts set forth in the invoices at issue.

Mr. Kornman is entitled to summary judgment in his favor. The Robbins Firm has outrageously promised to bill on a fixed-fee basis in writing, attempted to change the obligations by resort to improper invoices based on hourly rates, and then withheld the existence of the fixed-fee arrangement from this Court. In so doing, the Robbins Firm has wasted this Court's time and Mr. Kornman's resources in an inappropriate manner.

## <u>STATEMENT OF FACTS</u>

### <u>Initial Retention For Civil Matter</u>

On or about October 5, 2004, the Robbins Firm and Mr. Kornman signed a retention letter that engaged the Robbins Firm for legal services *on a civil matter* brought by the SEC and pending in the Northern District of Texas. The Robbins Firm drafted this retention letter. Based on the express terms of the letter and conversations with Attorney Robbins of the Robbins Firm,

the retention letter covered only certain work by the lawyers of the firm on the particular civil matter. *See* Kornman Cert. ¶ 2.

Pursuant to the express terms of the retention letter, at approximately the time Mr. Kornman signed it, he paid a $20,000 retainer to the Robbins Firm. His civil counsel in Texas, Jeffrey Tillotson, participated in various discussions and meetings with the Robbins Firm. At times, for convenience, Attorney Tillotson served as a go-between for the Robbins Firm and Mr. Kornman. Email traffic reflects that Attorney Tillotson informed the Robbins Firm, at relevant times, that Mr. Kornman made final decisions. At times, the Robbins Firm and Mr. Kornman communicated directly with each other. *See* Kornman Cert. ¶ 4; Certification of Jeffrey Tillotson ("Tillotson Cert.")[3] ¶ 5.

The Robbins Firm appeared in the civil matter and billed approximately $250,000 to Mr. Kornman for the services it provided on the civil matter. He paid for all services on the civil case fully and on a timely basis. He apparently overpaid by $10,000 because the Robbins Firm has stated that it still holds $10,000 of his initial retainer in escrow because of the billing dispute that arose. Kornman Cert. ¶ 5.

**Fixed Fee Arrangements In The Criminal Matter**

On or about November 16, 2005, an indictment was returned against Mr. Kornman in the Northern District of Texas. The charges included allegations of insider trading and making false statements. On several occasions, Attorney Robbins attempted to convince Mr. Kornman and Attorney Tillotson to engage him as lead counsel at trial for the criminal matter. *See* Kornman Cert. ¶ 7; Tillotson Cert. ¶ 7. By that time, Mr. Kornman had become concerned that the

---

[3] The Certification of Jeffrey Tillotson has been filed as Exhibit 2 to Mr. Kornman's Response to the Robbins Firm's Statement of Undisputed Facts.

Robbins Firm's last steps of completing work product were routinely slow and expensive.  To provide an incentive for the Robbins Firm to *finish* motion papers and the like, Mr. Kornman told Attorney Robbins that he wanted to pay his firm for projects on the criminal matter on a fixed-fee or capped-fee basis.  Attorney Tillotson engaged in similar fee discussions with Attorney Robbins.  *See* Kornman Cert. ¶¶ 8-14; Tillotson Cert. ¶¶ 8-9.

Email traffic with the Robbins Firm also reflects fixed-fee discussions and arrangements. *See* Pollack Cert. at Exhs. C, D, E.  Attorney Lawrence Robbins of the Robbins Firm set forth in an email, on January 6, 2006, at 5:33 p.m., the proposal relating to a motion to dismiss, which Mr. Kornman accepted: "**flat fee of $100K to do the opening brief, the reply brief, and any oral argument the court permits**."  *See* Pollack Cert., Exh. D (emphasis added).  Attorney Robbins had written shortly before that time that his "only qualm about a flat rate, btw, is gary's [sic] usual desire to edit until the very last minute, but we can build in some extra time for that and take the risk that we've underbid."  Pollack Cert. Exh. C.  The Robbins Firm has withheld these facts from its Complaint, its motion for summary judgment, and all other submissions to this Court.

In the criminal matter, the Robbins Firm undertook, as its primary project, a motion to dismiss.  In January 2006, the parties reached an agreement for a fixed fee of $100,000, for the Robbins Firm to complete an opening brief and reply papers, as well as to participate in oral argument on that motion in the criminal case.  On February 10, 2006, Mr. Kornman paid a $50,000 deposit against what he expected as reasonable fixed fees for each project in the criminal matter.  This $50,000 payment was not required by the initial retention agreement for the civil matter, but rather was based on a new agreement to use reasonable fixed or capped fees

for each significant project in the criminal case.    Pollack Cert. Exh. G; *See* Kornman Cert. ¶¶ 10-12; Tillotson Cert. ¶ 9.

Mr. Kornman also spoke to Attorney Robbins regarding a motion to suppress and a so-called *Stringer* motion.  They agreed that the fees for those motions would not exceed $25,000 each, and that each might get done for as little as $20,000.  Based on the fee negotiations among Attorney Robbins, Attorney Tillotson, and Mr. Kornman, no fees were owed on any of the motion projects until Mr. Kornman received finished work product.   *See* Kornman Cert. ¶¶ 11-13.

The Robbins Firm never provided to Mr. Kornman a ready-to-file motion to dismiss, never worked on a reply, and never participated in an oral argument on that motion.  A large portion of its work on the motion to dismiss copied work it had done, and for which it had already been paid, in the civil matter.  The Robbins Firm sent at most a rough draft of a motion to suppress to Attorney Tillotson, informing him in an email that Attorney Robbins had not even looked at it, and that it was not ready for Mr. Kornman's eyes or the Court.  Mr. Kornman never saw any version of the *Stringer* motion until after the commencement of this litigation, when the Robbins Firm produced an email reflecting that it had agreed with Attorney Tillotson to keep a draft hidden from him, apparently in their view for Mr. Kornman's own good, without informing him of that decision.  *See* Kornman Cert. ¶ 16 ; Tillotson Cert. ¶¶ 12, 14.

