**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ROBBINS, RUSSELL, ENGLERT     :
ORSECK & UNTEREINER LLP,       :
                               :      Civil Action No.
                Plaintiff,     :      1:07-cv-00554-JR/JMF
                               :
        v.                     :
                               :
GARY KORNMAN,                  :
                               :
                Defendant.     :

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

Plaintiff Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP ("Robbins Russell")

submits this reply in further support of its October 2, 2007 Motion to Compel discovery from

defendant Gary Kornman.

Kornman's theory of this case has taken quite a turn in the past few weeks.  In defending our

claims for unpaid fees, he originally told the Court that he should not have to pay his bills because

Robbins Russell's work was "inadequate and incorrect" (Aug. 20, 2007 Joint Report at 3), and

"subpar" and "useless" (Reply in Support of Motion to Dismiss at 10).  At the same time, he

repeatedly asserted that Robbins Russell had committed malpractice, which caused him millions of

dollars in damages.

Now, faced with a motion to compel production of any documents or testimony that might

show "evidentiary support" for leveling such charges (see Fed. R. Civ. P. 11(b)(3)), Kornman

advises the Court that he "does not anticipate attempting to prove a 'sub-par quality'" defense or

counterclaim after all. Opp. at 4.  Instead, Kornman says, he "intends to focus at trial on the

*incomplete* nature of the Robbins Firm's work, rather than prove *sub-par* quality in other ways."

*Id*. at 8-9 (italics in original). And as for his breach of fiduciary duty claim, Kornman now says that

the whopping damages figures he had asserted were not meant to imply that Robbins Russell

actually *caused* any damages, but rather were "to indicate the nature of harm flowing from the sort

of breach of fiduciary duty that occurred here." Opp. at 4.

All of this back-pedaling is to avoid shining the light of day on the baseless defenses and

counterclaim that Kornman chose to pursue. Though Kornman saw fit to level all manner of charges

about our work at the *pleading* stage, at the *discovery* stage he insists (Opp. at 4) that the "issues for

trial should remain narrow," and that discovery should be limited only to what Kornman now says

the case is about. Accordingly, he argues, the discovery we have requested is off limits, either

because the materials are irrelevant, privileged, or were not first discussed with the Court in a pre-

motion conference call. The Court should reject this gamesmanship.

1. Kornman's latest theory of the case – never mentioned in any previous filing – has three

steps. First, despite previously (and incorrectly) asserting that Robbins Russell could not "*allege*

*in good faith*" a modification of the parties' initial agreement that Robbins Russell would provide

legal services in Kornman's SEC case,[1] Kornman now (but equally incorrectly) says that the parties

agreed to specific fixed-fee arrangements with respect to each task that was assigned to Robbins

Russell in the criminal case against Kornman. Second, Kornman claims, the parties further agreed

that Robbins Russell would not receive any payment for any of these tasks until they were

"completed." Third, he asserts, Robbins Russell never did "complete" any of the tasks it was

assigned. Opp. at 4. Kornman can say all of that (indeed, he swears to it in his summary judgment

---

[1] June 13, 2007 Reply Memorandum of Law in Further Support of Gary Kornman's Motion to Dismiss at 4 (emphasis added).

papers) but each is false. Although Robbins Russell agreed to perform a single, discrete assignment on a fixed fee basis, we performed *numerous* tasks at the direction of Kornman and his agent and primary lawyer, Jeffrey Tillotson, and there is *no* evidence in the record to support Kornman's claim that we ever discussed, let alone agreed, that Kornman could pay for our work (fixed fee or otherwise) only when he deemed it "complete." What is more, the record conclusively establishes that Robbins Russell did precisely what it was asked to do, and did it exceptionally well – which explains why Kornman has abandoned his assertions, now that the facts matter, that our work was "useless." If Kornman had ever thought otherwise or had any complaint about our bills, he surely would have said so but he never did. Only when Robbins Russell finally refused to take on any new assignments until its seven outstanding invoices were paid did Kornman assert that our work was "subpar."

