UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, <br><br> Plaintiff/Counterclaim-Defendant, <br><br> v. <br><br> GARY M. KORNMAN, <br><br> Defendant/Counterclaim-Plaintiff. | Case No. 1:07-cv-00554-JR/JMF |

NOTICE OF COMPLETE EXHIBIT "I"
TO DEFENDANT GARY M. KORNMAN'S
MOTION FOR LEAVE TO SUPPLEMENT SUMMARY
JUDGMENT RECORD WITH NEWLY-DISCOVERED MATERIAL

In the filing of Defendant/Counterclaim-Plaintiff Gary M. Kornman entitled "*Motion For Leave To Supplement Summary Judgment Record With Newly-Discovered Material*," there were pages missing from Exhibit "I." Attached hereto is the complete Exhibit.

WHEREFORE Mr. Kornman respectfully requests that notice be taken.

Respectfully submitted,

**/s/ Orlando E. Vidal**
Orlando E. Vidal (D.C. Bar No. 461815)
Barry S. Pollack, *Admitted Pro Hac Vice*
Sullivan & Worcester, LLP
1666 K Street, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 775-1200
Fax: (202) 293-2275

**COUNSEL FOR GARY M. KORNMAN**

October 17, 2007

# EXHIBIT I



- For Lawyers
- For the Public
- Inside the Bar

Home > For Lawyers > Ethics > Legal Ethics > Opinions

# Opinion 310

## Propriety Of Lawyer Charging Interest When the Client Fails to Pay Fees

Opinion No. 11 re-examined and broadened; when a client fails without justification to make payments to a lawyer that are called for by their fee agreement, and that agreement does not provide for payment of interest on such amounts, the lawyer may, assuming there is no overreaching on the lawyer's part, request the client to alter the fee arrangement prospectively to include charges for interest on any unpaid balance for future work and condition further representation of the client on agreement to that condition.

**Applicable Rules**

- Rule 1.5 (Fees)
- Rule 1.8 (Conflicts of Interest: Prohibited Transaction)

Fee arrangements between lawyers and clients are of course a matter of constant interest to both. As lawyers and clients attempt to craft agreements that provide both for fair fee amounts and assurances of payment, fee arrangements increasingly include not simply the designation of a fee for service but also terms that give the lawyer rights vis-à-vis the client to assist the lawyer in inducing the client to pay—most particularly in the question of whether a lawyer may charge interest on an unpaid client balance, although other issues also arise. Generally speaking, there is wide agreement that a lawyer can charge a client interest on unpaid bills, although jurisdictions differ on whether such a charge can be imposed unilaterally by the lawyer if not agreed to by the client at the outset of the representation. In Opinion No. 11 (1975), we concluded that the former Code of Professional Responsibility allowed a lawyer to charge interest on an unpaid legal fee, but "only if clearly agreed to by the client, in advance of the representation or in advance of a new stage of the representation."
    Because of current interest in the issue and because we have not examined it pursuant to the current Rules of Professional Conduct, we reconsider the issue.

**Discussion**

### 1. Adversity in Fee Arrangements
Finding the appropriate standpoint from which to assess fee arrangements can be difficult. There is some tendency to discuss the issue in terms of the adversity between the lawyer

and the client, particularly when the lawyer includes provisions in a fee agreement intended to induce the client to pay. See, e.g., Lustig v. Horn, 732 N.E. 2d 613 (Ill. App. 2000)(provision in fee agreement allowing lawyer to seek attorneys' fees for any lawsuit against the client to recover fees rejected as "potentially violative of the Rules of Professional Conduct barring an attorney from representing a client if such representation may be limited by the attorney's own interests"). Indeed, this Committee has considered a similar problem from that perspective in Opinion No. 211, one of a series of opinions dealing with the appropriateness of fee agreement provisions requiring arbitration of fee disputes.[1]

But at least some adversity likely exists between client and lawyer in the creation of virtually any fee arrangement. At the most basic level, the client's natural interest is to prefer the fee to be smaller and the lawyer's, larger. Moreover, in carrying out a representation, a lawyer is often faced with the need to resolve at least technically conflicting interests. If the fee basis is payment by the hour, for example, the lawyer (who has a financial incentive to do more work) may face the question of whether to perform work that appears to be at the margin of utility; if the fee is fixed (and in Opinion No. 238 we have recognized that fixed fees can serve to make legal services available to those who might not otherwise be able to afford them), there is a built-in incentive for the lawyer to forgo performing work that would take time and would be of uncertain benefit for the client. Therefore, it is not only not possible to erase all instances of adversity between client and lawyer in the fee process, but it must be recognized that the lawyer and client inescapably will have adverse interests to at least some degree throughout the relationship.

In Rule 1.8 (particularly Rule 1.8(a)), the D.C. Rules provide a framework for regulation of business relations between client and lawyer. However, to treat the relationship between client and lawyer in arriving at a fee arrangement as a legally adverse business relationship under Rule 1.8 would produce results that the Rules do not seem designed to bring about. Under Rule 1.8(a), a client could not be asked to negotiate a fee arrangement with a lawyer unless the client could consult a different lawyer. Rule 1.8(a)(2). Not only would such a result be highly unusual and disruptive, but, as the Association of the Bar of the City of New York has observed (ABCNY Formal Opinion 2000-3), it would also mean, logically, that a client could never retain a lawyer, i.e., to arrive at a fee arrangement with one lawyer the client would have to retain another lawyer, which the client could not do without retaining a third lawyer, and so on. For these reasons, analyzing particular aspects of a fee arrangement to determine whether or not they raise conflict of interest issues does not seem to be a fruitful approach.

Nor is it desirable to draw a bright-line distinction by saying that wherever a fee arrangement contemplates the possibility that the lawyer will institute adversary proceedings against the client to compel payment that a sufficient level of adversity had been reached to give a rise to a conflict. Our Opinion 218, for example, approves a fee arrangement between lawyer and client providing for mandatory arbitration of fee disputes under the rules of the Attorney/Client Arbitration Board. While such a proceeding can be hoped to be less antagonistic than litigation, it is nonetheless distinctly adversarial. Thus, we have approved

fee arrangements that contemplate adversary proceedings between lawyers and clients. Indeed, fee arrangements are in general intended to create legally enforceable obligations to pay (see Restatement of the Law Governing Lawyers, §§ 17-18 (2000)), and thus necessarily contemplate at least the possibility of a legal action to enforce them. It is difficult to see how there could be effective lawyer-client relationships without this ability.

**2. Considerations Involved in Attorney-Client Fee Agreements**

It cannot be forgotten, however, that a fee arrangement between a lawyer and client is not like a standard business arrangement. Clients often seek legal services at times of difficulty, and the client must feel free to impose a high level of trust in the lawyer and to have confidence in the relationship. In dealing with the client, the lawyer should not take advantage of either the lawyer's superior knowledge and experience or the lawyer's freedom from the concern and distress that disturb the client. Moreover, because it is unusual for a client to obtain independent legal advice when concluding a fee arrangement with a lawyer means that lawyers owe a particular duty to avoid overreaching in the fee-setting process.

At the same time, there are benefits to providing assurances of payment of fees or compensation for late payment. First, the binding contractual commitment between client and lawyer makes the provision of legal services possible in the first place. Second, it is the client's duty to pay fees to the lawyer that the lawyer appropriately earns under their fee arrangement. See Restatement of the Law Governing Lawyers, § 17(1) (2000). The payment of fees the lawyer has earned is not a voluntary act on the part of the client, and the lawyer is entitled to insist on being paid in accord with the terms of the fee arrangement and to pursue reasonable steps to enforce payment from a recalcitrant client. Not just individual lawyers, but the profession as a whole and the availability of legal services would suffer if that were not the case.

Third, the availability of fee arrangements with incentives for timely payment may well have a positive impact on the formation of lawyer-client relationships. Since a lawyer must somehow account for the additional cost—in time as well as money—of clients who do not pay or who delay payment in violation of the fee agreement, recovery of the additional costs of dealing with clients who do not pay or pay timely from those clients themselves allows the lawyer to avoid spreading those additional costs among all of the lawyer's clients, thus minimizing upward fee pressure on clients who do pay their fees. Such an assurance may even make a lawyer willing to take on representation of a particular client who presents an unusual risk of delayed payment or non-payment where the lawyer would be unwilling otherwise.

**3. Provisions of Rule 1.5**

The District of Columbia Rules of Professional Conduct deal with fees in a fashion that allows taking full account of these considerations in individual cases. Rule 1.5 requires a lawyer's fee to be "reasonable." While the rule provides a list of factors that may be considered in that determination (including the time and labor, difficulty and skill required, the likelihood that

acceptance of the assignment will preclude the lawyer from accepting other work, customary fees for such work, the amount at issue and the result obtained, time limits, nature and length of the client relationship, experience and reputation of the lawyer, and fixed or contingent nature of the fee), that list is non-exclusive.[2] As the comments indicate, the Rule covers not just the amount of a fee but fee arrangements generally, including method of payment and the impact of the agreement on the provision of the lawyer's services. See Comment [4] (discussing advance payment of fees and the "special scrutiny" necessary when fees are paid in property rather than money) and Comment [5] (cautioning that "an agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest").[3]

The reasonableness requirement is an objective standard. Because the term "reasonable" is well understood to be a broad one, the lawyer must consider not just the non-exclusive list of factors provided in Rule 1.5(a)(1)–(8), but all issues that may bear upon the fairness and reasonableness of a fee arrangement. This balance is more wide-ranging than application of a simple standard that merely looks for adverse interests.[4] The lawyer must be aware that when the reasonableness of a fee is reviewed, such factors as the lawyer's experience and superiority of legal knowledge over the client will be taken into account, as well as the client's sophistication or lack thereof, need for legal services, and mental state of distraction or worse caused by the situation that has caused the client to seek legal advice. The wise lawyer will explain all aspects of a proposed fee relationship in detail in advance of obtaining the client's agreement. As we stated in Opinion No. 267, it is the lawyer's responsibility to make sure that the client understands the fee arrangement. It is also the lawyer who, if challenged, will have the burden of establishing the reasonableness of the fee agreement. In this connection, the importance of having a written arrangement cannot be overstressed. Of course Rule 1.5(b) requires that the lawyer provide to a client whom the lawyer has not regularly represented a written statement of the basis or rate of the fee at or shortly after the representation begins. A writing would also be highly advisable, if not compelled by Rule 1.5 (see the final sentence of Comment [1] to Rule 1.5), whenever an existing fee arrangement with a client is altered during a representation.

The decision in *Lustig v. Horn, supra*, well illustrates the difference between application of a reasonableness standard versus a standard that simply looks for elements of adversity. The court there held improper a fee arrangement that provided that in a lawsuit to collect the attorney's legal fees the lawyer could obtain attorney's fees and costs attributable to the collection action from the client. It found that the retainer agreement "anticipates suit against and recovery of additional fees from a client should that client fail to pay the bill within the time required" and that this gave rise "to substantial fees for vigorous prosecution of the attorney's own client," raising the concern on the client's part of "his attorney's retaliation for nonpayment of even unreasonable fees." The court concluded that the fee provision was "potentially violative of the Rules of Professional Conduct barring an attorney from representing a

client if such representation may be limited by the attorney's own interests." Concluding that a lawyer "should not place himself in a position where he may be required to choose between conflicting duties or where he must reconcile conflicting interests rather than protect fully the rights of his client," the court held that the award of attorney's fees for the collection action under the agreement should be set aside.

While the court is correct that the fee arrangement in Lustig contemplated adverse action by the lawyer against the client to collect fees, it omitted to note that, as discussed above, any fee arrangement, given that it is a binding contract, contemplates such an action in the event of nonpayment. The proper question, we think, is whether these provisions were reasonable in the circumstances. It appears that they were, despite the adversity. First, a collection action by a lawyer against a client is a relatively remote contingency. In such an action the lawyer's entitlement to collect attorney's fees for the collection action itself would become an issue only if the lawyer had already prevailed on the merits against the client—i.e., if the lawyer first established that the client had violated the obligation to pay the lawyer. The lawyer could not prevail on that point without establishing that the fees had been reasonable. Since the client had known from the beginning that in the event the client was held liable to the lawyer for unpaid fees the cost of collection would be a part of the damages, it would not appear that there is anything per se unreasonable about such a condition in a fee agreement.

### 4. Assessing Provisions Aimed at Compensating the Attorney for the Client's Lateness in Paying or Failure to Pay

The most commonly discussed question in this general topic is the charging of interest on a client's unpaid bills. The result in Opinion No. 11—that under the Code of Professional Responsibility a lawyer could charge interest on a client's unpaid bills as long as that possibility had been agreed to by the client "in advance of representation or in advance of a new stage of representation"—is consistent with the rule in many jurisdictions. *See, e.g.,* ABA Formal Opinion 338 (1974); New York Opinion No 399 (1975); Connecticut Opinion No. 99-26; Missouri No. 960017; Wolfram, *Modern Legal Ethics* § 9.2.2 at 506 (1986).

A logical question is whether it may be reasonable to go further and hold, as a number of jurisdictions do,[5] that the lawyer can in appropriate cases ethically seek interest on amounts owed even if there is no such provision in the fee agreement. This issue may be examined in the context of a hypothetical case in which a lawyer and a client agree upon a fee arrangement requiring the client to make payments to the lawyer as the lawyer's work progresses; assume that the arrangement does not mention any requirement that interest is due where the client fails to make payments otherwise required. Then the client simply fails to pay the lawyer in a timely fashion. If we assume that the lawyer is performing appropriately, this puts the client in breach of the agreement. Why, if the client has breached the agreement, should it be ethically inappropriate for the lawyer to charge for the time value of the money that the client has wrongfully failed to pay on time? When the question is put that starkly, it is difficult to come up with a satisfactory answer.

However, we conclude that going from that abstraction to a practical standard that sufficiently protects the client is very difficult. There are too many possible compelling reasons that might cause a client to decline to pay fees to establish an absolute guideline, and it is a relatively simple matter for the lawyer to raise the issue of interest for untimely payment before the representation has begun. The latter point is reinforced by the policy underlying the requirement for a written explanation of fees in Rule 1.5(b).[6] While that rule does not require the lawyer to anticipate every contingency that may arise, it does clearly express a preference for having the client be presented in writing, before incurring any obligation to pay a fee, a description of what will occur with respect to fees as far as reasonably possible.

Therefore, we conclude that we adhere to the view expressed in Opinion No. 11 that a client's unexcused failure to meet a fee obligation does not allow a lawyer to seek to collect interest on the unpaid portion of the debt unless that is specifically provided for in the existing fee arrangement. However, we also conclude that a client's unexcused failure to meet fee obligations to the lawyer can be a basis for the lawyer to re-examine the fee arrangement and, as a condition of performing further work, request the client to agree to an interest charge, prospectively only, for unpaid amounts that may be owing for work done by the lawyer in the future, after this change in the fee arrangement becomes effective (i.e., a lawyer cannot unilaterally impose interest charges on unpaid amounts for work done before the interest charge was agreed to). The lawyer can do this only if the severe standard for changing the fee arrangement during the representation can be met. A change in a fee arrangement in an ongoing representation is subject to strict scrutiny for overreaching by the lawyer, who, as we recognized in Opinion No. 11, may have "acquired [since the beginning of the representation] an unfair advantage in negotiations—as where the client's cause would be significantly impaired by the lawyer's withdrawal." *See Chase v. Gilbert*, 499 A. 2d 1203, 1209 (D.C. 1985) ("District of Columbia courts will scrutinize closely an attorney-client contract which is beneficial to the attorney and executed long after the attorney-client relationship has commenced"). What may constitute overreaching in particular circumstances is of course dependent on such factors as the resources and sophistication of the client, the presence or absence of such external factors as a favorable litigation schedule that would be lost if the client had to change counsel, and so on. But where the occasion for the change is the client's failure to comply with an obligation that the fee agreement reasonably placed on the client, the lawyer's request for a change in the fee arrangement is limited to imposition of an interest charge to be applicable prospectively should that situation occur in the future, and there are no other factors suggesting overreaching by the lawyer or advantage being taken of the client, we see no reason why the lawyer should not be able to seek such a change in the fee arrangement during the representation.[7]

We find this course superior to the lawyer's simply seeking to impose an interest charge where none had been provided for because it provides the client unequivocal notice and an opportunity to fully ventilate whatever concerns the client may have had about the representation. An additional advantage is that at a point where the fee arrangement itself is being

changed, such important matters as the rate of interest and when it becomes applicable may, and indeed must, be fixed with specificity. This result is consistent with, and arguably does not even work a change in, the rationale of Opinion No. 11, in which we noted:

> An agreement for the imposition of interest or a finance charge that is entered into during the course of representation, where there was no such agreement at the outset, would be improper *if, by reason of his representation the lawyer had acquired an unfair advantage in negotiations*—as where the client's cause would be significantly impaired by the lawyer's withdrawal. [Emphasis added.]

If the fee arrangement is altered under the circumstances described above, the lawyer will not be exploiting "an unfair advantage in negotiations" as prohibited by Opinion No. 11.[8]

Inquiry No. 99-8-31
Adopted: November 20, 2001

---

1. *See* Opinion Nos. 190, 211 and 218. It is not our purpose here to revisit or re-examine those issues in any degree.
2. Subsection (b) requires the basis or rate of the fee to be in writing when the lawyer has not regularly represented the client; subsection (c) contains special requirements for contingent fees; subsection (d) bars the use of contingent fees in criminal cases; subsection (e) governs division of fees between lawyers in different firms; and subsection (f) provides that any fee prohibited "by law" or by subsection (d) is per se unreasonable.
3. While there are provisions specifically regulating fee arrangements in other Rules, notably in Rules 1.8 and 1.15 these tend to be specific provisions dealing with particular and well-defined issues rather than the general requirements of Rule 1.5. A lawyer's treatment of fee advances is covered in Rule 1.15(d); whether a lawyer may take literary or media rights as part of a fee is covered by Rule 1.8(c); Rule 1.8(e) restricts the conditions under which a lawyer may accept fees from someone other than a client; and Rule 1.8(i) governs liens to secure payment of fees. We do not express an opinion on whether a fee arrangement as part of which the lawyer arguably "acquire[d] an ownership, possessory, security, or other pecuniary interest adverse to a client" within the meaning of Rule 1.8(a) would trigger that Rule's applicability as well. *See Renouf v. Multicultural Broadcasting*, 1994 WL 499060 (D.D.C. 1994) at *2–3.
4. This conclusion is consistent with Scope Comment[5] of the Rules, a rule of construction that cautions against importing additional general considerations into the operation of Rule provisions that deal with specific

issues, as Rule 1.5 does with fee arrangements. Scope Comment [5] provides:

> In interpreting these Rules, the specific shall control the general in the sense that any rule that specifically addresses conduct shall control the disposition of matters and the outcome of such matters shall not turn upon the application of a more general rule that arguably also applies to the conduct in question. In a number of instances, there are specific rules that address specific types of conduct. The rules of interpretation expressed here is meant to make it clear that the general rule does not supplant, amend, enlarge, or extend the specific rule. So, for instance, the general terms of Rules 1.3 are not intended to govern conflicts of interest, which are particularly discussed in Rules 1.7, 1.8 and 1.9. Thus, conduct that is proper under the specific conflicts rules is not improper under the more general rule of Rule 1.3. Except where the principle of priority state here is applicable, however, compliance with one rule does not generally excuse compliance with other rules. Accordingly, once a lawyer has analyzed the ethical considerations under a given rule, the lawyer must generally extend the analysis to ensure compliance with all other applicable rules.

5. Such a view is consistent with that taken by the New York City Bar Association (Formal Opinion No. 2000-2), Georgia Opinion 45 (1985), Massachusetts Opinion 83-1 (1983), Rhode Island Opinion 98-06 (1998), and North Carolina (98-3 (1998). In Massachusetts and Georgia, while interest can be imposed even though that is not provided for in the original fee arrangement, the client must first be given an opportunity to pay without interest.
6. Rule 1.5(b) requires a lawyer who has not regularly represented a client to provide the client, in writing, a statement of the basis or rate of the fee.
7. West Virginia (Opinion No. 93-02) refuses to allow a lawyer to charge interest on an unpaid balance where there was no provision for such a charge in the original fee agreement, finding that such a charge might "confuse" the client and "carry with it the threat that the attorney might withdraw." We think that the client is unlikely to be confused where the occasion for the lawyer's request to change the fee arrangement is the client's failure to pay.
8. Cf. Rule 1.16 (b)(3), which authorizes a lawyer to withdraw from a representation upon the failure of the client "substantially to fulfill an obligation to the lawyer [if the client] has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled.

. . ."



The District of Columbia Bar | 1250 H Street NW, sixth floor | Washington DC 20005-5937 | 202-737-4700 | **Directions/Pa**
©**2007** District of Columbia Bar. All rights reserved. **Privacy Policy** | **Disclaimer** | **Author guidelines**