UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP, | ) ) ) ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-00554-JR/JMF |
| GARY M. KORNMAN, | ) ) ) | |
| Defendant/Counterclaim-Plaintiff. | ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT GARY M. KORNMAN'S
MOTION FOR LEAVE TO SUPPLEMENT SUMMARY JUDGMENT RECORD
WITH NEWLY DISCOVERED MATERIAL**

Plaintiff Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP ("Robbins Russell") respectfully submits this response to Defendant Gary M. Kornman's motion to supplement the summary judgment record with deposition testimony of Lawrence S. Robbins and two Formal Opinions of the D.C. Legal Ethics Committee – materials that Kornman characterizes as "newly-discovered." Robbins Russell does not begrudge this Court's consideration of any record evidence or published decision. For that reason, Robbins Russell does not oppose Kornman's motion.

The material that Kornman proffers, however, is not the least bit germane to Robbins Russell's motion for summary judgment on its Account Stated claim (Count III). It thus has no bearing on the summary judgment issue before the Court. But the balance of the transcript includes testimony that *is* germane to Robbins Russell's Account Stated motion. Presumably for that reason, Kornman has elected not to submit those portions of the transcript to the Court. Accordingly, we

respectfully submit that, under the rule of completeness, the entirety of Mr. Robbins' deposition transcript should be received.

The remainder of Kornman's submission is worse than merely irrelevant. It is a slur, and the latest in a series. On the theory that the best defense is a good offense, Kornman has accused us of incivility,[1] said that we committed malpractice,[2] and formally accused us of breaching fiduciary duties.[3] Now he calls us unethical, to boot. Even if Kornman had some basis for his foray into professional ethics (and he most certainly does not), such allegations are not even arguably relevant to our Account Stated motion. Kornman has failed to marshal a single fact or make a single good-faith legal argument in support of his allegations. What is more, Kornman has blatantly misread two D.C. ethics opinions. It appears that Kornman's continuing slurs are simply the price of seeking to collect a debt from him.

### A. None Of The Proffered Deposition Testimony Bears On The Account Stated Claim

Robbins Russell's Account Stated motion rests on one central proposition of law: A client who (i) receives invoices for legal services, month after month, (ii) continues to demand additional legal services throughout that time, and (iii) never breathes a word of protest or complaint, has created an account stated and is obligated to pay his bills. Kornman did just that – and then simply refused to pay. The uncontradicted evidence makes all of that abundantly clear.

---

[1] See Memorandum in Support of Motion for Civility or Protective Order (filed Sept. 19, 2007).

[2] Joint Report at 5 (filed Aug. 20, 2007); Motions Hearing Transcript at 6 (Sept. 7, 2007).

[3] Gary M. Kornman's Amended Answer, Counterclaim, and Jury Demand (filed Sept. 28, 2007).

The snippets of deposition testimony Kornman now offers shed utterly no relevant light on that legal issue:

- Exhibit A is said to be evidence showing that Robbins Russell drafted "the only engagement letter between the parties to cover a particular civil matter, with no commitments with regard to any subsequent criminal matter." Motion at 2. Even were that a fair account of the testimony (it isn't), it has nothing to do with whether Kornman did, or did not, continue to receive bills and request services, while raising no disputes.

- Exhibit B is said to reflect a recognition that flat fee agreements may be drafted "in different ways," and that Robbins Russell has no written guidance standardizing such agreements. Again, that sheds no light on Kornman's conduct.

- Exhibit C is said to reflect the agreement to a flat fee for a very specific project. As we explain at length in our Reply Memorandum in Support of the Account Stated motion, the existence of a flat fee agreement, in writing, for one specific assignment is immaterial to Kornman's refusal to pay for *any* of the work Robbins Russell did from and after February 2006.

- Exhibit D is said to reflect the fact that Robbins Russell never discussed with Kornman or his Texas counsel certain subjects about which Kornman now claims he had an "understanding." The fact that Kornman's lawyers never discussed matters that Kornman now asserts (in a late-arriving declaration) that he "understood" scarcely bears on an Account Stated motion even if Kornman's newfangled assertions are taken at face value.

- Exhibit E is said to be a statement recognizing that Kornman's indictment was a "significant turn of events," after which Kornman sought out "lead counsel." Again, it is surpassingly hard to fathom the connection to Kornman's 8-month long failure to protest his bills, while continuing to pile on new assignments.

- Exhibit F is said to be evidence that Robbins Russell did not discuss with Kornman or his Texas counsel how it would allocate the $100,000 among the various stages of the Motion to Dismiss. Once more, it's hard to see the point.

- Exhibit G is said to reflect a "billing mistake" in that it includes testimony that Robbins Russell "never asked Mr. Kornman" whether it could apply a $50,000 payment he made to his outstanding charges and to future charges. In the face of invoices sent directly to Kornman *expressly stating that Robbins Russell had applied the $50,000 in just that way*, it is again hard to see what is gained by this proffer.

We therefore question the need for this submission of purportedly "newly discovered" evidence. But if the Court is nevertheless inclined to accept Kornman's proffer, we ask the Court to consider the *entire* deposition of Mr. Robbins under the rule of completeness. Cf. Fed. R. Evid. 106 (favoring the introduction of material that "ought in fairness to be considered"). In portions of testimony *not* proffered by Kornman, Mr. Robbins explained the basis for the firm's Account Stated claim: that Kornman never – not once – protested or otherwise disputed his bills, while at the same time requesting additional work.[4]

### B. The Formal Opinions Have No "Ethical Implications" Here

Kornman's proffer of deposition testimony is merely irrelevant to the legal issues. His proffer of two Formal Opinions of the D.C. Legal Ethics Committee is worse than that. It is contemptible to impugn the ethical propriety of a lawyer in formal pleadings for tactical purposes, particular where (as here) the charges are frivolous. Lawyers – at least responsible lawyers – do not raise "ethical implications" lightly. See Motion at 3. It is especially dismaying, therefore, that Kornman's charges of ethical misconduct (putting to one side their irrelevance to the summary judgment claim) are based on utter misreadings of the two ethics opinions. It is likewise dismaying that Kornman refers (Motion at 1) to the 1993 and 2001 ethics opinions as "newly discovered" and "related exhibits." Mr. Robbins was neither shown nor asked about these opinions at his deposition.

---

[4] We will promptly supply a copy or relevant excerpts of Mr. Robbins' deposition transcript, should the Court so order.

What do these ethics opinions *actually* say? Formal Opinion No. 238 (Exhibit H) provides, in pertinent part, that a lawyer who offers his client a "flat fee" arrangement "must include, as part of the fixed fee, those reasonably foreseeable services that are necessary to provide competent representation." There is no suggestion – even in Kornman's most fanciful pleadings to date – that Robbins Russell shirked that obligation. Instead, Kornman proposes to invoke this ethical precept in order to argue that *all* of his unpaid-for work was somehow "necessary" to prepare the Motion to Dismiss competently, and was therefore all covered by the single $100,000 agreement. Even as a defensive ploy, that argument is a canard. As a suggestion of ethical impropriety, it is shameful.

Formal Opinion 310 (Exhibit I) deals generally with the right of attorneys to impose on their clients *one-sided contractual provisions* providing for late fees in the course of fee disputes. In the course of that discussion, the Committee cites *Lustig* v. *Horn*, 732 N.E.2d 613 (Ill. App. 2000), for the proposition that a "fee agreement allowing [a] lawyer to seek attorneys' fees for *any* lawsuit against the client to recover fees" was potentially improper. Exh. I at 2 (emphasis added). As another court has observed, such a retainer agreement "lacks mutuality since it fails to allow for reasonable fees to the prevailing or successful party. As noted in *Lustig* v. *Horn* . . . such a one-sided provision may 'be used to silence a client's complaint about fees, resulting from the client's fear of his attorney's retaliation for nonpayment of even unreasonable fees.'" *Gruber & Colabella, P.A.* v. *Erickson*, 784 A.2d 758, 760 (N.J. Super. Ct. 2001) (quoting *Lustig*, 732 N.E.2d at 620).

It is anyone's guess how Kornman thinks Opinion 310 bears on this litigation, where Robbins Russell is seeking attorneys' fees, costs, and interest not through a one-sided contractual provision but instead through statutory relief available only to *prevailing parties*. To be sure, Kornman asserts that such relief is prohibited. See Motion at 4 (asserting, incorrectly, that *Lustig* "[found] it 'improper

5

for a lawyer to seek attorney's fees and costs in a collection action against a client"). But that does not make it so. See, *e..g.*, *Walker, Tooke & Lyons, L.L.P.* v. *Sapp*, 862 So.2d 414,*420 (La. Ct. App. 2003) (affirming award of attorneys' fees for work performed by law firm and its trial counsel for litigating an "open account" claim against a former client). And Texas law in particular – which Kornman has said applies to this litigation – expressly allows attorneys to seek such relief, so long as the law firm first "presents" the claim to the client at least 30 days before filing suit. See *Diaz* v. *Attorney General of State of Tex.*, 827 S.W.2d 19, 23 (Tex. Ct. App. – Corpus Christi 1992) (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1990)); cf. Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (defining "presentment").

Robbins Russell satisfied the presentment requirement by sending many requests for payment and two demand letters to Kornman well before filing this lawsuit. Indeed, those demands (among others) are the basis for our Account Stated motion. Given those numerous efforts to collect Kornman's debt without resorting to litigation, it is hard to imagine how it is *unethical* for Robbins Russell to ask Kornman to bear the costs of the litigation that his conduct has necessitated.

\*    \*    \*

In sum, we do not oppose supplementing the record with irrelevant excerpts of Mr. Robbins' deposition transcript, though we would ask the Court to receive the entire transcript. And we do not oppose the Court's review of D.C. ethics opinions, even though Mr. Robbins was never asked about them in his deposition, and even though they have no bearing on our motion for summary judgment on the Account Stated claim. But it is hard to stomach Kornman's repeated accusations of improper conduct, given that none of them has any basis in law or fact.

Dated: October 19, 2007                    Respectfully submitted,

                                                                        /s/ Gary A. Orseck
Gary A. Orseck (Bar No. 433788)
Alan D. Strasser (Bar No. 967885)
Matthew R. Segal (Bar No. 483486)
ROBBINS, RUSSELL, ENGLERT,
  ORSECK, UNTEREINER & SAUBER LLP
1801 K Street, NW, Suite 411
Washington, DC  20006
Telephone: (202) 775-4500
Fax: (202) 775-4510

**Attorneys for Plaintiff Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP**