**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROBBINS, RUSSELL, ENGLERT, ORSECK & UNTEREINER LLP,

Plaintiff/Counterclaim-Defendant,

v.

GARY M. KORNMAN,

Defendant/Counterclaim-Plaintiff.

Case No. 1:07-cv-00554-JR/JMF

**DEFENDANT'S VERIFIED REPLY IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant/Counterclaim-Plaintiff Gary Kornman ("Mr. Kornman") respectfully submits this reply in further support of his cross-motion for summary judgment ("Motion"), seeking the dismissal of all claims by Plaintiff Robbins, Russell, Englert, Orseck & Untereiner (the "Robbins Firm").

Piercing through the insults and rhetoric in the Robbins Firm's opposition to Mr. Kornman's cross-motion for summary judgment, the fundamental flaw throughout its arguments has been *buried in footnote 7* on page 10 of the Robbins Firm's opposition brief. There, the Robbins Firm reluctantly admits that, in connection with representing Mr. Kornman in his criminal case, the parties reached a flat-fee agreement, through an e-mail exchange and related conversations, for work by the Robbins Firm in connection with moving to dismiss the

indictment, including the opening brief, reply brief and oral argument.[1] What the Robbins Firm refuses to refute are the following related ***undisputed*** facts:

- the parties never even *discussed* any form of billing for work on the *criminal* matter other than flat-fee billing;
- the Robbins Firm never segregated, in its billing system, time entries for work performed on the motion to dismiss, which was required to be billed on a flat-fee basis, from any other work that the firm believed would be billed separately on an hourly basis;
- the Robbins Firm has billed numerous tasks as vague "office conferences" or the like, from which the client could not possibly determine which items, if any, the firm considered separate from work on a flat-fee basis;
- the Robbins Firm's bills contained hourly entries for mixed tasks, making it difficult, if not impossible, to understand which items, if any, the firm considered separate from work on the flat-fee basis;
- the Robbins Firm is now taking the position that certain research and other tasks it undertook into potential grounds for a motion to dismiss, such as work on a collateral estoppel argument, should be treated as separate from its flat-fee agreement for the motion to dismiss, even though the Robbins Firm did not discuss this distinction with the client;
- the Robbins Firm did not *complete* the opening brief on the motion to dismiss in the criminal case, which was one of the three requirements for the flat fee of $100K;
- the Robbins Firm had already been paid (approximately $250,000) for a motion to dismiss substantially similar claims in the SEC action, which it used as a basis for its draft motion to dismiss in the criminal case, thereby making the opening brief only a small portion of the work expected for the flat fee of $100K;

---

[1] Prior to footnote 7 of its opposition brief, the Robbins Firm had withheld the existence of the flat-fee agreement from its Complaint and all its other pleadings before the Court. Mr. Kornman was not a named recipient of the e-mail exchange in which the Robbins Firm confirmed the flat-fee arrangement and Mr. Kornman did not personally possess a copy of the e-mail to confirm the exact language of the agreement at the time this litigation began. Only through discovery did Mr. Kornman uncover the actual e-mails confirming the flat-fee agreement. It should be noted that, during discovery, the Robbins Firm produced approximately 15,000 pages of material related to its representation of Mr. Kornman in both the civil and criminal matters, rather than segregate and produce only responsive items. The most natural conclusion is that the Robbins Firm hoped to avoid the issues arising from the flat-fee agreement it had reached with Mr. Kornman, but that hope was no excuse for being less than candid and for depriving a former client of important information that confirms his understanding of the billing arrangement.

- the Robbins Firm *never worked on the reply* brief that was the second requirement for the flat fee of $100K;

- the Robbins Firm did *not appear at the oral argument*, which was the third requirement for the flat fee of $100K;

- the Robbins Firm never clarified how billing would work if less than the entirety of required work product was delivered and the parties never reached an agreement allocating any portion of the $100K to a mere draft of the opening brief that copied portions of the work product for which the Robbins Firm was already paid in the civil action;

- the parties never discussed any circumstances under which the flat fee would be paid before all moving and reply papers were complete;

- the Robbins firm withheld its work product on a *Stringer* motion from Mr. Kornman, but still seeks compensation for work on it;

- the Robbins Firm has described the draft suppression motion on which it worked as needing significant restructuring and work before it could be shown to Mr. Kornman, but still seeks compensation for its incomplete work; and,

- the Robbins Firm applied a $50,000 escrow deposit against hourly billing after the parties agreed to a flat fee, without informing Mr. Kornman prior to doing so.

While ignoring substantial portions of the record, the Robbins Firm disparages the merits of Mr. Kornman's cross-motion in several unjustifiable ways. First, the Robbins Firm refers to this Court's resolution of similar arguments at the motion to dismiss stage. At the hearing on the motion to dismiss, however, this Court invited a prompt summary judgment motion. Second, the Robbins Firm refers to defense counsel's comments reflecting that this matter should have proceeded as only a *quantum meruit* claim following the motion to dismiss. While the *quantum meruit* claim was the only cause of action for which the Robbins Firm appeared to have a potential factual basis for stating a claim, the Robbins Firm has failed to produce sufficient evidence that the $50,000 that Mr. Kornman actually paid for work on the criminal matter did not reasonably compensate it for any benefit it provided to Mr. Kornman that fell outside a flat-fee agreement (as to which the undisputed evidence reflects that the firm never completed its end

of the bargain to earn the flat fee). Third, the Robbins Firm claims that Mr. Kornman's motion is merely an effort to increase the fees associated with litigating this matter. It has actually been the Robbins Firm attempting to increase the cost of this litigation for Mr. Kornman.

**1. The Parties Never Reached Any Express Agreement Other than a Flat-Fee Agreement for Work on the Criminal Case.**

The Robbins Firm claims that the record contains sufficient evidence to support its contract claim for work done on the criminal case because (1) the parties reached an agreement regarding hourly-rate billing for the civil matter; and (2) the client asked for work on the criminal matter. Mr. Kornman agrees that parties to a contract can agree to extend a contract. But, here, the record includes undisputed evidence that the agreement, and the only agreement, with regard to fees for work on the criminal matter consisted of a flat-fee agreement, *and absolutely no discussion* ever occurred among the parties to the effect that hourly rates would apply for any other work on the criminal matter. Under such circumstances, there can be no finding of an express or implied agreement to hourly rates for work on the criminal matter.

**2. *Quantum Meruit* Requires a Showing of the Reasonable Value of Uncompensated Benefits to Mr. Kornman that Were Not Covered by a Flat-Fee Agreement Under Which the Robbins Firm Failed to Deliver the Required Work Product.**

Based on the record, there can be no genuine dispute of the fact that Mr. Kornman paid $50,000 toward work on the criminal matter. There can also be no dispute that the parties reached a flat-fee agreement, at least as to work on an opening brief, reply brief, and oral argument in connection with a motion to dismiss. The Robbins Firm cannot dispute that it provided only a draft opening brief, did not deliver a reply brief, and did not appear at the oral argument. Under such circumstances, the Robbins Firm simply did not earn the flat fee.

What the Robbins Firm has failed to produce is evidence of a reasonable value of work it did, other than in connection with an unearned flat fee, that exceeds the $50,000 in value for which Mr. Kornman has already paid. As developed in Mr. Kornman's opening brief in support of his cross-motion, to the extent the Robbins Firm did not complete the work product that was required for the flat fee, thereby breaching the flat-fee agreement, *quantum meruit* is not an available remedy because the flat-fee agreement governs the parties' rights as to any such work. With regard to uncompensated work that the Robbins Firm contends fell outside of the flat-fee agreement, there is insufficient evidence in the record reflecting that the reasonable value of it to Mr. Kornman exceeded the $50,000 he has already paid toward services on the criminal matter. Summary judgment in favor of Mr. Kornman is therefore appropriate on the *quantum meruit* claim.

**3. An Account Stated Cannot Be Based on Improper Billing.**

It is undisputed that at least a portion of the bills by the Robbins Firm should have been based on a flat fee, without regard to hourly billing. Nevertheless, the Robbins Firm attempts to base a claim for an account stated on improper bills. Not a single case to which it has cited has involved a matter in which a law firm billed mistakenly on an hourly basis after agreeing that (at least a substantial portion of) its fee would be based on a flat fee.

Allowing an account stated claim to proceed on the present facts would encourage sloppy or unethical billing practices and penalize even short delays in responses by busy clients suffering the stress of a pending criminal prosecution. In the few cases that the Robbins Firm has found in which an account stated claim succeeded, unlike the present case, the law firm had completed the contemplated services and had based its billing on an agreed-upon method. No such cases involved a law firm ceasing its activities in the middle of a case, let alone the middle

of a serious criminal prosecution, in which the client would naturally be more focused on defending his liberty than on what a law firm has meant by bills that departed from the agreed-upon billing structure.

Here, the Robbins Firm billed Mr. Kornman based on a different methodology than that to which the parties had agreed. In addition, it is undisputed that Mr. Kornman expressly demanded the completion of work he expected before he would pay. Hence, the account stated claim should not survive Mr. Kornman's cross-motion for summary judgment.

**4. The Robbins Firm Ignores Fundamental Rules of Ethics Regarding Billing Matters.**

In footnote 7 of its opposition, where the Robbins Firm provides superficial treatment to the parties' flat-fee agreement, it makes the incredible statement that the e-mails setting forth the flat-fee agreement reflect that the parties knew how to reach a clear fee agreement when they tried. Clearly indisputable facts in the record are that the Robbins Firm did (1) nothing to make the flat-fee agreement clear to Mr. Kornman, (2) nothing to structure its time entries to permit fair flat-fee billing for some items but not others, and (3) nothing to clarify what work was or was not included in the flat fee.

Under Rule 1.5 of the D.C. Rules of Professional Conduct, once a flat-fee agreement is reached, a law firm should spell out how it will work, and how other billing will work, in an engagement letter. Attached to Mr. Kornman's motion for leave to supplement the summary judgment record, as Exhibits H and I, are two Formal Opinions of the D.C. Bar Legal Ethics Committee.[2] Formal Opinion No. 238 reiterates the responsibility of a law firm to reduce the

[2] Courts routinely cite to the Rules of Professional Conduct and formal Ethics Opinions for the bases of rulings governing the attorney-client relationship. *E.g.*, *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 45 (D.D.C. 2004); *Griva v. Davison*, 637 A.2d 830, 840 & n.10 (1994).

important terms of its fees to writing, including "flat fee" arrangements, and imposing on such firms the obligation to perform "all reasonably foreseeable services necessary to provide competent representation" in a matter covered by a flat fee. Formal Opinion 310 states, among other things, that a lawyer should "explain all aspects of a proposed fee relationship in detail in advance of obtaining the client's agreement."

The law views lawyer-client agreements with a skeptical eye, construing ambiguities against lawyers. As the Court explained in *Spilker v. Hankin*, 188 F.2d 35 (D.C. Cir. 1951):

> Fee contracts between attorney and client are a subject of special interest and concern to the courts. They are not to be enforced upon the same basis as ordinary commercial contracts. Especially is this true where, as in this case, a contract beneficial to the attorney is executed long after the attorney-client relationship has commenced, when the position of trust is well established, and the litigation involved is reaching its culmination. 'In some jurisdictions it has been held that such agreements are void. In other states contracts of such character are held to be affirmatively invalid on the ground of fraud, and the burden is on the attorney to show the fairness of the transaction in that the compensation provided for does not exceed a reasonable compensation for the services rendered or to be rendered.' In re Howell, 215 N.Y. 466, 109 N.E. 572, 574. ***Many courts, including the courts of this jurisdiction, have gone so far as to say that they are attended by a presumption of invalidity and overreaching.*** They are always subject to the close scrutiny of the court whenever judicial enforcement is sought. 'The rule is founded in public policy, and operates independently of any ingredient of actual fraud or of the age or capacity of the client, being intended as a protection to the client against the strong influence to which the confidential relation naturally gives rise.'

*Id.* at 39 (emphasis added).

Here, a construction of ambiguities against the Robbins Firm leads to the conclusion that the Robbins Firm did not do what was required to earn a flat-fee, did not reach any other agreement for work on the criminal matter, billed inappropriately, and has now failed to produce evidence that its other allegedly uncompensated work provided Mr. Kornman with value beyond

the $50,000 that he has already paid. Under such circumstances, the Robbins Firm has not made a sufficient showing to allow it any recovery in this action.

## CONCLUSION

Based on the foregoing, Mr. Kornman respectfully submits that his cross-motion for summary judgment should be granted, rejecting each of the claims in the Complaint.

Dated: October 22, 2007

Respectfully submitted,

**/s/ Orlando E. Vidal**

Orlando E. Vidal (D.C. Bar No. 461815)
Barry S. Pollack, *Admitted Pro Hac Vice*
Sullivan & Worcester, LLP
1666 K Street, NW, Suite 700
Washington, DC 20006
Telephone: (202) 775-1200
Fax: (202) 293-2275

**COUNSEL FOR GARY M. KORNMAN**

## VERIFICATION

Gary M. Kornman hereby verifies under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 22, 2007.

Gary M. Kornman

Gary M. Kornman