**<u>Invoices</u>**

The Robbins Firm issued a few invoices while or shortly after working on the criminal matter.  Any delay in addressing them is explainable for several reasons, none of which remotely suggests that Mr. Kornman acquiesced in an obligation to pay the amounts in them.  A total invoice for work by the Robbins Firm on the criminal matter in the amount of $145,000 to

$150,000 (like the amount on the invoices on which it now relies), would have been expected *had Mr. Kornman received a finished motion to dismiss, motion to suppress, and Stringer motion, reply papers, and the Robbins Firm's participation in oral argument.* That expectation was consistent with the fixed-fee agreements of $100,000 for the motion to dismiss, and $20,000 to $25,000 for each of the motion to suppress and the *Stringer* motion. Mr. Kornman did not pay those amounts at the time of any invoices, however, because he had not received the requisite finished work product. *See* Kornman Cert. ¶¶ 17-25; Tillotson Cert. ¶¶ 13, 16.

While the Robbins Firm was invoicing Mr. Kornman, he did complain about the fact that they had not yet sent to him finished work product. Mr. Kornman assumed that the Robbins Firm routinely sent monthly statements, regardless of agreements to fixed or capped fees, which would be reconciled when the work was complete. From Mr. Kornman's perspective, the Robbins Firm also appeared ethically obligated to keep him posted on their lawyers' actual time to show that the agreed-upon fixed fee was reasonably justified. *See* Kornman Cert. ¶¶ 17-25; Tillotson Cert. ¶¶ 13-14, 16.

Another reason that invoices did not seem as significant is that Mr. Kornman did not realize that the Robbins Firm had already applied his $50,000 deposit, without the Robbins Firm first completing its obligations and without his informed consent. Had Mr. Kornman realized and thought about the application of the $50,000 deposit, he would have expected the remaining bill to total only approximately $100,000, payable in full upon completion of the motion to dismiss, the motion to suppress, the *Stringer* motion, reply papers, and any oral argument. *See* Kornman Cert. ¶¶ 17-25; Tillotson Cert. ¶¶ 13-14, 16.

## The Present Dispute

Accordingly, the fee dispute in this action focuses on (1) the Robbins Firm's attempt to collect approximately $50,000 more than the agreed-upon fixed or capped fees and (2) the incompleteness of the motion work product, notwithstanding an agreement that finished work product was a condition to payment.

When Attorney Robbins made direct efforts to collect additional fees, on or about October 24, 2006, Mr. Kornman insisted again that, consistent with the prior agreement, the Robbins Firm complete the three motion projects. *See* Kornman Cert. ¶ 25; Tillotson Cert. ¶¶ 15. On October 26, 2006, the Robbins Firm produced "nine months" of work product by email. *See* Pollack Cert. at Exhs. H, I, J. This work product did not include a finished motion to dismiss, a finished motion to suppress, a finished *Stringer* motion, or any reply papers. Attorney Robbins refused to finish the motions and, instead, his firm filed this lawsuit. *See* Kornman Cert. ¶¶ 16, 24-25; Tillotson Cert. ¶¶ 12-16.

## Forfeiture

Finally, the pending counterclaim seeks forfeiture of fees by the Robbins Firm. Texas law provides former clients with a right to seek forfeiture of legal fees from their counsel based on breaches of fiduciary duties. During its entire representation of Mr. Kornman in the criminal matter, the Robbins Firm focused on increasing its role and fees. While doing so, the Robbins Firm never provided necessary information to Mr. Kornman regarding an efficient resolution by way of a plea. Specifically, the Robbins Firm never advised Mr. Kornman that, if convicted by a jury of making a false statement, but acquitted of insider trading, he could still be sentenced under the federal sentencing guidelines for insider trading, based on concepts of "cross-referencing" and "relevant conduct." Similarly, the Robbins Firm never informed Mr. Kornman

that a plea agreement could help avoid such cross-referencing or relevant conduct determinations. In combination with these breaches of fiduciary duty, the Robbins Firm also removed Mr. Kornman's $50,000 deposit from an escrow account when funds were not yet properly due, applying it against hourly rates when fixed fees had been reached, and has failed to replace those funds in escrow while this dispute remains pending. Pollack cert. Exh. G; Kornman Cert. ¶¶ 11-12, 21, 26-27.

## ARGUMENT

**I.    SUMMARY JUDGMENT IS AN INAPPROPRIATE VEHICLE BY WHICH TO RESOLVE FACTUAL DISPUTES RAISED BY THE ROBBINS FIRM'S MOTION.**

Standards governing summary judgment motions are well known. The party seeking summary judgment bears the initial responsibility of demonstrating that no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, (1986).

To determine whether there is a genuine issue of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true, and accept all evidence and make all inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). On summary judgment, the Court may not make credibility determinations or weigh evidence. *Anderson,* 477 U.S. at 249.

Here, the Robbins Firm essentially asks the Court to make credibility determinations and draw inferences in its favor, which would not be appropriate at the summary judgment stage. The Certification of Mr. Kornman, the Certification of Attorney Jeffrey Tillotson, and exhibits in the record, raise genuine factual disputes, including (1) whether the parties had agreed to fixed fees for completed work on the criminal matter, rather than the hourly rates that applied to the prior civil matter, (2) whether Mr. Kornman did not object to invoices sooner because of reasons

other than absolute acquiescence, and, (3) whether an error or mistake may have delayed his confrontation of the Robbins Firm regarding the amount in its bills.  If any of the Robbins Firm's claims survive Mr. Kornman's cross-motion for summary judgment, each such claim would require a trial.

Unlike the Robbins Firm's motion, Mr. Kornman's cross-motion for summary judgment raises pure issues of law:

> 1)  With regard to the contract claim, did the plain language of the written retention agreement limit its application to the civil matter?  Does a failure to satisfy a condition precedent, here the failure to deliver finished work product, relieve the other party of his contractual obligation?;

> 2)  With regard to the *quantum meruit* claim, is the Robbins Firm bound to the condition precedent of finished work product before any fees are due because *quantum meruit* is unavailable when there is an express contract?  Also, has the Robbins Firm produced any evidence reflecting that Mr. Kornman's $50,000 deposit on the criminal matter did not cover any reasonable value to him *for work product that he actually received and used*?; and

> 3) With regard to the account stated claim, did Mr. Kornman's insistence that the Robbins Firm owed him finished work product preclude liability for an account stated, as a matter of law, because it negated his acquiescence in the statements of account?

These issues are ripe for summary judgment in Mr. Kornman's favor.

## II.    A CLAIM BASED ON AN "ACCOUNT STATED" FOR PERSONAL SERVICES REQUIRES AN ABSOLUTE ACKNOWLEDGEMENT OF THE FEES AT ISSUE AND, EVEN THEN, CAN BE REBUTTED BY EVIDENCE OF A UNILATERAL ERROR OR MISTAKE OF A PARTY.

Count Three of the Complaint alleges that the firm is entitled to recover fees based on an "account stated."  The Robbins Firm argues, in its summary-judgment motion, that regardless of what the parties previously agreed upon regarding fees for work *on the criminal matter*, by mailing a few invoices and receiving no immediate response, a claim for an account stated has vested as a matter of law and cannot be rebutted.  In so doing, the Robbins Firm ignores not only

controlling precedent, but also substantial evidence that a fixed-fee arrangement had been reached by the parties in exchange for certain finished work product. Similarly, the Robbins Firm ignores substantial evidence that Mr. Kornman did not realize that the Robbins Firm had already (mis)applied his $50,000 escrow deposit on the criminal matter to amounts set forth in the invoices, in which Mr. Kornman has simply never acquiesced.

Based on the present record, adoption of the Robbins Firm's "account stated" theory, at the summary judgment stage, would turn at least several decades of contract jurisprudence on its head. Under longstanding precedent in of both Texas and the District of Columbia,[4] the doctrine of an "account stated" has been much more limited than the Robbins Firm claims, and narrower than in certain other jurisdictions, *see Dodson v. Watson*, 110 Tex. 355, 359 (1920) (explaining that at most a presumption, not an estoppel, arises from a statement of account and a failure to object); *Union Realty Co.* v. *Ahern*, 93 A.2d 84, 86-87 (D.C. Mun. Ct. App. 1952) (to similar effect), and this doctrine has been narrowed even further over time. Resort by the Robbins Firm to cases from jurisdictions that may recognize a broader account stated doctrine is completely unhelpful.

Under Texas law, since at least 1920, an account stated establishes at most a rebuttable presumption regarding the parties' contractual expectations. *See Dodson*, 110 Tex. at 359. The *Dodson* court explained:

> Mere presumptive evidence cannot create an estoppel. A stated account does not, therefore, amount to an estoppel. It is open to impeachment, just as other presumptions are subject to be overcome by competent proof. It does not of itself amount to an

---

[4] The Robbins Firm has assumed that the law of the District of Columbia applies to this matter, even though its former client, Mr. Kornman, resides in Texas, and the Firm filed multiple appearances in two Texas actions for him. None of the services at issue involved the application of D.C. law or litigation pending in this District.

obligatory agreement – a contract upon a new consideration, having all the sanctity of a written agreement. Its purpose is but to reach an agreed balance between the parties whereby the particular items may be eliminated. When that is done, its office is performed and the character of prima facie correctness in the balance is attained.

The case may be brought within the principles of an estoppel, or of an obligatory agreement between the parties, as when upon a settlement mutual compromises are made; but the mere stating of an account in its very nature and purpose precludes giving to the account when stated the character of a binding written contract. In the ordinary affairs of men it is not intended to have that character. In modern business transactions, such, for instance, as between banks and their customers, it would be perilous to state accounts if the statement of the balance is to be held in all cases as creating a contract binding upon both parties and subject to no correction for errors unless they be due to the fault of both.

It is upon such considerations that the established rule now is that an account stated does not create an estoppel, and is but prima facie evidence of the correctness of the items and the balance reached.

*Id.*

Similarly, since at least 1952 in the District of Columbia, an account stated creates at most only a rebuttable presumption:

[A]n account stated or settled is merely prima facie correct and may be impeached for mistake or error in law or in fact. …[T]o impeach an account stated for error or mistake it is not necessary that the error or mistake be mutual.  In the present case the trial court could have found that the purchasers in approving the settlement sheet did so in error and in mistaken understanding of the significance of the item relating to front foot charges. Whether it be called error of fact or law is immaterial.

*Union Realty Co.* v. *Ahern*, 93 A.2d 84, 86-87 (D.C. 1952).

### A.    There Can Be No Recovery On An "Account Stated" In The Absence Of An Absolute Agreement On The Amount Due.

In Texas and the District of Columbia, a claim for an account stated must be based on an underlying and absolute agreement to a certain amount due. *See Arnold D. Kamen & Co. v. Young*, 466 S.W.2d 381, 388 (Tex. Civ. App. 1971) (account-stated claim requires "an agreement, express or implied, between the parties fixing the amount due; and a promise, express or implied, by the one to be charged, to pay such indebtedness"); *First Nat'l Realty Corp. v. Impact Advertising, Inc.*, 206 A.2d 579, 580 (D.C. Ct. App. 1965) ("The essential of an account stated is that '[a] balance must have been struck in such circumstances as to import a promise of payment on the one side and acceptance on the other' …, but mere retention of the bill does not always imply an admission of its correctness and a promise to pay.").

By definition, such an "absolute" agreement does not exist, express or implied, when parties have expressed different expectations regarding their obligations.  A recent court explained that the doctrine of an account stated "presupposes an *absolute acknowledgment or admission* of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, and an assent, express or implied, to the correctness of the balance." *Eagle Maint. Servs., Inc. v. D.C. Contracts Appeals Bd.*, 893 A.2d 569, 582 (D.C. 2006) (emphasis added); *see Maltby v. Thompson*, 55 A.2d 142, 144 (D.C. Mun. Ct. App. 1947) (where one party told the other "to send the bill and she would pay it but she denied ever agreeing on any definite sum, … the existence of an account stated depended on disputed assertions of fact" and "[t]he trial court was not bound to accept plaintiff's version").

The present record reflects the lack of an "absolute" agreement to a particular amount due that would support a claim for an account stated.  Here, the parties do not even agree on the

proper basis of billing, whether fixed fee or hourly.  The parties have also not agreed on the amount due.  The Robbins Firm is attempting to collect a total of approximately $200,000 for work on the criminal matter.  Mr. Kornman believes that, *had the finished work product been delivered*, a total of approximately $150,000 (toward which he has already paid a $50,000 deposit) would have been due based on the fixed fee agreement.  The record also contains an obvious dispute by Mr. Kornman, at the time of invoicing, regarding his expectation of finished work product.

These disputes *should* require dismissal, as a matter of law, of the Robbins Firm's claim of an "account stated," but they certainly *must* preclude summary judgment in its favor.  *See Maltby*, 55 A.2d at 144.  In reality, an "account stated" is used when there is not evidence of a contract that conflicts with the statements of account, such as in situations that may arise in a longstanding course of dealing and compromises between merchants.  In such circumstances, an account stated may be used as *prima facie* proof to establish such a compromise as binding.

If adopted, the Robbins Firm's theory of an "account stated" would reward those engaged in inaccurate or even fraudulent billing practices, contrary to existing contractual obligations, based on nothing more than short-term silence in response.  The short passage of time here is far from sufficient to bind Mr. Kornman to the Robbins Firm's erroneous invoices.  At most, Mr. Kornman received a few invoices *before* ever receiving the expected finished work product.  On October 24, 2006, he objected again to paying invoices until work product was finished.  On October 26, 2006, the Robbins Firm delivered him several months' worth of incomplete work product.  There is simply no support for elevating, to binding obligations, such disputed evidence of temporary silence in response to a few improper invoices, before even a substantial portion of the incomplete work product was actually delivered.  Accordingly, the Robbins Firm has failed

to demonstrate the requisite "absolute" agreement to the amount due.

**B.**    **Mistakes Regarding The Anticipated Completion Of Work Product And The Amount Remaining In Escrow Precludes The Claim For An Account Stated.**

An account stated may always be "impeached" based on even a unilateral mistake of law or of fact. *Union Realty Co.*, 93 A.2d at 86-87 ("[T]o impeach an account stated for error or mistake it is not necessary that the error or mistake be mutual"); *Dodson*, 110 Tex. at 359 (an account stated "is open to impeachment").

At a trial, Mr. Kornman would prove that, to the extent he reviewed a few invoices, he did not realize that his $50,000 escrow deposit had been applied to the total balance. He would also prove that he expected finished work product before any amounts were due for work on motions in the criminal matter. Finally, he would prove that he viewed the references to hourly time entries in the Robbins Firm's bills as either clerical errors or efforts to justify the agreed-upon amount of fixed fees. In addition to the Robbins Firm's fundamental error when billing on an hourly basis after agreeing to a fixed fee, these other explanations more than overcome the Robbins Firm's efforts to impose improperly its unilateral and after-the-fact preference for an hourly rate.

**C.**    **Those Providing Personal Services And Fiduciaries Cannot Base An Account Stated On Mere Silence Over A Passage Of Time.**

Another reason why the Robbins Firm cannot succeed on its account stated claim is that, when personal services or fiduciary relationships are involved, the mere issuance of bills and passage of time are insufficient, as a matter of law. Since 1926, in the District of Columbia, putative creditors who have provided "personal services" have been precluded from establishing an account stated based on the mere fact of sending bills and silence in response:

> To constitute an account stated, there must be either an express or an implied agreement as to the amount due, and there must be an

> allegation that the account was in fact stated or agreed to. It is not
> sufficient, in the absence of the approval of the amount claimed by
> the defendant, to rely upon the mere fact that plaintiff had
> delivered to defendant a statement of the lump sum alleged to be
> due to which she had made no objection. This circumstance alone
> is not sufficient to establish the legal implication of acquiescence,
> in view of the fact that the amount, before delivery of the bill, had
> been the subject of discussion between the parties, and was sharply
> contested by the defendant. Contracts are not made this way. ***The
> mere sending of a statement by the creditor and the silence of the
> debtor are not sufficient. There is no meeting of the minds, either
> express or implied, an essential element of every valid contract.***
>
> In other words, before acquiescence can be implied, there must be
> circumstances in connection with the submission of the statement
> of account, from which approval of its correctness by the debtor
> may be inferred, and ***in the case of an account for personal
> services the mere silence of the debtor is not sufficient. "It has
> been held that the doctrine arising from the rendition without
> objection of an account rendered does not apply as regards an
> account for personal services rendered without any express
> contract as to compensation, and the value of which is to be
> determined on the principle of quantum meruit."*** 1 Corpus Juris.
> 696.

*Chinn v. Lewin*, 16 F.2d 512, 515 (D.C. Cir. 1926) (emphases added; three demands on bills

without a response were not enough to establish an account stated); *see Braude & Marguilies,

P.C. v. Fireman's Fund Ins. Co.*, 468 F. Supp. 2d 190, 199 (D.D.C. 2007) (in a case involving

legal fees, "[t]he mere mailing of a bill, and the recipient's silence, do not reflect an agreement to

pay").

　　　This is not a case like *Dale Hilton, Inc. v. Rotwein*, 130 A.2d 312 (D.C. Mun. Ct. App.

1957), in which the court found factually that, "before submitting his bill," the plaintiff

"discussed the matter with the president of the [client] corporations," who "agreed to a smaller

amount than he originally suggested and requested him to send a bill for that amount," then

"[a]fter the bill was submitted two payments were made on account." *Id.* at 313.  Hence, much

more than the issuance of a bill and mere silence occurred in the *Dale Hilton* case, which

actually involved an agreed-upon compromise and partial payments on it.

California law recognizes similar limitations on the doctrine of an account stated.  Faced with a lawyer who attempted to rely on a claim for an account stated, the California Supreme Court has explained:

> since accounts stated were "intended to preserve and protect legitimate demands but not to create obligations independent of prior indebtedness," the rendering of an account, although not objected to, cannot create a liability where no liability existed before.  It is on this latter basis that we conclude that the trial court properly found no acquiescence in the statement of account arising from Trafton's failure to object thereto and that we reject Youngblood's first contention. . . .
>
> ***Although an attorney is entitled to recover the reasonable value of his services if there is no express employment contract providing for his compensation, he "may not unilaterally determine his own fee and withdraw funds held in trust for his client in order to satisfy it, without the knowledge or consent of the client."***

*Trafton v. Youngblood*, 69 Cal. 2d 17, 25-28, 442 P.2d 648 (1968) (citations omitted and emphasis added; concluding that a lawyer could not divert escrow funds based on his "client's failure to object to a statement of account" because "[t]he relationship between an attorney and his client 'is one of a strict fiduciary and confidential nature'" and "involves more than refraining from exercising undue influence, but … is 'of the very highest character'").

None of the cases on which the Robbins Firm relies stretches the account stated doctrine to the present situation.  Many of those cases actually recognize how narrow the doctrine is and find no liability for an account stated.   *See* Robbins Memorandum at 9 (citing to *Chinn*, *First Nat'l Realty Corp.*, *Braude & Marguiles, PC*, and *Eagle Maint. Serv.*, which are discussed herein and rejected account stated claims).

Other cases on which the Robbins Firm relies also do not remotely support a summary

judgment in its favor. *See Continental Cas. Co. v. Dr. Pepper Bottling Co. of Tex., Inc.*, 416 F. Supp. 2d 497, 505 (N.D. Tex. 2006) (rejecting account stated claim, as matter of law, because silence in response to bills did not undermine parties' unexpressed disagreement with them, even though party had "agreed to review the invoices and to pay any amounts it believed it owed"); *Eastern Devt. & Inv. Corp. v. San Antonio*, 557 S.W. 2d 823, 825-26 (Ct. Civ. App. 1977) (reviewing factfinding only for sufficiency of evidence and noting that evidence of account stated can serve as "prima facie case" of an obligation, but not suggesting entitlement to judgment as matter of law); *United States v. District Council of New York City*, Mo. 90 Civ. 5722, 1996 WL 334414 *5 (S.D.N.Y. Jun. 18, 1996) (not addressing account stated claim directly, but only referencing it by analogy when addressing motion for attorneys' fees); *Riley v. Mattingly*, 42 App. D.C. 290, 294 (D.C. Cir. 1914) (recognizing that an account stated can be impeached for mistake, even if "eight months" passed without any dispute of invoices); *Paul, Weiss, Rifkind, Wharton & Garrison v. Koons*, 780 N.Y.S.2d 710, 712-13 (N.Y. Sup. Ct. 2004) (state trial court in New York explaining that, notwithstanding an account stated theory, law firm was "not relieved of its ethical obligation to charge a reasonable fee," but as a factual matter client never contested the agreement to particular hourly rates for the services, never claimed that particular fees were unreasonable, paid some of the bills for particular representation, admitted that remaining amounts were due and never objected to bills); *Robins, Kaplan, Miller & Ciresi v. Senoret Chem. Co.*, No. Civ. 4-90-317, 1991 WL 325289 *3 (D. Minn. Dec. 30, 1991) (finding, as factual matters, after bench trial, that all bills were pursuant to agreed-upon fees, that no objection was made within seven months to outstanding balances on invoices and in response to several demands, that several payments were made on outstanding invoices for particular representation, that scope of work was not disputed, and that fees charged were proven to be

reasonable); *Santora, McKay & Ranieri v. Franklin*, 339 S.E.2d 799, 802 (N.C. Ct. App. 1986) (upholding *jury verdict* based on sufficient evidence); *Yannelli, Zevin & Civardi v. Sakol*, 749 N.Y.S.2d 270, 271 (N.Y. App. Div. 2d Dep't 2002) (holding that "plausible explanation" for failure to object more clearly to bills presented fact issues that precluded summary judgment for law firm on account stated claim); *Reed Research, Inc. v. Schumer Co.*, 243 F.2d 602, 604 (D.C. Cir. 1957) (undisputed evidence reflected that parties reached absolute agreement to compromise charges, settled amount appeared repeatedly in "numerous" statements, and "nowhere" did debtor "challenge the figures or calculations" or scope of the work); *Brand v. Westall*, No. Civ. A. 94-0312, 1995 WL 235579 *5-*6 (D.D.C. Apr. 21, 1995) (finding that defendant failed to provide proper forms of proof at summary-judgment stage, relying instead on "nothing more than counsel's conclusions regarding the merits of the case").

The present matter is also clearly distinguishable from cases in which a client acknowledges the completion of all work, agrees on the fees and basis for them, receives bills for several months after all services are rendered, and makes payments on the invoices to which it later objects. *See* Robbins Memo at 15 n. 10. Here, even the Robbins Firm acknowledges that Mr. Kornman insisted that more work must be done (the completion of motion projects), before fees were due and payable, and that Mr. Kornman did not make payments on invoices for work on the criminal matter.

As Mr. Kornman's fiduciary, the Robbins Firm retains the burden of proof to demonstrate that its so-called "account stated" was fair, reasonable, and consistent with the parties' agreement and understanding. None of the cases on which the Robbins Firm relies involves a law firm choosing unilaterally and after-the-fact to abandon a fixed-fee agreement in favor of hourly rates. Hence, the Robbins Firm cannot make the required showing, certainly not

as a matter of law at this stage.

### D.     Mr. Kornman's Forfeiture Claim Also Precludes Summary Judgment.

In the Motion, the Robbins Firm has ignored Mr. Kornman's counterclaim seeking forfeiture. Under Texas law, fees collected by a fiduciary may be forfeited as a result of a breach of fiduciary duty. *See, e.g.,* Tex. Prop.Code Ann. § 114.008(a)(8) (court may reduce or deny compensation to fiduciary to remedy breach of trust); *Burrow v. Arce,* 997 S.W.2d 229, 246 (Tex. 1998) (upon breach of fiduciary duty by attorney, forfeiture of attorney's compensation may be necessary to satisfy public's interest in protecting attorney-client relationship, *without any showing that actual damages have been caused*). There is no authority for upholding a claim of an account stated before such a forfeiture claim is resolved. Hence, any judgment for the Robbins Firm would be premature at this stage.

### E.     More Discovery Is Necessary Under Rule 56(F) Of The Federal Rules Of Civil Procedure.

Mr. Kornman is taking the depositions of two key witnesses, Attorneys Robbins and Poe, from the Robbins Firm on October 10th and October 11th, and a third attorney from the Robbins Firm on October 22nd. Each of these witnesses interacted with Mr. Kornman, uniquely possesses an understanding of expectations, and/or has knowledge of the fee structures and generation of incomplete work product. Pollack Cert. ¶¶ 13-14. None of the Robbins Firm's witnesses have made themselves available before these dates. Accordingly, Mr. Kornman should be allowed to complete these depositions before summary judgment could possibly be entered for the Robbins Firm.

III.  **SUMMARY JUDGMENT DISMISSING THE BREACH OF CONTRACT CLAIM IS APPROPRIATE BECAUSE THE PLAIN LANGUAGE OF THE ENGAGEMENT LETTER LIMITS ITS APPLICATION TO THE CIVIL MATTER, AND A SHIFT TO A FIXED FEE OCCURRED FOR WORK ON THE CRIMINAL MATTER.**

The Robbins Firm bases its contract claim in Count One, for unpaid services in connection with a criminal matter, on an engagement letter for a different civil matter.  Under the laws of D.C. and Texas, an unambiguous term in a contract should be given full effect as a matter of law.  The court in *Holland v. Hannan*, 456 A.2d 807 (D.C. Ct. App. 1983), explained:

> a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence. Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction.  The question of whether a contract is ambiguous is one of law to be determined by the court.
>
> *            *            *            *
>
> [A] contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends....

*Id.* at 815 (citation omitted).

Similarly, in *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783 (Tex. App. 2005), the court held:

> When interpreting an unambiguous contract, it is well established that "the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument."  In order to achieve this objective, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of a contract so that none will be rendered meaningless."  The court should consider that the "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced

as it is written." This is often referred to as the "Four Corners Rule" which means that the intention of the parties is to be ascertained from the instrument as a whole and not from isolated parts thereof. Moreover, a court will not change the contract merely because it or one of the parties comes to dislike its provisions or thinks that something else is needed. The court will not "ask about the subjective intent of the parties to the contract." When the contract is unambiguous, the court should apply the pertinent rules of construction, apply the plain meaning of the contract language, and enforce the contract as written.

*Id.* at 787.

Following these general principles of contract law, based on the four corners of the written civil engagement letter, Mr. Kornman has no contractual obligation to the firm based on any work other than the carefully-defined scope found in the plain language of the contract. Indeed, the firm's *quantum meruit* claim inherently reflects that it seeks fees for extra-contractual services. Even if there were an ambiguity in the scope of the agreement – which there is not – the law of both D.C. and Texas recognize that the ambiguity should be construed "strongly" and "strictly" against the drafter. *See Capital City Mortgage Corp. v. Habana Village Art & Folklore, Inc.*, 747 A.2d 564, 567 (D.C. Ct. App. 2000); *Southern Disposal, Inc. v. City of Blossom*, 165 S.W.3d 887, 896 (Tex. Ct. App. 2005).

Here, the Robbins Firm chose to draft the civil engagement letter with a narrow scope and is bound by its plain language on any contract claim. When so doing, the Robbins Firm may have attempted to limit the responsibilities to which it subjected itself. As a consequence, however, the Robbins Firm limited the scope of its contractual rights. In addition, any rights of the Robbins Firm under the fixed fee agreements suffer from failed *conditions precedent* because no finished work product was delivered to Mr. Kornman. *See* Restatement (First) Contracts § 250. In its Complaint, the Robbins Firm has not sought relief under any fixed-fee agreement.

Any remaining dispute as to the contractual obligations relating to work on the criminal matter reflects nothing more than the absence of a meeting of the minds. Under such circumstances, the Firm cannot assert that any fees remain outstanding for any services within the scope of a contractual representation (leaving *quantum meruit* as the only form of potential recovery – although for the reasons discussed below that recovery is also unavailable to the Robbins Firm). Mr. Kornman is therefore entitled to summary judgment dismissing the breach of contract claim in Count One.

## IV. RECOVERY IN *QUANTUM MERUIT* IS UNAVAILABLE BECAUSE THERE WAS A FIXED-FEE AGREEMENT CONTAINING A FAILED CONDITION PRECEDENT, AND THE FIRM CANNOT PROVE ANY OTHER ACTUAL BENEFIT TO MR. KORNMAN FOR WHICH THE FIRM HAS NOT BEEN COMPENSATED.

The Firm's second claim is for *quantum meruit*. "An action in *quantum meruit* is an action on a contract implied in fact…." *Ellipso, Inc. v. Mann***,** 460 F. Supp. 2d 99, 104 (D.D.C. 2006); *see also, e.g., Wyche v. Perrin*, 228 S.W.2d 330, 334 (Tex. Civ. App. 1950) ("Liability on 'quantum meruit' is liability on an implied contract, or contract implied in law, as distinct from liability on implied contract proper, or contract implied in fact."). Its essential elements are: (a) valuable services rendered or materials furnished; (b) that benefited the person sought to be charged; (c) which services or materials were accepted by that person; and (d) under circumstances demonstrating that the plaintiff was reasonably expecting payment. *See, e.g.*, *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246-47 (D.C. Cir. 1996); *Ellipso***,** 460 F. Supp. 2d at 104; *New Econ. Capital, LLC v. New Mkts Capital Group,* 881 A.2d 1087, 1095 (D.C. 2005); *Providence Hosp. v. Dorsey*, 634 A.2d 1216, 1219 n.8 (D.C. 1993);*Bashara v. Baptist Mem'l Hosp. Sys.,* 685 S.W.2d 307, 310 (Tex. 1985); *Dueitt v. Dueitt***,** No. 09-05-422, 2007 WL 274739, *1 (Tex.App.-Beaumont Feb. 1, 2007).

As recently as last year, this Court has recognized, under D.C. law, the fundamental rule that the existence of a contract, whether oral or written, between the parties precludes a claim for restitution in the form of *quantum meruit*. *Ellipso***,** 460 F. Supp. 2d at 104 (motion to dismiss *quantum-meruit* claim granted); *King & King, Chartered v. Harbert Int'l, Inc.*, 436 F. Supp. 2d 3, 14 (D.D.C. 2006) ("Defendants maintain that, under District of Columbia law, a claim for *quantum meruit* is not sustainable where there is an express written agreement between the parties regarding the same subject matter…. As a general matter, this is true…."); *see also, e.g., Dale Denton Real Estate, Inc. v. Fitzgerald,* 635 A.2d 925, 928 (D.C. 1993) ("There is no need to resort to a quasi-contract claim based on *quantum meruit* if a true contract was in existence at the time the services were performed."); *Standley v. Egbert,* 267 A.2d 365, 368 (D.C. 1970) ("*quantum meruit* is not applicable when compensation of the parties is covered by an express written contract"); *Leba v. Sills,* 175 A.2d 599, 600 (Mun. Ct. App. D.C. 1961) ("it has consistently been held that a plaintiff cannot claim or recover on a *quantum meruit* theory when the rights of the parties and the basis of compensation are covered by special contract").

The same rule applies in Texas. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) ("a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished."); *In re Walston*, No. 10-05-00193-04, 2007 WL 1378512, *8 (Tex. App.-Waco May 4, 2007) ("a litigant generally may not recover in quantum meruit if there is a contract which is enforceable against the party from whom the litigant seeks to recover."); *Jones v. Blume*, 196 S.W.3d 440, 451 (Tex. App.-Dallas 2006, pet. denied) ("Where services are covered by an express contract, however, the remedy of *quantum meruit* is generally not available."); *Double Diamond, Inc. v. Hilco Elec. Coop.*, 127 S.W.3d 260, 268 (Tex. App.-Waco 2003, no pet.) ("If the delivery of services and materials, and

payment for them, are governed by a valid contract, the action sounds in contract, not quantum meruit.").  Because, as seen, the parties here did have a fixed fee agreement that informed the parties' obligations, with an *unsatisfied condition precedent*, the Court should grant summary judgment dismissing, for this reason alone, the firm's *quantum meruit* claim.

Even more fundamentally, the Court should grant summary judgment dismissing the firm's *quantum meruit* claim because the remedy is available only when a defendant has enjoyed an actual benefit from any services for which it has not been compensated.  As this Court in *Novecon, Ltd. v. Bulgarian-American Enter. Fund*, 967 F. Supp. 1382 (D.D.C. 1997), *aff'd*, 190 F.3d 556 (D.C. Cir. 1999), explained:

> with regard to the claim for *quantum meruit,* Novecon cannot show that it rendered any "valuable services" to BAEF. ...[because a]lthough Novecon contends that it performed certain, unspecified "work" for BAEF, presumably referring to its preliminary negotiations with the Batsov family, it is clear from the record that such work–although causing a detriment to Novecon–resulted in nothing of value to BAEF. "[A] party's expenditures in preparation for performance that do not confer a benefit on the other party do not give rise to a restitution interest."  *See* Restatement (2d) of Contracts § 370 cmt. (1981):  *see also id.* illus. 2:  E. Allan Farnsworth, Farnsworth on Contracts. § 3.26a, at 314 ("[T]he claimant must be able to show that its services resulted in a[n] actual benefit to the defendant.").  Accordingly, there is no basis for a finding of unjust enrichment.

*Id.* at 1389 (citations omitted); *see also King & King*, 436 F. Supp. 2d at 14 (*quantum-meruit* claim "fails … because plaintiff has not adequately alleged that defendants obtained any identifiable, tangible benefit as a result of plaintiff's legal services").  A failure to allege and prove any benefit to a defendant "is inconsistent with the necessary showing…."  *King & King*, 436 F. Supp. 2d at 16.  Merely asserting "that plaintiff provided defendants with legal representation in litigation," without proof that a defendant "actually benefited therefrom, will

not suffice to state a claim for which *quantum meruit* relief may be granted." *Id.* at 16 & n.25 ("Plaintiff's assertion that it suffered a detriment … [is] irrelevant….").

Similarly, the court in *Carr v. Austin Forty*, 744 S.W.2d 267 (Tex. Ct. App. 1987), explained:

> To prevail on a quantum meruit claim, the plaintiff must establish that the services were valuable from the perspective of the defendant.  If the services rendered do not confer any benefit on the defendant, there can be no recovery for the reasonable value of the benefit conferred because the services are not deemed valuable.  There is no evidence in the record to indicate any benefit appellant conferred on the appellees that was of value to them.

*Id.* at 273 (citations omitted).

Here, the record contains absolutely no evidence reflecting any benefit that Mr. Kornman enjoyed from any extra-contractual services performed by the Robbins Firm for which it did not receive compensation.  Incomplete work product received under fixed fee agreements and the *condition precedent of completion* are simply not subject to *quantum meruit* recovery.  With regard to any extra-contractual services, such as miscellaneous advice not related to motion projects, under both D.C. and Texas law, as described above, what is "valuable" from the perspective of the Firm is irrelevant.  For purposes of a *quantum-meruit* claim, detriment to the Robbins Firm is immaterial in the absence of a valuable benefit enjoyed by Mr. Kornman.  The Robbins Firm has not produced evidence of any such value, let alone value in excess of the $50,000 it has already received from Mr. Kornman for work on the criminal matter. Accordingly, Mr. Kornman is entitled to summary judgment dismissing the *quantum-meruit* claim in Count Two.

**IV.    THE CLAIM OF AN ACCOUNT STATED IS INSUFFICIENT AS A MATTER OF LAW.**

For the same reasons as those set forth in Point II, *supra*, Mr. Kornman is entitled to summary judgment dismissing Count Three.   The undisputed evidence in the record reflects disagreement on the scope of the expected work and the amount due.  *See* Point II, *supra*.  The Robbins Firm acknowledges that Mr. Kornman demanded more work (*i.e.*, completed work), before he would pay any further amounts.   As Mr. Kornman's fiduciary, and as a matter of law, merely sending a few invoices and receiving no response did not give rise to a viable claim for an account stated.  *See id.*

**CONCLUSION**

Mr. Kornman should not have to pay fees for incomplete legal services contrary to fixed-fee arrangements that the Robbins Firm chose to omit from the allegations of its Complaint and other submissions to this Court.   The services at issue did not benefit him with value beyond what he has already paid, and he consistently expressed his expectation for finished work product before he had any obligation to pay any amounts in invoices.  Because the Robbins Firm cannot prove that it seeks fees for services due under an applicable engagement agreement, for services that actually provided value to Mr. Kornman beyond what he has already paid, or for services as to which Mr. Kornman expressly or implicitly admitted a definite amount owed, the Firm cannot state a claim for breach of contract, *quantum meruit*, or an account stated.

A law firm can avoid this sort of litigation with former clients by drafting a broader scope of services in its retention agreements and expressly accepting the broader responsibility.   In the alternative, a law firm can draft clear fee agreements and amend its retention agreements when the scope of representation expands, or when bases for fees change.   Or a law firm can address billing issues more promptly so that significant disputes do not arise.   Here, the Firm chose not to

take any of those measures.  Instead, it agreed to a fixed fee yet billed for hourly rates, and removed funds from escrow for payment of improper invoices.

The Motion should be denied and Mr. Kornman's cross-motion for summary judgment should be granted, dismissing this action.

Dated:  October 8, 2007                              Respectfully submitted,


**/s/ Orlando E. Vidal**
Orlando E. Vidal (D.C. Bar No. 461815)
Barry S. Pollack, *Admitted Pro Hac Vice*
Sullivan & Worcester, LLP
1666 K Street, NW, Suite 700
Washington, DC 20006
Telephone: (202) 775-1200
Fax: (202) 293-2275

**COUNSEL FOR GARY M. KORNMAN**