Contrary to Kornman's suggestion, his shift in litigation strategy has no bearing on whether his defenses and counterclaim put his communications with his lawyers in issue. To begin with, Kornman has not sought leave to amend or withdraw his recently amended Answer and Affirmative Defenses – in which he asserts that Robbins Russell's claims are barred by "unclean hands" (Fifth Affirmative Defense); that Kornman "is not responsible" to pay for work assigned to Robbins Russell by Kornman's Texas counsel, Jeff Tillotson, because giving such assignments was "outside the scope of [Tillotson's] authority" (Seventh Affirmative Defense); and that Robbins Russell "made arrangements" with Kornman's other lawyers (namely, Tillotson himself) to "hide certain of [our] work" from him (*id.*). In any event, whatever Kornman says he presently "intends" to "focus on" at trial (Opp. at 8-9) is no promise of what he actually will do when the time comes, since his story changes with each new filing.

Nor does Kornman's new re-imagining of his counterclaim shield him from discovery as to what he and his lawyers discussed about pleading guilty. See Opp. at 4. Originally, Kornman claimed that advice from Robbins Russell "regarding the potential benefits of plea bargains . . . would have saved Mr. Kornman more than $2,000,000 in legal fees." Aug. 27, 2007 Reply in Support of Motion to Stay Discovery at 3. Next, he asserted that, "but for Robbins Russell failing to advise him properly . . . he would have reached a plea agreement with the government earlier, thereby avoiding more than $1 million in attorneys' fees and related expenses." Sept. 6, 2007 Initial Disclosures at 4. Then, in his Answer and Counterclaims (¶ 26), he alleged that Robbins Russell's breach of fiduciary duty "caused him to suffer additional expenses, burdens and distress associated with [the] criminal proceedings."

Kornman knows that those allegations are utterly baseless, because as Mr. Tillotson will confirm under oath, he repeatedly insisted to his lawyers that he would not consider pleading guilty (he finally did so on the eve of trial). Consequently, having been presented with discovery requests, Kornman now says that "'causation' is not an element" of his claim for breach of fiduciary duty, and that, Paragraph 26 of his Counterclaim notwithstanding, he "has not sought a monetary recovery for emotional distress." Opp. at 4. Accordingly, Kornman argues, his "interaction with other counsel" on the topic of plea bargaining "remains irrelevant." *Id*.

But even if Kornman forswears any claim for monetary damages, his conversations with his other lawyers on this topic still go to the heart of his claim. The thrust of Kornman's theory is that Robbins Russell "breached its duty of care to [him] by negligently failing to advise him regarding

pertinent potential benefits of plea agreements." Counterclaim ¶ 23.[2] Questions such as (i) whether

Kornman's principal defense counsel *did* discuss plea bargaining with him; and (ii) whether

Kornman told them all that he would never consider taking a plea, have an obvious bearing on

whether Robbins Russell's alleged failure to give this advice "breached its duty of care."

Those communications, upon which Kornman's *affirmative* defenses and *affirmative* claim

for damages expressly rely, "go to the very heart" of his allegations and cannot be discovered by any

other means. *Republic Ins. Co.* v. *Davis*, 856 S.W.2d 158, 163 (Tex. 1993); see also *Ideal Elec.*

*Security Co.* v. *Int'l Fidelity Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) ("[T]he attorney-client

privilege is waived when the client places otherwise privileged matters in controversy.").[3]

Therefore, under both D.C. and Texas law, Kornman has waived the attorney-client privilege.[4]

---

[2] Indeed, Kornman goes so far as to allege that Robbins Russell *purposely* failed to give Kornman this advice in order to "delay resolution of the criminal matter . . . to earn additional fees." *Id*. ¶ 27.

[3] Although Kornman has completely waived the attorney-client under *Republic Insurance Company*, by virtue of seeking affirmative relief, he has *also and independently* waived the privilege under Texas law concerning the specific communications at issue in this motion. That is because Kornman's filings in this case have purported to disclose the content of privileged communications with Tillotson (regarding the scope of, quality of, and fee arrangements for Robbins Russell's work) and other lawyers (regarding the advice Kornman received concerning fee arrangements). See *Marathon Oil Co.* v. *Moye*, 893 S.W.2d 585, 590 (Tex.App.-Dallas 1994) ("A person waives privilege if he voluntarily discloses any significant part of the privileged material."); Tex. R. Civ. Evid. 511 ("A person upon whom these rules confer a privilege against disclosure waives the privilege if . . . the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged").

[4] The "compromise" Kornman proposes (Opp. at 4-5) is practically meaningless. Beyond the fact that he still has produced *none* of what he says is unobjectionable (and that he has never provided a draft of the "confidentiality agreement" he says he needs), virtually all of what Kornman is willing to produce consists of communications between Kornman or Tillotson *and our firm.* We already have our own copies of such communications.

2.   Kornman separately argues (Opp. at 9-11) that the Court should deny our motion to compel production of tapes, text messages, and evidence that Kornman failed to pay other law firms. First, he contends that we did not properly raise these issues with the Court before filing the present motion.  But we read the Court's September 26, 2007 Order (Dkt. 27) as waiving our obligation to present any aspect of the present discovery dispute with the Court.  Kornman says that the Court's Order is narrower, but it is hard to see how raising only certain matters with the Court, while reserving the rest for a motion to compel, would serve anybody's interest in an efficient resolution of the dispute.  If we are wrong, of course, we will follow whatever direction the Court gives.

Second, Kornman argues (Opp. at 11) that materials showing how many other law firms he failed to pay in the same matters are irrelevant.  But Kornman has made them relevant.  In an effort to fend off summary judgment on our Account Stated claim (Count III), Kornman filed an Amended Answer, the sole purpose of which was to add the Affirmative Defense that his failure to pay our bills was the result of a "mistake of fact and/or law."  Eighth Affirmative Defense.  If (as Winston & Strawn has alleged) Kornman failed to pay *numerous* other law firms who represented him in the same litigation, that fact is plainly is relevant – and admissible – to prove the absence of any mistake here.  Fed. R. Evid. 404(b).  That Kornman may "attest at his deposition" that Robbins Russell "was the only firm" among these that he mistakenly (as opposed to intentionally) failed to pay (Opp. at 10-11) makes the requested discovery that much *more* important, not irrelevant.[5]

---

[5]   Kornman misapprehends Rule 404 in his argument that, if the evidence we seek is admissible, so too should Kornman be permitted to introduce evidence of the "dozens of lawyers whom [he] has paid in full or to whom he has even provided a bonus when he was particularly satisfied." Opp. at 10.  Such evidence is inadmissible under Rule 404(a), which prohibits Kornman from proving his good faith on this "particular occasion" through evidence that he sometimes, if not regularly, pays his legal bills.

Finally, Kornman says (Opp. at 9) that our claim that he has produced no documents is "false," and that he has produced "over 500 pages of documents." Although Kornman did produce some documents three days after receiving our motion to compel (and after nearly three weeks had passed since the extension we provided to him), *all of them* are either documents Kornman had received *from Robbins Russell* (such as the engagement letter and emails sent to Kornman by lawyer in our firm) or public filings in the underlying litigation. Our document requests are now more than two months old, depositions have now begun, and Kornman has produced essentially nothing. Thus, although Kornman says that our motion to compel production of recordings he made of conversations with Robbins Russell attorneys is "quite easily addressed" (Opp. at 10), he has not done so.

Dated: October 10, 2007

Respectfully submitted,


      /s/ Gary A. Orseck

Gary A. Orseck (Bar No. 433788)
Alan D. Strasser (Bar No. 967885)
Matthew R. Segal (Bar No. 483486)
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, NW, Suite 411
Washington, DC  20006
Telephone: (202) 775-4500
Fax: (202) 775-4510


Attorneys for Plaintiff Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP